UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Case No. 23-cr-0278 JKB |
| CHRISTOPHER BENDANN. | : | |

**CHRISTOPHER BENDANN'S MOTION TO REVOKE DETENTION ORDER**

Christopher Bendann hereby moves this Court to revoke the August 21, 2023 Detention Order issued by the Magistrate Judge and requests a prompt hearing, under 18 U.S.C. § 3145(b).

Mr. Bendann first faced criminal charges arising from the allegations in this case in February 2023, when he was indicted by the State of Maryland.[1] Before then, Mr. Bendann had no criminal record, no history of violence, and was a trusted and involved member of the community. Since then, Mr. Bendann has been on pre-trial release conditioned on home detention with electronic monitoring, with a perfect record of compliance. Six-months' worth of evidence of Mr. Bendann's past success on release is the best predictor of his future conduct. There could be no better indicator of the (un)likelihood of future danger or flight.

In light of this evidence, the Magistrate Judge correctly found that Mr. Bendann rebutted the presumption of detention that comes with these federal charges. *See* Ex. 1 at 2. The Magistrate Judge erred, however, in still concluding that no combination of conditions could reasonably assure Mr. Bendann's appearance and the public's safety pending trial, given the

---

[1] Today, the State of Maryland dismissed those charges. On September 6, 2023, the state trial judge was to hold a hearing on the Defense's Motion to Dismiss and Motion to Suppress. The Defense filed both Motions in state court on July 11, 2023. The State never responded to either Motion, despite filing a Petition to Revoke Mr. Bendann's Pretrial Release on August 18, 2023—the day the federal Indictment became public. Unfortunately, today's dismissal by the State precludes the state trial judge from granting the Defense's Motion to Dismiss and Motion to Suppress and ending the State's case.

"particularly disturbing" charges. *See id.* at 2–3. The detention framework does not authorize pretrial incarceration based on the offensiveness of the alleged crimes. The accused is presumed innocent under 18 U.S.C. § 3142(j), and, in the hours and days immediately after indictment, has had no opportunity to challenge the evidence or raise legal defenses to the government's case. Instead, the detention analysis is a forward-looking risk assessment, considering only the risk of flight or new danger pending trial and whether that risk can be mitigated by release conditions.

Here, Mr. Bendann is in the criminal system for the first time, and there is extensive evidence of his intent to comply with the law and appropriately defend his case. His limited experience with pretrial detention has been traumatizing, and if released, Mr. Bendann would take no action that could jeopardize his pretrial liberty. Any risk of flight or danger is mitigated by home detention and electronic monitoring, as supported by six months of success on exactly those conditions. The government cannot show otherwise.

Upon its *de novo* review, this Court should consider Mr. Bendann's history and characteristics, deep ties to the community, supportive family and friends, and record of compliance, and should hold that home detention with electronic monitoring, under the supervision of his father, is sufficient to assure Mr. Bendann's appearance and the safety of the community. Accordingly, the Court should revoke the detention order and release Mr. Bendann on conditions.

## BACKGROUND AND PROCEDURAL HISTORY

Mr. Bendann has lived and worked in the Baltimore area for his entire life. After attending the Gilman School himself, Mr. Bendann was employed there for nearly 15 years. Then, on February 3, 2023, in a Friday-morning, pre-dawn SWAT raid on his home, Mr. Bendann was arrested for the first time in his life. The arrest and search warrants asserted

probable cause on child pornography and sex abuse charges. Mr. Bendann was subsequently indicted on state charges of rape, sex offense, solicitation of a minor, and sex abuse of a minor.

Mr. Bendann was initially held in state custody. His time in detention was especially dangerous, given the nature of the charges against him and the high degree of local media attention,[2] and Mr. Bendann was temporarily placed on suicide watch. On February 21, 2023, the Baltimore County Circuit Court ordered Mr. Bendann released on home detention with electronic monitoring. Ex. 2.

Over the following six months, Mr. Bendann had perfect compliance while on pre-trial release. *See* Ex. 3 (letter from electronic monitoring provider recording Mr. Bendann's compliance over past six months). He sold his home and moved in with his father, who supervised his release, and he studiously complied with the terms of his home detention. He always wore his ankle monitor, and on any occasion when he left home for an approved purpose, he always provided notice to the electronic monitoring service. He attended approximately six court appearances, in state and federal court, and routinely met with his legal team in person (and via Zoom) to prepare his defense. Mr. Bendann showed his commitment to defending his case while minding the rules, and no harm to any person or to the community has resulted.

On August 18, 2023, Mr. Bendann was re-arrested by federal law enforcement in a second Friday-morning, pre-dawn SWAT raid, this time on his father's house.[3] Federal agents smashed windows of the home to deploy "stun grenades," *see* Ex. 4, then pointed assault rifles on Mr. Bendann and his 78-year-old-Vietnam-veteran father, who has a heart condition. Defense

---

[2] Members of the media were present outside Mr. Bendann's home at the time of his first arrest, having apparently received leaked notice of the event.

[3] For a second time, members of the media reported on the arrest and federal charges prior to the unsealing of the case later on Friday at Mr. Bendann's initial appearance.

counsel had represented Mr. Bendann over the prior six months, including in discussions and sealed motions practice with the federal prosecutors. Yet, Defense counsel received no notice of the arrest nor new charges.

By contrast, the media had more information about the arrest than Mr. Bendann and his counsel, despite the Arrest Warrant and Indictment being under seal. Despite six months of perfect pretrial compliance and sealed federal litigation, the federal prosecutors never afforded Mr. Bendann the opportunity and decency to voluntarily surrender.

Mr. Bendann was federally indicted on five counts of Sexual Exploitation of a Child, 18 U.S.C. § 2251(a), and one count of Possession of Child Pornography, 18 U.S.C. § 2252A(a)(5)(B). At an initial appearance on the day of the arrest, the government requested a continuance through Monday morning, over Mr. Bendann's objection, ensuring his detention through the weekend—just as the state prosecutors did back in February 2023. The detention hearing was held on August 21, 2023, at 10:00 a.m., before the Magistrate Judge. Mr. Bendann's father attended, along with several other family members and friends—just as they had attended the state-side detention hearings.

The Magistrate Judge correctly ruled that Mr. Bendann's "successful time on release while charges based on some of the same conduct were pending in Baltimore County does rebut" the statutory presumption favoring detention. Ex. 1 at 2. However, after emphasizing the "particularly disturbing" allegations, the Magistrate Judge incorrectly decided that no conditions of release could assure Mr. Bendann's appearance and the community's safety. He ordered Mr. Bendann detained pending trial. *Id.* at 2–3.

Yesterday, on August 31, 2023, Defense counsel reviewed the video evidence for the six-count Indictment for the first time and at the quickest time possible. Today, Defense counsel moves this Court under 18 U.S.C. § 3145(b) to revoke the Detention Order.

## **LEGAL FRAMEWORK**

Where, as here, a Magistrate Judge enters an order detaining the accused, the accused may seek the district court's review of the decision by filing a motion to revoke, which "shall be determined promptly." 18 U.S.C. § 3145(b). In deciding the motion, "the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Madrigal*, 3:22-cr-00019, 2023 WL 2823504, at *10 (W.D. Va. Apr. 7, 2023) (quoting *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001), and collecting cases).

"The law favors the release of defendants pending adjudication of charges. Deprivation of liberty pending trial is harsh and oppressive, subjects defendants to economic and psychological hardship, interferes with their ability to defend themselves, and, in many instances, deprives their families of support." ABA, Criminal Justice Standards, Pretrial Release § 10-1.1 (3d Ed. 2007). The detention court "should assign the least restrictive condition(s) of release that will reasonably ensure a defendant's attendance at court proceedings and protect the community, victims, witnesses or any other person." *Id.* § 10-1.2.

Under the Bail Reform Act, the charges against Mr. Bendann carry a rebuttable presumption against pretrial release. *See* 18 U.S.C. § 3142(e)(3)(E). The presumption places a limited burden of production on the accused to proffer evidence that he does not pose a flight risk or a danger to the community. *United States v. Davis*, 449 F. Supp. 3d 532, 534 (D. Md. 2020) (collecting cases). Upon rebuttal of the presumption, the government bears the ultimate

burden of persuasion that no possible combination of release conditions will reasonably assure the accused's appearance and the safety of any other person and the community. *Id.* at 534–35. Flight risk must be proven by a preponderance, while the government's burden on public danger is clear-and-convincing evidence. *Id.* In determining whether appropriate release conditions are available, the court must consider four factors: 1) the nature and circumstances of the offense charged; 2) the weight of the evidence; 3) the history and characteristics of the accused; and 4) the seriousness and nature of any danger. 18 U.S.C. § 3142(g).

"The Supreme Court has held that pretrial detention" under this framework is, in general, "disfavored." *Davis*, 449 F. Supp. 3d at 535 (citing *United States v. Salerno*, 481 U.S. 739, 755 (1987)); *see also Madrigal*, 2023 WL 2823504, at *9 ("Ordinarily, a defendant should not be detained pending trial."). Even when upholding the Bail Reform Act's authorization of detention based on dangerousness, the Supreme Court emphasized that pretrial detention is "preventative, rather than punitive, in nature." *Davis*, 449 F. Supp. 3d at 535; *see also id.* (citing § 3142(j) of the Act, which expressly emphasizes that the detention framework does not limit the presumption of innocence). While the statute "permits the court to consider the nature of the offense and the evidence of guilt," it does not permit "a pretrial determination that the person is guilty." *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). "These factors may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger . . . . Otherwise, . . . the refusal to grant release could become in substance a matter of punishment." *Id.*

In other words, when the detention court weighs the § 3142(g) factors, it is evaluating the likelihood of *future* danger, and whether a combination of conditions can reasonably mitigate that risk, *not* whether the accused is generally "dangerous" based on the underlying allegations.

6

*See id.*; *Davis*, 449 F. Supp. 3d at 534–35. After all, "rare is the case in which there will be no evidence of danger to the community based on alleged criminal conduct." *Davis*, 449 F. Supp. 3d at 535. The court weighs the factors to evaluate the *prospective* risk of flight and danger, not to impose pretrial detention on those who are accused of the most ostensibly "dangerous" crimes. *See id.* ("The statute requires 'reasonable assurance' against any risk, not a 'guarantee.'").

## ARGUMENT

Given that Mr. Bendann has no criminal record or history of violence, and has a stable plan for home confinement pending trial, as supervised by his father, also a prominent member of the community, with a proven track record of success on comparable conditions over the past six months, sufficient conditions of release *are* available here. The government cannot put forward clear and convincing proof of Mr. Bendann's unmitigable, prospective danger to the public if released on electronically monitored house arrest. This Court should revoke the detention order.

I.   **The rebuttable presumption is rebutted, and the § 3142(g) factors favor pretrial release with appropriate conditions.**

The charges against Mr. Bendann carry with them a rebuttable statutory presumption that no sufficient conditions are available. 18 U.S.C. § 3142(e)(3)(E). Mr. Bendann faces only a "limited burden of production" to come forward with some evidence that he does not, in fact, pose an unmitigable flight risk or public danger. *Davis*, 449 F. Supp. at 534–35 (collecting cases); *see also United States v. Chen*, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992) ("[T]he burden placed on the defendant to rebut the presumption is small.").

Mr. Bendann rebuts the presumption here by proffering his lack of criminal or violent history, coupled with his record on state pretrial release over the past six months on related charges. That Mr. Bendann consistently appeared in (state and federal) court, complied with the

law, and caused no harm to anyone in the community, all while on electronically monitored home detention for months, overcomes the presumption that no conditions could be sufficient. *See, e.g.*, *United States v. Leyba*, 104 F. Supp. 2d 1182, 1183–84 (S.D. Iowa 2000) (holding accused rebutted presumption, despite *nine* prior arrests, in part because of accused's compliance with release on those prior occasions); *see also Chen*, 820 F. Supp. at 1211 (holding presumption was rebutted, in case arising from the then-"largest heroin seizure in United States history," in part because "[n]one of the defendants has any prior criminal record"); *United States v. Taylor*, 289 F. Supp. 3d 55, 64 (D.D.C. 2018) (holding presumption was rebutted, in case arising from seizure of phencyclidine and three firearms, in part because "[the accused] has not previously been convicted of a crime of violence").

Accordingly, the government carries the ultimate burden of persuasion on flight risk and future danger. "The government's burden of proof is not trivial." *Chen*, 820 F. Supp. at 1208. It "must prove that no combination of conditions can reasonably assure the safety of the community and the appearance of the defendant," and it must do so by "point[ing] to more than the indictment" to show "clear and convincing evidence that the defendant poses a danger to the community" or to show by a preponderance that "the defendant poses a flight risk." *Id.*; *see also United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (collecting cases establishing the federal policy of imposing the least restrictive conditions possible pretrial). Here, the government cannot meet its burden to prove the insufficiency of release on home detention with electronic monitoring, combined with any additional conditions the Court deems appropriate, and the § 3142(g) factors favor such conditional release.

      **a. Mr. Bendann's history and characteristics favor release.**

The Bail Reform Act requires the Court to consider the personal history and characteristics of the accused. 18 U.S.C. § 3142(g)(3) (listing: "character, physical and mental condition, family ties, employment, financial resources, employment, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and whether the accused is on any other form of release). Mr. Bendann's history and characteristics weigh heavily in favor of pretrial release.

Chris Bendann was raised in Baltimore after being adopted from South Korea as a baby in 1984 by his loving parents, Lance and Anne Bendann. His mother passed away from cancer 10 years ago; since then, Chris and Lance have remained close. Lance is a supportive and involved parent who is standing by Chris and is prepared to continue supervising his pretrial release on home detention.

In many ways, Mr. Bendann dedicated his life to the Gilman School and its community. He attended Gilman himself, graduating in 2003, and then went on to Skidmore College, where he earned a Bachelor's degree in History and the Classics in 2008. His first job out of college was to return to Gilman as a teacher in the middle school, where he continued to serve until his termination in January 2023 based on non-sexual allegations of misconduct.

During his 15 years of service, Mr. Bendann was a trusted and respected community figure. He served as an admissions officer, and then eventually as admissions coordinator for the middle school. He was the volunteer director of a mentoring program. He was a member of the board of the alumni society. He was a coach for sports teams and part of the summer transition team. The list goes on.

Despite the grave allegations in this case, many family members and friends stand with Mr. Bendann. At every detention hearing in Chris's state case, community members were present to publicly support his release. At the federal detention hearing on August 21, 2023, even after six months had passed, and new federal charges had been filed and negatively publicized, many of those same supporters were present. Others, who could not attend on such short notice, gave Defense counsel permission to re-submit their character letters from the state proceedings, even after being fully informed about the federal Indictment.

As his service at Gilman and those letters make clear, Mr. Bendann is a caring and peaceful person. Before this year's now-dismissed state prosecution on related charges, Mr. Bendann had never been arrested. He has never engaged in violence of any kind. His warmth and kindness are his strongest traits, obvious to anyone who spends time with him. The Court will gain insight into this aspect of Mr. Bendann's character from the attached letters. *See* Ex. 5.

In sum, virtually every consideration listed in this statutory factor favors Mr. Bendann's conditional release pending trial: his non-violent character, his deep family and community ties and lifetime community residence, his longtime stable employment at one institution, his past conduct of community service and the absence of any violence, his lack of substance abuse,[4] his lack of criminal history, and his very recent record of consistently appearing at all court proceedings in in both the now-dismissed state case and the sealed federal matter.

One additional factor—"physical and mental condition"—also favors release here. Mr. Bendann was traumatized by the first surprise pre-dawn arrest by an armed SWAT team on

---

[4] The pretrial services report recommended detention in part based on purported substance abuse. The recommendation is unfounded and this consideration, in particular, is in error. When asked about his substance use history, Mr. Bendann honestly reported occasional cannabis use when in college, nearly twenty years ago. In his adult life, Mr. Bendann does not use drugs and only rarely engages in social drinking, but usually does not drink either.

February 3, 2023, followed by 18 days in state detention. He was temporarily placed on suicide watch while in state custody. Upon his pretrial release, he was diagnosed with Post-Traumatic Stress Disorder and was actively engaged in mental health treatment. Still, the stress of this case has been tremendous, and despite only being in his late-thirties, Mr. Bendann was hospitalized for a cardiac arrest in recent months while on 24-7 lockdown at home.

Mr. Bendann was traumatized by the second surprise pre-dawn arrest by an armed SWAT team, on August 18, 2023. *See* Ex. 4. The trauma from these multiple, excessive, and unnecessary SWAT raids is also felt by Chris's father Lance—who has nothing to do with the case. Seeing his father's trauma negatively affects Chris's mental condition.

Now, in federal custody for only 14 days, Mr. Bendann is again being threatened with sexual violence and other bodily harm—like in state custody. While detained at the Chesapeake Detention Center, Mr. Bendann is verbally assaulted and threatened whenever he moves from protective custody to the medical unit for his daily heart medication and other medications. While at the Howard County Detention Center, Mr. Bendann collapsed while in intake. As "policy," a male correctional officer ordered Mr. Bendann to take off all his clothes, so the correctional officer could reportedly document that Mr. Bendann had no bruises. The correctional officer then showed photos of Mr. Bendann's naked body to fellow correctional officers to degrade Mr. Bendann. In 14 days, the United States Marshal Service ("USMS") has done its best to protect Mr. Bendann. With the exception of one unfortunate event at the August 18, 2023 detention hearing, Defense counsel applauds USMS concern for and dedication to Mr. Bendann's safety. However, even the USMS has had to transfer Mr. Bendann between the abovementioned facilities for his safety. As a consequence, Mr. Bendann has not consistently received his heart medication and other medications. That has caused panic attacks and added to

the anxiety any person feels when incarcerated with the instant allegations. Without question, Mr. Bendann's physical and mental condition is better managed while on home detention and his needless reincarceration threatens both. This factor, too, weighs in favor of conditional release.

> **b. The offenses charged, the weight of the evidence, and the nature of any danger, do not justify detention.**

The nature and circumstances of the offenses charged and the weight of the evidence are undeniably serious in this case, but they do not carry the day on pretrial detention. *Cf. Davis*, 449 F. Supp. 3d at 535 ("[R]are is the case in which there will be no evidence of danger to the community based on alleged criminal conduct.").

The weight of the evidence is not so great that Mr. Bendann has no defense available. For example, unlike many federal child pornography cases, the allegations in this case concern a complaining witness very close to the age of majority; in one of the six charges in the indictment, the alleged date is mere weeks prior to his 18th birthday. From the materials made available to the Defense so far, including the Government's argument at the initial detention hearing, there is no indication of the evidence supporting the Government's allegation of the date of creation of any visual depictions. Oftentimes, that issue comes down to competing forensic analyses by experts at trial. Similarly, on the Exploitation charges under 18 U.S.C. § 2251(a), the Government must prove beyond reasonable doubt that Mr. Bendann "used" or "coerced" the complaining witness to engage in sexual conduct, and engaged in such conduct specifically to create a visual depiction. That element will be contested; for example, the videos charged in the Indictment feature the complaining witness demanding that Mr. Bendann help masturbate him— asking, "Are you gonna take care of that?" in reference to his penis—and requesting that Mr. Bendann perform oral sex (Mr. Bendann declined the complaining witness's request). The weight of the evidence on these elements remains indeterminate and will be tested at trial.

Regardless, the nature of the charges and the weight of the evidence are not clear and convincing proof of Mr. Bendann's *future* danger to the community pending trial, which is the question at issue here. *See United States v. Alston*, 420 F.2d 176, 179 (D.C. Cir. 1969) ("It is not the purpose of the bail system either to punish an accused again for his past crimes, or to punish him in advance for crimes he has not yet been shown to have committed."). When, at the initial detention hearing, the government decried Mr. Bendann as a "danger to children everywhere" based on its charges, that was effectively a call for detention as premature *punishment*. *See id.* ("No one may be confined on the ground that he has committed an offense when the determination is void of the protections that are the essentials of Anglo-American jurisprudence."). That is why courts often refer to the weight of the evidence as "the least important of the various factors." *Motamedi*, 767 F.2d at 1408; *see also United States v. Padilla*, 538 F. Supp. 3d 32, 43 (D.D.C. 2021) (same); *United States v. McAbee*, 628 F. Supp. 3d 140, 154 n.9 (D.D.C. 2022) (same).

When considering only the *prospective* risk of danger, the charges and evidence in this case do not justify pretrial detention. The six counts in the Indictment all arise from conduct between Mr. Bendann and one complaining witness. The underlying sexual conduct allegedly occurred between 2017 and 2019, between six and four years ago, with only the possession charge allegedly occurring into 2023. The Government's own presentation of its evidence suggests that the conduct at issue arose from an ongoing sexual relationship between Mr. Bendann and this specific individual. Such allegations do not support the assertion that Mr. Bendann would be an unmitigable risk to "children everywhere" while on pretrial release. For six months, Mr. Bendann was no threat to any child anywhere. There is no allegation or evidence that Mr. Bendann sexually preyed upon minors in general, as a "pedophile," despite his 15 years

of service at Gilman working with young people. He never used the internet to seek out sex with minors or to traffic in child pornography. The complaining witness is an adult and resides out of state, and Mr. Bendann and the complaining witness have had no contact since the initiation of criminal proceedings. Moreover, neither Mr. Bendann nor his Defense counsel, have used the complaining witness's name publicly. That demonstrates a restraint that the Government has failed to afford Mr. Bendann. While the charges and evidence are gravely serious, they do not support the government's assertion of a generalized risk to the public at large as Mr. Bendann awaits trial. *See Davis*, 449 F. Supp. 3d at 539 (the statutory language in § 3142(g) "makes clear that there are different types of dangers and varying levels of seriousness," so the court must identify the "specific nature" of any danger and "then must consider available release conditions that will address those concerns").

Most crucially: *even if* the Court agrees there is some risk to the public in general, the government must prove it is *unmitigable* risk. That is emphatically not the case here: Mr. Bendann would be released on *home detention*, as supervised by his father and enforced by *electronic monitoring*, along with any other conditions the Court deems appropriate. Mr. Bendann poses no risk to anyone while on house arrest, as the past six months demonstrate. Law enforcement would have access to Mr. Bendann's location at all times. He would have no opportunity to impart harm on minors in the community, or on anyone else for that matter. Such conditions would reasonably assure Mr. Bendann's appearance and community safety. *See United States v. Orta*, 760 F.2d 887, 891–92 (8th Cir. 1985) (discussing "reasonable assurance" requirement and holding that district court erred by instead requiring a "guarantee").

Undeniably, the nature of the danger at issue here is especially sensitive and serious. "It is imperative in such cases that courts evaluate the evidence presented and apply the law, rather

than allowing natural revulsion to overcome objective analysis." *United States v. Thomas*, No. CCB-03-0150, 2006 WL 140558, at *24 (D. Md. Jan. 13, 2006). Here, despite the gravity of the allegations and the type of risk at issue, it remains true that any risk would be thoroughly contained and mitigated by home detention supervised by a parent and enforced by electronic location monitoring. *See id.* at *8, *24. Therefore, sufficient conditions are available, and the charges and the weight of the evidence do not justify detention of Mr. Bendann as an unmitigable risk of danger.[5]

### c. Analogous cases from this Court and others support Mr. Bendann's conditional release.

Case law from this Court and other courts across the country supports that Mr. Bendann—a first-time participant in the criminal legal system with significant supports and a proven track record of success on release—is entitled to pretrial release, and that the Government cannot prove he is an unmitigable danger by clear and convincing evidence.

In *United States v. Thomas*, this Court considered the pretrial detention of an accused who was arrested while in possession of "16,000 images of child pornography" *and* a self-made video tape capturing the accused exposing a sleeping child. 2006 WL 140558, at *1–2. Notably, unlike in this case, the accused in *Thomas* admitted to creating that video and submitted expert evidence in which he disclosed his "pedophilia" disorder and admitted to purchasing the

---

[5] Defense counsel emphasizes public danger here, and throughout this Motion, because the Government did not argue flight risk as a basis for detention in its briefing or oral argument at the initial detention hearing. The Court should treat as waived any argument for detention based on flight risk. However, even if the government subsequently raises flight risk, and this Court considers the issue, the above reasoning applies equally: Mr. Bendann has lifelong ties to Baltimore, would live with and be supervised by his father, and has shown for six months that he is committed to appearing in (federal and state) court, has liquidated assets to retain counsel and fight his case. Even if any flight risk existed, conditions are available to mitigate that risk, such as passport forfeiture and home detention with electronic location monitoring.

15

extensive collection of child pornography. *Id.* at *3, *7. This Court considered the case at great length, acknowledging that the conduct at issue "strike[s] fear into the hearts of all parents" and "is both profoundly upsetting and revolting." *Id.* at *6. Yet this Court emphasized that "[t]he Bail Reform Act requires a reasonable assurance, not a guarantee, of safety," and that "the probability and consequences of the defendant's prospective acts must be balanced against the proposed immediate restraint on the defendant's liberty, as he is presumptively innocent." *Id.* at *24. This Court ordered pretrial release on home detention with electronic monitoring, supervised by the accused's parents, the same conditions available here. *See id.* at *1, *24.

Similarly, in *United States v. Blauvelt*, this Court considered the pretrial detention of an accused facing the exact same charges as Mr. Bendann, with the addition of possession of controlled substances and distribution to a minor. No. WDQ-08-0269, 2008 WL 4755840, at *1 (D. Md. Oct. 28, 2008). Like in this case, the accused had first been charged in state court and was released on bond, "without incident, until arrested on the federal charges more than a year later." *Id.* Unlike in this case, the accused had been arrested six times previously, including a previous acquittal on sex offense charges. *Id.* at *3. Still, the Court concluded that "the conditions of release as proposed by defendant"—home detention at his mother's house with electronic monitoring—"would be sufficient to assure the safety of the community." *Id.* at *5. While the Court found "clear and convincing evidence of *some* risk," it "also concluded" that the proposed conditions "will reasonably assure the safety of others" pending trial. *Id.* at *2. The Court emphasized expert research showing that sexual offense recidivism rates are relatively low and the time period before trial is especially short. *Id.* at *5. When also factoring in "the stringent conditions proposed for the defendant here," the Court concluded that the risk of danger would be sufficiently mitigated. *Id.* at *6–7. The same reasoning applies here.

16

Many more analogs exist from other jurisdictions. In *United States v. Pako*, the court recently ordered release on home detention with electronic monitoring as to an accused facing charges of distributing child pornography and attempting to coerce a minor into sexual activity. No. 21-14021-CR, 2021 WL 2603759, at *3 (S.D. Fla. June 24, 2021). Despite the "highly disturbing" allegations, the Magistrate Judge emphasized: "The issue before the Court is not whether Mr. Pako committed the crimes with which he is charged, nor is it whether he presents *any* risk of flight or danger to the community, nor whether the bond conditions will conclusively prevent those risks from happening." *Id.* at *4. "The Bail Reform Act presents a different question: Will any combination of conditions reasonably assure his appearance and the safety of the community?" *Id.* The court concluded that home detention and electronic monitoring were enough to "adequately mitigate" risks of flight and danger. *Id.* at *5–6.

Likewise, in *United States v. Cross*, the court granted the accused's motion to revoke a Magistrate Judge's detention order, despite the court's observation that "[t]he acts charged against the defendant are horrendous in nature." 389 F. Supp. 3d 140, 141–43 (D. Mass. 2019). The accused had allegedly attempted to use the internet to arrange for a sexual encounter with a minor. *Id.* at 142. The Court considered facts like "defendant's lack of criminal history, community ties, steady employment," and "family support," and concluded that the government "failed to meet its burden of proving, by clear and convincing evidence, that no condition or combination of conditions will reasonably ensure community safety." *Id.* at 142–43. The accused would be "under constant supervision by his fiancé and father," and "the community . . . is also aware of the allegations thus decreasing the likelihood that he will be able to re-offend." *Id.* Therefore, home detention with electronic monitoring were available as sufficient conditions to mitigate any risk of danger. *See id.*

Even more examples exist when analogizing to other serious crimes that carry the presumption of detention. For example, in *Davis*, this Court ordered pretrial release despite government evidence, including audio and video recordings, showing more than ten controlled buys of cocaine, heroin, and fentanyl, and five transactions of firearms, all directly from the accused, who had six prior arrests and ongoing substance abuse. 449 F. Supp. 3d at 536, 539 (emphasizing lack of criminal convictions and history of violence, and holding that any "concerns about danger to the community if he were released . . . can be addressed with release conditions"). In *Chen*, as noted above, the defendants were conditionally released pretrial in a case arising from the then-"largest heroin seizure in United States history," because of "the willingness on the part of the family to serve as sureties" for the accused, and because the accused did not "ha[ve] any prior criminal record or history of drug use." 820 F. Supp. at 1208, 1210–11. Many similar precedents exist.[6]

Collectively, these decisions and the many others like them reflect that the pretrial detention decision is not a mini-trial, and punishment for the alleged crimes at issue is not a lawful consideration. The only question is whether the government has shown by clear and convincing evidence—the second-highest possible burden under law—that the accused poses an unmitigable risk of future danger while on release for some months pending a trial. The government cannot meet that burden here. Mr. Bendann is not a danger to the public at large, and

---

[6] *See, e.g.*, *United States v. Clash*, No. 20-268-JKB, ECF Nos. 1, 31 (D. Md. Aug. 25, 2020) (ordering accused released on home confinement in case charging distribution of over 400 grams of fentanyl and 280 grams of cocaine base); *United States v. Coleman*, No. 21-270-GLR, ECF Nos. 1, 22 (D. Md. July 21, 2021) (same, on charges alleging over 500 grams of cocaine and 400 grams of fentanyl, where accused had two prior federal drug cases); *United States v. Lowry*, No. 19-341-ELH, ECF Nos. 1, 38 (D. Md. July 17, 2019) (same, in case charging possession of fentanyl as well as two firearms and ammunition).

conditions are available that will make it impossible for Mr. Bendann to harm anyone anyway. The Court should revoke the Detention Order.

## CONCLUSION

For the foregoing reasons, the Court should allow for a prompt hearing, revoke the Detention Order, and order Mr. Bendann released on home detention with electronic monitoring and any additional conditions the Court deems appropriate.

Respectfully submitted,

_____
Kobie A. Flowers
Michael R. Abrams
Brown, Goldstein & Levy, LLP
120 East Baltimore Street, Suite 2500
Baltimore, Maryland 21202
T: (410) 962-1030
F: (410) 385-0869
kflowers@browngold.com
mabrams@browngold.com

*Counsel for Christopher Bendann*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this filing was served on all counsel of record via the Court's electronic filing service.

Date: September 1, 2023              */s/ Kobie Flowers*
                                     Kobie Flowers

19