```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
 2                      NORTHERN DIVISION

 3   UNITED STATES OF AMERICA,)
                             )
 4          vs.              )  CRIMINAL CASE NO. JKB-23-278
                             )
 5   CHRISTOPHER KENJI       )
     BENDANN,                )
 6          Defendant.       )
     _____)

 7

 8
                      Thursday, September, 2023
 9                        Courtroom 5A
                       Baltimore, Maryland
10
                        DETENTION HEARING
11
              BEFORE:  THE HONORABLE JAMES K. BREDAR, Judge
12

13   On Behalf of the United States:

14        Colleen McGuinn, Esquire
          Kimberly Hagan, Esquire
15        Assistant United States Attorney
          36 South Charles Street
16        Baltimore, MD, 21201

17   On Behalf of the Defendant:

18        Kobie Flowers, Esquire
          Michael Abrams, Esquire
19        Brown, Goldstein & Levy LLP
          120 E Baltimore Street, Suite 2500
20        Baltimore, MD 21202

21   Also Present:

22        Manisha Garner, U.S. Probation

23

24

25        (Computer-aided transcription of stenotype notes)
```

Kassandra L. McPherson, RPR - Federal Official Court Reporter
101 W.  Lombard Street, 4th Floor
Baltimore, MD 21201

(410) 962-4544

```
 1                    P R O C E E D I N G
                          11:02 a.m.
 2

 3          MS. MCGUINN:  Yes, Your Honor, good morning.  Colleen

 4  McGuinn on behalf of the government.  And standing to my right

 5  is Assistant U.S. Attorney Kim Hagan.  We are calling United

 6  States of America versus Christopher Kenji Bendann.  This is

 7  criminal case number JKB-23-278.

 8          Good morning, Your Honor.

 9          THE COURT:  Good morning.  Mr. Flowers.

10          MR. FLOWERS:  Good morning, Your Honor.  Colby Flowers

11  on behalf of Mr. Christopher Bendann.  Seated with me at counsel

12  table is my co-counsel, Mr. Michael Abrams.  Again, good morning

13  Your Honor.

14          THE COURT:  Sir, are you Christopher Bendann?

15          THE DEFENDANT:  Good morning, Your Honor.  Yes.

16          THE COURT:  Good morning.  And good morning to you,

17  Mr. Abrams.

18          Defense counsel, you and your client may be seated.

19          This matter comes on for review of a detention order

20  entered by a magistrate judge with the defendant asking the

21  court to conduct a de novo review of the order previously

22  entered and, frankly, of the totality of the circumstances, and

23  then make its own ruling applying the same rules and principles

24  that the magistrate judge was governed by.

25          So let's get some ground rules straight.  Before we
```

```
 1   begin, Ms. McGuinn, first of all, do you agree that the Court is
 2   to conduct a de novo inquiry or proceeding here?
 3            MS. MCGUINN:  Yes, Your Honor.
 4            THE COURT:  And that while the magistrate judge has
 5   conducted his hearing and authored what I find to be a very
 6   thoughtful opinion, it ultimately is not really to be given any
 7   deference or significance at this point, but instead we start
 8   over with a clean slate.
 9            MS. MCGUINN:  I do believe it is de novo, Your Honor.
10            THE COURT:  Okay.  Very good.
11            Does the Government wish to proceed with live evidence
12   or by proffer or by some combination of the two?
13            MS. MCGUINN:  We would proceed by proffer, Your Honor.
14            THE COURT:  Okay.  Please be careful when proffering
15   to tell me what evidence it is that is the source of the
16   proffer.
17            MS. MCGUINN:  Yes, sir.
18            THE COURT:  If it's testimony, then whose testimony is
19   it.  If it's documentary evidence, then what are the documents.
20   If it's electronic data that the government contends they have
21   in their possession, then, you know, what data, where is it,
22   what's its status and so forth.  You may proceed.
23            MS. MCGUINN:  Thank you, Your Honor.
24            As Your Honor already said at the outset, the
25   Government would maintain, obviously, that Your Honor needs to
```

```
 1   look at the totality of the circumstances.  And at this point
 2   there is still a presumption under 3142(e)(3)(E).  And even if
 3   defense counsel's able to successfully rebut that, it does not
 4   go away it is simply part and parcel of the totality of the
 5   circumstances that I know Your Honor will consider.  And
 6   obviously the burden of proof is by clear and convincing
 7   evidence in this case.
 8            The factors under 3142(g), in addressing them in
 9   order, first, is the nature and circumstances of the offenses
10   charged.  There are five videos charged.  I will tell Your Honor
11   that the source of that information comes from an iCloud account
12   that is in the defendant's name.
13            THE COURT:  Do you contend that the defendant's a
14   flight risk or do you seek his detention solely on the danger
15   prong?
16            MS. MCGUINN:  On dangerousness, Your Honor.
17            THE COURT:  Not a flight risk?
18            MS. MCGUINN:  No, Your Honor.  I do believe when the
19   charges elevated from the state case to here it does create a
20   little bit of one, but I don't -- I am not going to argue that
21   to Your Honor in light of counsel's assertions.  Certainly, that
22   he's a member of the community, has a home here and things of
23   that nature.  I do think sometimes that presents itself, but I
24   don't believe that is worthy of an argument today.
25            THE COURT:  Okay.
```

```
1              MS. MCGUINN:  Thank you.

2              Your Honor, as to the nature and circumstances of the

3    offense charged, as I indicated there are five videos.  These

4    were taken from the iCloud account that belongs to the

5    defendant.  I believe Your Honor indicated you have read, or at

6    least alluded that you have read prior information or prior

7    detention proceedings or memorandum in this case.  The

8    Government --

9              THE COURT:  I've reviewed everything in this record,

10   this entire docket --

11             MS. MCGUINN:  Yes, sir.

12             THE COURT:  -- including what transpired previously

13   before the magistrate judge.

14             MS. MCGUINN:  Yes.

15             THE COURT:  But it's a de novo proceeding.

16             MS. MCGUINN:  Yes.  And I only say that I provided,

17   under seal, a description of the all the videos.  That's sort of

18   what I was alluding to, Your Honor.  But as Your Honor knows,

19   the five videos were disturbing, and I would remark they also

20   show an escalation in the behaviors between the minor victim in

21   this case and the defendant.

22             The first two videos that occurred when the victim was

23   16, and then ultimately when he had recently turned 17, occurred

24   in a motor vehicle.  It depicts the minor victim masturbating as

25   the defendant is filming him.  There's no -- at that point it's
```

```
 1    sort of a voyeuristic.
 2              THE COURT:  Whether or not evidence is disturbing, of
 3    course, is not, by itself, probative of anything relevant here.
 4              MS. MCGUINN:  I understand.
 5              THE COURT:  The question is whether or not -- not so
 6    much whether it's disturbing, but whether or not it's evidence
 7    that criminal activity occurred or whether there is evidence of
 8    criminal activity.
 9              MS. MCGUINN:  Certainly, Your Honor.  And that's just
10    a use of an adjective.  I understand Your Honor's point.
11              But the first two videos when the victim is 16 and 17,
12    again occur where the victim is masturbating himself.  Count --
13    or Count 3 --
14              THE COURT:  How do we know how old he was when those
15    videos were recorded?
16              MS. MCGUINN:  So we know his date of birth being March
17    of 2001, and we have EXIF data at this point --
18              THE COURT:  We have what?
19              MS. MCGUINN:  EXIF.  E-X-I-F, data as to the videos.
20              THE COURT:  What's that?
21              MS. MCGUINN:  So that's the information that our
22    computer analysts, forensic analysts at the FBI are able to
23    extract from images taken from devices or iCloud or other
24    digital videos and images.  And you can see GPS data, you can
25    see the date that something was filmed.
```

```
 1              THE COURT:  So your proffer is that you'll -- you have
 2    experts who are skilled in this field who will be able to come
 3    to court and testify that after conducting a forensic
 4    examination of the evidence that they seized, that they can say
 5    the date on which the video was made, the location at which it
 6    was made, and so forth.  Is that your proffer?
 7              MS. MCGUINN:  Yes, Your Honor, that is my proffer.
 8    There is also the evidence in the form of the disclosure made by
 9    minor victim which corroborates some of the EXIF data that
10    hasn't been able to be extracted at this point.
11              THE COURT:  The disclosure.  Do you mean the
12    testimony?
13              MS. MCGUINN:  A disclosure that he made to -- in an
14    interview to the Baltimore County Police Department.  Actually,
15    it wasn't the Baltimore County Police Department, it was a child
16    advocacy center social worker back when this minor victim was
17    interviewed in January of 2023.
18              THE COURT:  Okay.  So the minor victim is not a minor
19    now --
20              MS. MCGUINN:  No.
21              THE COURT:  -- but allegedly was a minor victim at the
22    time that the relevant events occurred.
23              MS. MCGUINN:  Yes.
24              THE COURT:  That's the first point.
25              MS. MCGUINN:  Yes.
```

```
 1            THE COURT:  But the second point is that the minor
 2   victim himself contends that he was not -- had not attained the
 3   age of 18 when these videos of him were made.  Is that your
 4   proffer?
 5            MS. MCGUINN:  That is part of the proffer as well,
 6   yes, Your Honor.  We have the videos that the EXIF data supports
 7   that he was not, and also the fact that the minor victim in his
 8   disclosure says that he was not.  He also provided information
 9   as to where some of these videos occurred, and the EXIF data
10   supports that, including the actual location, the approximate
11   ages and dates that he was when this occurred.
12            The progression which is what I was starting with,
13   which was that it first started as him being filmed while he was
14   in the defendant's car and ultimately moved to inside of homes
15   of families where the defendant was house sitting.  The victim,
16   minor victim provided those names of those families, and those
17   families have provided information saying, yes, we were, in
18   fact, away on this particular date and the defendant was house
19   sitting.  So there is some corroboration of that EXIF data as
20   well at this point at this early stage of the investigation.
21            And so as I was indicating, the minor victim's
22   disclosure --
23            THE COURT:  Well, hopefully we're not at too early a
24   stage of the investigation because you asked the grand jury to
25   indict him.
```

09/07/2023 - Bendann Detention Hearing                    9

 1              MS. MCGUINN:  No, sir.  Understood.  As to the five
 2    videos it's not early, but as to the totality of the
 3    investigation, since we've only had access to the devices for
 4    about four or five weeks, then yes, it is early.  But as to
 5    these five videos, Your Honor, the progression that minor victim
 6    discloses that it started as in the car and progressed to the
 7    showers including the homes of particular people that he
 8    described, and the EXIF data location GPS indicates it's
 9    actually at the homes of two of these particular families.  One
10    of these families actually corroborated the date that they were
11    away.

12              So those five videos, the proffer that he was under
13    the age of 18 comes from EXIF data from the disclosure, as well
14    as corroboration taken from photos from inside of their homes of
15    the shower and the locations that match what's shown in the
16    videos.  As well as some of the families having been interviewed
17    and saying yes, those are, in fact, the dates that Mr. Bendann
18    was house sitting for us.  So those are the nature and
19    circumstances of the offenses charged.

20              The weight of the evidence, Your Honor, I think is
21    compelling here in that the two -- first two videos do occur in
22    the defendant's car.  The minor victim has disclosed that these
23    events occurred in the defendant's car while he was filming him.
24    And, more importantly, in the last three videos you can actually
25    see the defendant.  So in the third one you see his image or his

1    reflection in the shower as he films minor victim.

2           And in counts -- what are charged as Counts 4 and 5,

3    the defendant actually appears on screen fully clothed and

4    reaches in and masturbates the victim while the victim is in the

5    shower.  So there's no question at this point, for purposes of

6    this proffer, the defendant is the person who is filming and

7    producing these images.

8           Probably the more compelling argument between the

9    parties is the history and characteristics of the person.  I

10   understand from counsel's -- defense counsel's memorandum

11   before, and the ones that are before Your Honor today, the

12   representation that he is an upstanding member of the community,

13   has been a trusted teacher at Gilman for 15 years and has no

14   prior convictions.

15          I have no contention with the fact that he has no

16   prior convictions.  There are, as Your Honor knows, many

17   individuals who are charged with sexual exploitation of children

18   who have no prior convictions but still detention is warranted.

19   And the government maintains that while that's true, that

20   shouldn't be -- that factor should not weigh any greater than

21   the others when taken in the totality.  The government also

22   believes and maintains and while Your Honor is in a de novo

23   review, I do think what Judge Coulson remarked as that he has

24   these friends and family and loved ones who wrote these letters

25   or are here to support him or have written letters to support

1   him, yet they had no idea that this was going on.  And there is

2   something to be said about that, that he's presenting himself as

3   a trusted teacher at Gilman for 15 years.

4         And yet, as I indicated in the memorandum that I wrote

5   to you, the government is aware of four -- three -- three other

6   minor victims who are now -- one of whom is now an adult, one is

7   --

8         THE COURT:  Well, you say you're aware.  Remember,

9   you've got to proffer -- you've got to tell me what the source

10  of your evidence is.

11        MS. MCGUINN:  Yes, Your Honor.  The Baltimore County

12  Police and the FBI have interviewed three other young adults,

13  one of whom is still a teenager, who have disclosed or made

14  statements that they too experienced -- one disclosed that he

15  experienced the defendant masturbating and performing sex acts

16  on him at a time that he was -- the defendant was house sitting

17  or babysitting at his home.  That interview was in May of 2023.

18        So after this date had charged, this individual came

19  forward and met with Baltimore County Police and the FBI and has

20  made this disclosure.  That investigation, at this point, is not

21  federal as the devices are still being examined.  And Baltimore

22  County, from what I understand, is still investigating.  It is

23  not charged, I'm not maintaining that, but for purposes of this

24  proffer there is another person who has come forward and said

25  yes, I too, was sexually assaulted by the defendant when he was

1  in a position of trust, house sitting and babysitting for my

2  family.  That disclosure has at least been corroborated, in part

3  that the defendant did, in fact, house-sit and babysit for this

4  minor victim and his family.

5         There are two other minor victims who were

6  interviewed, they are now young adults, but they were

7  interviewed by Baltimore County Police and the FBI who do

8  disclose that at times the defendant was babysitting them and

9  they woke up naked and the defendant indicated oh, you were

10 drunk dancing and I put you to bed and put a blanket over him.

11 One, Minor Victim 4, as he indicated in the memorandum, woke up

12 in a totally different room, almost completely naked which is

13 not how he recalled going to bed.

14        So I indicate that is still being investigated for

15 state charges, but for purposes of this proffer it does shed

16 some different light on the fact that the defendant certainly

17 was not a trusted person, at least in the light -- in the eyes

18 of these particular families.  There were also the other calls

19 that Gilman investigated that are not -- and I agree with

20 counsel, they're not criminal per se, but that there were other

21 children who contacted Gilman which is sort of what started this

22 entire investigation and caused minor victim to actually come

23 forward with the full disclosure that launched this entire case,

24 that there were other children who called Gilman.

25        The defendant had furnished them with alcohol.  That

1   he had them run what I colloquial will call the naked laps

2   around St. Paul School or up the hill or at Meadow Ridge Park

3   and up St. Paul School hill.  Your Honor saw in the memorandum

4   that I presented to the court there are text messages,

5   screenshots of text messages from some of these students where

6   the defendant actually says to them, "You don't have to run

7   around, you can take another photo in the bathroom."  So those

8   claims are corroborated by some text messages, screenshots that

9   Baltimore County Police were able to obtain from some of these

10  students.

11          We also have the fact that Gilman -- and I understand

12  -- Gilman School actually had conversations, those are in the

13  employment records that the government has been able to procure

14  and the government has provided to defense counsel.  He's been

15  spoken to by Gilman before about the boundaries he has with

16  students.  That he needs to stop socializing with them, going to

17  movies with them, social media, relationships with them.  All

18  which are blurred lines that teachers shouldn't have with

19  students.  And there was some discussion with him about his

20  house sitting and his babysitting.

21          This is not, at least in -- for this purpose of

22  history and characteristics of the person, again, Gilman at

23  least had some concerns that the defendant wasn't keeping his

24  boundary clear as a teacher in this particular case.

25          THE COURT:  Subject to hearing from defense counsel,

```
 1   I, you know, am at this point not terribly focused on the weight
 2   of the evidence --
 3            MS. MCGUINN:  Understood.
 4            THE COURT:  -- against the defendant.  Again, we'll
 5   hear from defense counsel when it's their turn.  The weight of
 6   the evidence seems to be, for purposes of this hearing only,
 7   quite substantial.
 8            MS. MCGUINN:  Yes.
 9            THE COURT:  But ultimately that issue is not
10   dispositive or determinative of the question that's before the
11   court today, which is whether the defendant need remain in
12   detention pending the adjudication of these charges or whether
13   he can be trusted to be released on some set of conditions,
14   compliant with relevant statute given the nature of the charges
15   that he faces.
16            So I think it would be helpful if we were to pivot or
17   move on --
18            MS. MCGUINN:  Sure.
19            THE COURT:  -- to the other issues that I know you're
20   planning to address that more specifically zero in on the
21   question that I've got to resolve today.
22            MS. MCGUINN:  Understood.
23            THE COURT:  The danger that the defendant's release
24   would pose to the community, to specific individuals, that sort
25   of thing.
```

1         MS. MCGUINN:  Yes, Your Honor.  So the -- that would
2  probably more comply with the fourth prong which is sort of
3  where I was going to be ending.
4         The government's position is that the defendant is, in
5  fact, a danger to the community specifically as to the minor
6  victim in this particular case.  As I wrote in the memorandum
7  that Your Honor I know has read, the defendant contacted and has
8  always contacted minor victim, and through young adulthood was
9  still extorting him into sending these images.  And minor
10 victim's mental health as it were, or well-being since coming
11 forward, since these charges and since knowing the defendant was
12 out, has not -- has -- he has not been doing well.
13        THE COURT:  So it strikes the court that an inherent
14 aspect of the crimes that you allege and the means and methods
15 by which they were executed --
16        MS. MCGUINN:  Yes.
17        THE COURT:  -- is an overlay of secrecy over the whole
18 thing.  That the defendant, while engaged in -- from the
19 government's standpoint, extreme misconduct, he was nonetheless
20 careful about how he preyed upon his victims and he was quite
21 focused in who he preyed upon, and deliberate and careful in the
22 circumstances in which he would execute his crimes.
23        And I guess a central question in the court's mind is,
24 if he has now been detected and apprehended, doesn't that alone
25 successfully address the likelihood that anything of this nature

 1  is going to continue during the time that he's facing these

 2  charges?  He's been exposed.

 3            And then we have the concession from the government, I

 4  think, that since the time of his initial arrest in January by

 5  the state that you don't know of any inappropriate or unlawful

 6  conduct committed by the defendant.  And that's not to say for a

 7  second that your evidence might not be quite powerful, right up

 8  through December of '22.  And even into January, in terms of the

 9  interaction with the minor victim.  And that might not directly

10  -- that that well might relate directly back to the time period

11  when the minor victim was under the age of 18 and, therefore, be

12  directory relevant to the accusations that you make.  Still,

13  what does that picture tell us about the danger that he poses

14  right now?

15            MS. MCGUINN:  Your Honor, the danger that he poses

16  right now is, I understand that if Your Honor even were to place

17  him on restrictive conditions and say that he is not allowed to

18  access the internet or devices or things of that nature, given

19  that these offenses primarily occur in an online -- or at least

20  the grooming aspects of it occurred in an online format, I do

21  not believe because of the proffer that I've made to you that he

22  violated that trust as a teacher and says that Your Honor can

23  trust that he will comply with the conditions that Your Honor

24  would set forth, that he would still be able to access online

25  devices, internet.  And there's still a danger there that he

1  could intimidate or reach out to other victims that we don't

2  even know about yet.

3          Because as I indicated, while these five charges are

4  ready to move forward today, the devices and the iCloud are

5  still being searched.  There have been allegations, as I

6  indicated to Your Honor, of at least some other children, there

7  may be others.  And so if he still has access to the internet

8  and he knows certainly better than I do at this point how many

9  children or how many potential victims are out there.

10          I don't believe he has done anything, given the facts

11 of this case, that this court should trust that any conditions

12 that you would impose, that he is going to comply by those.

13 Maybe he'll stay in his house with his ankle monitoring.  Maybe

14 he'll stay inside and do that restrictive portion of it leaving

15 only to meet with his counsel or whatever restrictions Your

16 Honor would place, but I don't believe that he would be trusted

17 that that is enough when we're talking about the internet age

18 where he could gain access to devices where he could contact

19 other victims.  As at the time he was on release in this case,

20 he --

21          THE COURT:  I understand your contention, but we've

22 got to be more specific than this.  Because in order for the

23 court to grant the government's motion here and continue his

24 pretrial detention, I have to find by clear and convincing

25 evidence that there's no condition or combination of conditions

 1  that will reasonably assure the community's safety.  First of

 2  all, you agree that's the standard I have to --

 3            MS. MCGUINN:  I agree that's the standard.

 4            THE COURT:  -- That I have to comply with.

 5            So I hear the broad statement that you're making, but

 6  I think we need to be more specific.  The defendant proffers

 7  that he can live in his father's home.  In 2023, have we

 8  progressed to the point electronically where the -- the

 9  electronic infrastructure and architecture is such that we

10  actually can't control it anymore?  That we don't have the means

11  by which to lodge a person in a home and be assured that there's

12  no internet connection into that residence?  That there's no

13  capability to connect with communication devices.  Or that if

14  there is, on a very limited basis, say, access to a telephone,

15  landline something like that, that that can't be adequately

16  supervised by a third party custodian to ensure that there isn't

17  the sort of communication that you, I think, otherwise are very

18  appropriately concerned about.

19            So hear me carefully here, hear me well.  I am not

20  diminishing the legitimacy of your worry based on the proffer

21  that you have made, I'm not.  But what I am questioning is

22  whether or not you have adequately addressed the question of

23  whether that danger that you've identified can be reasonably

24  mitigated; reasonably assured.

25            MS. MCGUINN:  I do not believe that it can be, Your

1   Honor.  The proposed third party custodian, and I mean no

2   offense to him or to older people in general, is 78 years old,

3   and as counsel has proffered, has some health issues of his own.

4          I don't believe that entrusting a third party

5   custodian who is 78 years old who --

6          THE COURT:  President of the United States is 80

7   but --

8          MS. MCGUINN:  I understand, Your Honor.  I understand,

9   Your Honor.  That a person who this defendant, for all intents

10  and purposes, had this relationship with students and was

11  committing these crimes against minor victim under the nose of

12  78-year-old father who still supports him, I believe --

13         THE COURT:  Under the nose maybe but the eyes were

14  closed, as were those of --

15         MS. MCGUINN:  Many people.

16         THE COURT:  -- many people that he was otherwise

17  associated with and affiliated with, which ties back into the

18  point I made a moment ago.  His modus operandi seemed to be

19  entirely dependent upon parents, school administrators, his own

20  father, other people in the community; their ignorance of what

21  he was involved in, at least from the government's perspective.

22  But that -- that's a status that is no longer true.

23         MS. MCGUINN:  But I think that it is if we entrust him

24  to his 78-year-old father as the third party custodian who was

25  supposed to monitor whether or not he is accessing the internet.

 1   whether or not he gets access to a phone and logs in as some

 2   other ID under some other new account or identification.  I do

 3   think that is a concern.

 4          THE COURT:  Well, lets suppose that I were to find

 5   that the 78-year-old father was fully competent and capable of

 6   discharging the duties of a responsible third party custodian.

 7   Or alternatively some other relative or responsible person was

 8   nominated for that role.  Are there other concerns that the

 9   government has even if we had a fully competent third party

10   custodian?

11          MS. MCGUINN:  Yes, Your Honor.  I still believe, and

12   the government still believes that this defendant could access

13   -- have gained access to the internet, to devices without any of

14   us knowing and --

15          THE COURT:  Well, how?  If he's locked down 24/7 on

16   home detention, he's subject to electronic monitoring.  The

17   pretrial services, perhaps with the assistance of law

18   enforcement, first does a sweep of the home to ensure that there

19   are no devices there.  That the only electronic communication in

20   and out of that house is a landline telephone, and no other --

21   no cell phones, no computers, no other devices that have, you

22   know, a straightforward means by which to connect with the

23   internet.  So we've got that sort of a check that's been made.

24          And so in order for the defendant to access a device

25   or a means of communication by which he could reach out to

1    potential witnesses, victims, and so forth, the category of

2    people that the court agrees completely with the government

3    should be insulated entirely from any interaction with him

4    during this time period.  But that -- that's seemingly assured

5    with the only -- the only option the defendant has at that point

6    is to -- is to depart the home and access a device in some other

7    way.  Is -- tell me what's wrong with that thinking?

8            MS. MCGUINN:  Your Honor, the government simply does

9    not have the trust that the defendant would comply with all of

10   these conditions as Your Honor is saying.  I understand -- I

11   understand the point Your Honor is making.  The government does

12   not believe that trust should be extended to the defendant

13   because of --

14           THE COURT:  Well, give me -- spin out the scenario by

15   which he violates the trust.  What would you do?

16           MS. MCGUINN:  Based on what Your Honor just said --

17           THE COURT:  Yeah.

18           MS. MCGUINN:  Based on what Your Honor just said,

19   obviously I can't.  But I understand what Your Honor's point is.

20   But Your Honor is putting in a perfect situation that we just

21   can't predict is going to happen.

22           THE COURT:  Well, I'm not just saying predict it's

23   going to happen, I'm telling you as the government to help

24   accomplish it, together with the pretrial services agency of

25   this court.  You're saying you can't do that?

```
 1          MS. MCGUINN:  I'm not saying I can't do that, Your
 2   Honor.
 3          THE COURT:  Is there any evidence in this record of
 4   the -- both before this court and before the Baltimore County
 5   Court, of the defendant violating a court directive?
 6          MS. MCGUINN:  There is no evidence that he violated
 7   court directive, no.
 8          THE COURT:  Okay.  Ms. McGuinn, you got anything else?
 9          MS. MCGUINN:  The only last thing I wanted to say,
10   Your Honor, is that two uncles of the victim are here.  And it
11   was the minor victim's family's wish that I convey to Your Honor
12   that it has been since the detention of the defendant that they
13   have been given some peace that their safety is insured, and
14   that of their son.
15          THE COURT:  Thank you, Ms. McGuinn.
16          Good morning, Mr. Flowers.
17          MR. FLOWERS:  Good morning, Your Honor.
18          I will be relatively brief because I know the Court
19   has read all the filings in this case, and it's because of our
20   latest filing that I think I can be brief.
21          We addressed all of the issues the government raised
22   as far as nature of the circumstances of the offense where we
23   contest those issues.  We contest, obviously, the weight of the
24   evidence in this case.  But we concede that at this early stage
25   of the case those are significant -- significant issues.  But I
```

```
 1    want to go back to what --
 2             THE COURT:  Let me tell you that I found your
 3    submissions to be overheated, Mr. Flowers, and not particularly
 4    helpful.  And so I do need a full presentation from you.
 5             MR. FLOWERS:  Fair enough.
 6             THE COURT:  The tone of the submission that you
 7    submitted last night in particular, out of character with the
 8    experience that I have with you previously and your very fine
 9    law firm.  So tell me, if you wish, you're not required to do
10    anything in this hearing, but I am quite eager to hear from your
11    side why the government's concerns about the trustworthiness of
12    your client aren't well founded.
13             MR. FLOWERS:  First, I want to apologize to the court
14    for the court's reading of our -- my submission of last night as
15    being overheated.  Certainly, that was not the intention.  The
16    intention, certainly, Your Honor, was simply to deal with what
17    we believe has been kind of the maximalist treatment of
18    Mr. Bendann when Mr. Bendann has -- and I think the most
19    important part of this case, Your Honor, Mr. Bendann has for six
20    months complied with his conditions of release.  And I think the
21    most important part, perhaps the most important piece of paper
22    in this case is our Exhibit 3 on what we submitted back on
23    September the 1st.  And in that exhibit, Exhibit 3, that's the
24    exhibit from the state-side pretrial services.  And in that
25    exhibit, Your Honor, Mr. Bendann has been on pretrial
```

 1   supervision with the state court for six months starting on

 2   February the 21st of 2023.  And this report is actually dated

 3   August 21st of 2023.  And the last sentence of the report by

 4   these pretrial services officer, who have been supervising Mr.

 5   Bendann says the following:

 6              Prior to the defendant's incarceration, C. Bendann had

 7   been reporting as required to pretrial supervision and reported

 8   full compliance with all court-ordered conditions.

 9              THE COURT:  Yeah, but what were those court are

10   ordered conditions?  For instance, was he under any internet

11   restriction from the state court?

12              MR. FLOWERS:  He was not under any internet

13   restrictions from state court Your Honor.

14              THE COURT:  Why wasn't he?

15              MR. FLOWERS:  Because the internet restriction, I

16   don't think really -- and this is what I tried to explain last

17   night to the court, is really incongruent with the allegations

18   here.  The allegations here are that there are five videos

19   separate and apart from the internet.

20              THE COURT:  Yeah, but there's allegations that your

21   client was communicating with one of the alleged victims of this

22   series of crimes as recently as December, perhaps in January of

23   this year.

24              MR. FLOWERS:  I understand.  And as the court is well

25   aware, at least part of those allegations we certainly contest.

 1  It's the first time we've learned that Apple somehow had some --
 2  a file that was expunged.  Again, we haven't been able to review
 3  and test that information, we don't even know who the person at
 4  Apple is that gave this information.  But be that as it may,
 5  there are also, as I tried to share with the court, many more
 6  communications, both with the complaining witness and others
 7  which are consistent with noncriminal conduct.  Also --
 8              THE COURT:  Well, there's no contention that every
 9  communication between your client and the so-called minor victim
10  was itself a crime.  But if your client preyed upon this victim
11  when he was a child, in the manner that the government alleges
12  that he did, and then in the period of time after the victim was
13  no longer a child but the crime remained undetected, your client
14  continued to communicate with him in a way that could be
15  reasonably interpreted as threatening or pressuring or
16  tampering.  That's a matter of grave concern to the court.
17              MR. FLOWERS:  It's a matter of grave concern to us
18  also, Your Honor.  And I submit to the court that there is more
19  context about how Mr. Bendann was communicating with the
20  complaining witness.  And again, instead of working in
21  speculation, which I think the government has -- talking about
22  what the government believes will happen, what could happen, I
23  direct the court's attention to what actually has happened.  And
24  for six months pretrial services, as I indicated here, stated
25  that Mr. Bendann complied perfectly.  For six months, Judge

1   Bredar, we've known exactly who the complaining witness is, and
2   the other, I will call uncharged witnesses in this case.  We
3   have never mentioned the complaining witness's name.  If we
4   wanted to intimidate, if we wanted to strike fear in, could have
5   done that in our filings, we didn't do that because if and when
6   this case goes to trial, I can promise the court, by myself and
7   on behalf of Mr. Bendann, we are never here to intimidate,
8   dehumanize, or treat with less than dignity even a complaining
9   witness.
10           THE COURT:  Let's be very careful here, Mr. Flowers.
11  The court would never suggest for a second that you as counsel
12  would have that intention, nor your colleagues in your law firm.
13  So this case is about your client not about you.
14           MR. FLOWERS:  Well, it is about me, Your Honor, from
15  this perspective, because the government counsel indicated that
16  when Mr. Bendann in June of 2023 put a post on Facebook,
17  essentially saying I'm innocent, I'm going to fight these
18  charges, the charges then were just the state charges,
19  government counsel, I believe in overheated rhetoric, accused
20  Mr. Bendann of intimidating the complaining witness.
21           I explained to the court, to the magistrate judge and
22  to government counsel, Mr. Bendann did not post this Facebook
23  and Instagram social media post without first coming through me.
24  And I submitted this social media post for the court so that the
25  court could literally go through, line by line.  And there's

1   nothing in this post that is designed to intimidate or do

2   anything to somehow harass the complaining witness.

3          At this point, in June of 2023, Mr. Bendann had to

4   endure considerable negative media; four months of negative

5   media that was orchestrated in large part by the complaining

6   witness's own attorney.  And so that is why it is important that

7   the court understand that Mr. Bendann, when he was on

8   supervision, never violated those conditions of release, never

9   misused the internet.

10         I submit to the court --

11         THE COURT:  Well, when I asked the government

12   previously for evidence that the -- your client had violated any

13   court directive since the time that he was placed under

14   supervision their answer was no.  And I don't know about all

15   this June interaction, I saw what I saw in the papers, but on

16   the record we're making here, that's not part of the

17   government's accusation against your client and I'm not going

18   there either.

19         MR. FLOWERS:  Well, I also want -- the government also

20   accused me of saying that because the complaining witness -- and

21   there are reasons not to believe the complaining witness, again

22   never naming the complaining witness, that somehow, we are

23   again, intimidating the complaining witness.  When, again, that

24   is just a fact.  We've retained a psychologist; we've done our

25   own investigation.  There are reasons to doubt what the

 1    complaining witness says.  And instead of looking at that as
 2    just classic criminal defense work, work done not trying to
 3    dehumanize or intimidate the complaining witness, the government
 4    has taken that to say that I, as defense counsel, was
 5    intimidating a complaining witness.
 6              THE COURT:  Well, both sides going forward need to be
 7    careful about what it is that they say outside of the courtroom
 8    and outside of court documents so that we can ensure that we are
 9    able to conduct a fair trial ultimately in this proceeding.
10              And then a corollary of that is, I'll also be on the
11    look out for any attempts by either side to sort of shade that
12    directive by saying in papers that you filed with the court,
13    that which you know you can't say on the courthouse steps given
14    my concerns about our ability to conduct an entirely fair
15    proceeding.  So let's get that out of the way.
16              Now, let's get more zeroed in on this issue.  In the
17    end, the government says that the reason I've got to detain your
18    client is because he can't be trusted.  And while they can't put
19    a specific -- they can't really put a sharper point on it than
20    that in terms of what it is exactly that they're afraid he's
21    going to do -- oh, that's not fair.  They're fear is that
22    there's going to be some kind of effort to intimidate a witness,
23    to tamper with a witness, and so forth.
24              So I think it's correct to say that the government has
25    articulated a generalized concern, but where they have fallen

1  short is they haven't put a specific point on how he's going to

2  execute on that bad inclination.  But maybe they don't have to.

3  Maybe the track record that your client established prior to his

4  being charged in the state court by itself is sufficiently

5  problematic that the court should react to it.  There is a

6  presumption after all, given the severity of the charges against

7  your client, that there are no conditions that can be set that

8  would adequately mitigate these risks and that would

9  sufficiently assure the safety of the community.

10         You know, in a case such as this with that sort of

11 presumption, is it really at the end of day the court's

12 responsibility to just react proactively to a track record of

13 your client apparently, for purposes of this hearing only,

14 having had some extremely inappropriate communications with

15 young people after conduct for which there's probable cause to

16 believe he engaged in, that was of a serious predatory sexual

17 nature.

18         MR. FLOWERS:  Your Honor, with respect to the

19 presumption that the court rightly raises, the one aspect of the

20 magistrate judge's order that we did agree with was that he

21 indeed found the presumption had been successfully rebutted

22 based on Mr. Bendann's six months of perfect pretrial compliance

23 stateside.

24         With respect to kind of the allegations at issue here,

25 and somehow we cannot trust Mr. Bendann, again, I'd like to take

 1   us off the road of speculation and walk down the road of what
 2   happened.  We have data from a pretrial service, a trained
 3   pretrial service --
 4           THE COURT:  Well, don't start there.  If we're going
 5   to look at the picture deal with the stuff that they've put in
 6   front of the court first; the pre-charging information, the text
 7   messages, the communications that went back and forth.  I don't
 8   think we have much dispute about what's happened since January.
 9           MR. FLOWERS:  I think that's correct.  And, of course,
10   that's all information that predates Mr. Bendann being charged.
11   And we have absolutely no information that Mr. Bendann, once
12   being charged, once knowing that he has to fight this case both
13   in state court and now in federal court, and the state court
14   charges have been dismissed as the court is aware.  But once he
15   knew that, there is absolutely zero evidence that Mr. Bendann
16   intimidated witnesses.  That Mr. Bendann reached out to
17   witnesses.  Zero evidence.
18           THE COURT:  Yeah, but --
19           MR. FLOWERS:  That matters.
20           THE COURT:  That's my point.  I already made that
21   point, you know, to the government.  You're not responding to
22   the other part of this, which is the government is saying, even
23   if we don't have and can't really articulate a specific, exact
24   mechanism by which this defendant would misbehave and continue
25   to prey on people or intimidate witnesses or whatever, judge,

1  based on the fact that the charges are very serious, they carry

2  a presumption that there are no conditions, and we do have

3  behavior prior to his being charged which shows that he will

4  engage in, you know, secretive, highly inappropriate pressure

5  tactics with respect to young, previously minor victims, that's

6  enough.  That's enough.

7           Why is it not enough?

8           MR. FLOWERS:  It's not enough because, again,

9  speculating on what's gonna happen in the future based off

10  something that happened, at best, six months ago, does not meet

11  clear and convincing evidence of danger even in a case where

12  there is a presumption of detention, as the court is very well

13  aware.

14           We cite in our papers United States versus Thomas at

15  2006 West Law 140558.  In that sexual exploitation case the

16  defendant had 16,000 images of child pornography.  In that

17  sexual exploitation case the defendant had videotaped himself

18  sleeping with the minor victim.  In that sexual exploitation

19  case the victim admitted he had a pedophilia disorder.

20           Mr. Bendann has none of those things.  And in that

21  sexual exploitation this court released that defendant on home

22  and 24-hour lockdown, the same thing we are before the court

23  asking here today.

24           But there's another case that this court looked at,

25  another sexual exploitation case, and that's United States

1  versus Blauvelt.

2            THE COURT:  When you say this court, are you referring

3  to me personally or to the U.S. District Court for the District

4  of Maryland?

5            MR. FLOWERS:  Very well, Your Honor.  The U.S.

6  District Court for the District of Maryland.

7            THE COURT:  Thank you.

8            MR. FLOWERS:  Yes.  And so in another case -- this was

9  a Judge Quarrels case.  And that case can be found at 2008 West

10 Law 4755840.  In that case, the defendant had been arrested six

11 previous times.  The defendant in that case, that sexual

12 exploitation case, Your Honor, had been acquitted of a sex

13 offense charge.  Again, none of those things hang over the head

14 of Mr. Bendann.  And yet, in that case, the defendant was

15 released on the same conditions of release we're asking for

16 today.  Judges in this courthouse with allegations far more

17 serious.

18            THE COURT:  Let's talk about third party custodians.

19 Tell me about your client's father.

20            MR. FLOWERS:  Mr. Lance Bendann is present here today.

21 If you could stand up, Mr. Bendann for the court.  Mr. Bendann

22 is a 78-year-old man, junior to the court, and a Vietnam

23 veteran, served this country in the Navy.  He is willing, able,

24 and ready to serve as a third party custodian.  He did it for

25 six months without issue.

1          If the court has any questions, obviously, of

2    Mr. Bendann, again, he is here for court.

3          THE COURT:  Is he retired?  Is he at home during the

4    day?

5          MR. FLOWERS:  Yes.  He is retired.  He does have his

6    own business that he kind of runs on the side.  It's an art

7    business.  In fact, it's one of the businesses that the District

8    of Maryland works with for the judge portraits.  So Mr. Bendann

9    certainly, on some level, is known to the court.

10         Any other questions Your Honor that I can answer about

11   Mr. Bendann the father?

12         THE COURT:  Generally, where is this home?

13         MR. FLOWERS:  It's here in the city.

14         THE COURT:  Here in the city of Baltimore.

15         MR. FLOWERS:  Yes.  Yes.

16         THE COURT:  And tell me about the electronic

17   connections into the home; internet access, devices, computers,

18   et cetera.

19         MR. FLOWERS:  There is internet access in the home.  I

20   submit that cutting off Mr. Bendann's -- I'm talking about Chris

21   Bendann's -- internet access is a condition which is more than

22   necessary because he has not, for six months, engaged in any

23   type of inappropriate conduct.

24         I also want the court to know that we were preparing

25   to go to trial as early as last month in the state case, and so

 1  we conducted quite a few meetings by way of Zoom over the

 2  internet.  And also, I've been in contact with Mr. Bendann and

 3  other witnesses and supporters of Mr. Bendann, again, kind of

 4  through -- on the internet.  So I think to cut off the internet

 5  when there's been no clear and present, clear and convincing

 6  evidence that Mr. Bendann is going to somehow engage in

 7  misconduct, again, I believe that's a condition that is far

 8  greater than what is needed.

 9          More over, Your Honor, I want to bring to the Court's

10  attention, or I think the Court already knows --

11          THE COURT:  I take it though that your client, if that

12  were a condition of his release, would prefer that arrangement

13  over being housed at CDF?

14          MR. FLOWERS:  The Court is correct.

15          Speaking about being housed at CDF and another reason

16  why Mr. Bendann should be released on conditions lesson onerous

17  than pretrial detention.  As the Court is aware, on August 18th

18  of, obviously, last month, Mr. Bendann was detained in CDF and

19  then he was transferred out to Howard County Detention Center

20  within days because the U.S. Marshals, as talented and as

21  professional and as responsive as they are, had security

22  concerns because of the allegations against Mr. Bendann.

23          I have, needless to say, been to both facilities and

24  certainly with respect to super max, I understand where

25  Mr. Bendann is moved from his protective custody arrangement

1  where he must be housed given the nature of these charges, and

2  when he moves through that facility he is subjected to many

3  threats against his life and bodily injury.  So that is not

4  something that we have to subject Mr. Bendann to.

5           Not to mention that Mr. Bendann does suffer from some

6  mental health issues which are exacerbated, obviously, when

7  people are threatening to kill you in custody.  And so, again,

8  putting him in pretrial detention is a condition which is far

9  more onerous and not needed when the danger here can be

10 mitigated by having Mr. Bendann on 24/7 lockdown with a third

11 party custodian.

12          We don't have to guess about that.  The Bail Reform

13 Act asked for clear and convincing evidence.  Well, I've got

14 clear and convincing and demonstrated evidence that for six

15 months there was absolutely no problem.  So it's for those

16 reasons, Your Honor, that setting Mr. Bendann on conditions of

17 release, essentially locking him in his father's house, are

18 conditions of release which are not more than what is needed,

19 are conditions of release which are already proven, demonstrated

20 to work.  And to do more, again, violates the Bail Reform Act

21 because, again, it's not clear and convincing that Mr. Bendann

22 would be a danger to anyone.  In fact, he's been a danger to no

23 one for six months since he's been charged with this crime.

24          THE COURT:  Thank you, Mr. Flowers.

25          Ms. McGuinn, I'll give you the last word.

```
 1              MS. MCGUINN:  Thank you, Your Honor.
 2              The last comment I would like to make is simply that
 3    we have the benefit of the presumption in this case.  And it is
 4    simply not rebutted by saying that the defendant had six months
 5    of compliance and we should use that to say predicting future,
 6    but we can ignore his past behavior as -- from before that as
 7    predicting.
 8              The argument is the same quite frankly.  The defendant
 9    is asking you to use those six months to predict his future
10    danger, and we are asking you use his prior four years to
11    predict that future danger.  Either way, we're both asking Your
12    Honor to trust or not trust that the defendant is going to do
13    the right thing.
14              We have the presumption in this case.  I do not feel
15    that it has been rebutted.  We also have the benefit of Ms.
16    Gardener and that position of pretrial saying that there are no
17    condition or combination of conditions that would ensure the
18    safety of the community in this case.
19              THE COURT:  Thank you.  Let's talk a little bit about
20    scheduling in the case.  Where are we in terms of discovery, Ms.
21    McGuinn?
22              MS. MCGUINN:  So counsel and I have been in
23    discussions about a protective order.  We have a little bit of a
24    disagreement.  I was actually just going to probably file
25    something to Your Honor hopefully today or tomorrow.
```

```
 1              THE COURT:  What's the disagreement?
 2              MS. MCGUINN:  Counsel would like the insertion of a
 3    particular paragraph that the government just doesn't agree
 4    with, and so I was going to present that to Your Honor.
 5              THE COURT:  I'm pretty familiar with the standard
 6    protective order.
 7              MS. MCGUINN:  That was what I was submitting.
 8              THE COURT:  So tell me what you want in addition to
 9    what we normally execute.
10              MR. FLOWERS:  A couple of things, Your Honor.
11              In this case the FBI has leaked information to the
12    media, information that was sealed.
13              THE COURT:  How do you know that?
14              MR. FLOWERS:  I've got some good evidence on that,
15    Your Honor.  I've got text messages.
16              THE COURT:  What is it?
17              MR. FLOWERS:  I've got text messages.
18              THE COURT:  From who to who?
19              MR. FLOWERS:  Journalist explaining that the FBI
20    leaked the information.
21              THE COURT:  And did the journalist tell you who in the
22    FBI leaked it?
23              MR. FLOWERS:  I would prefer, Your Honor, if we could
24    perhaps talk about this not in open court, because there's some
25    other issues that I would like to bring up with the Court
```

1   related to the FBI leaking information to the media, and I just

2   don't think this is the appropriate kind of forum with the media

3   here.

4          THE COURT:  Well, leaks are sneaky.  Seldom is the

5   remedy for sneakiness more sneakiness.  So what have you got?

6          MR. FLOWERS:  Again, Your Honor, I've got text

7   messages from media members that received information, so they

8   say, from the FBI when Mr. Bendann was arrested on the federal

9   warrant.  As you know, the federal warrant is sealed when the

10  FBI agents go out and make their arrest.

11         THE COURT:  Well, I'm not going to push you to show

12  all of your cards today.  Let me ask you this question.  Have

13  you told Ms. McGuinn about this?

14         MR. FLOWERS:  Yes, I have.

15         THE COURT:  Have you shown her the text messages?

16         MR. FLOWERS:  I haven't shown her the text messages

17  just yet, Your Honor.

18         THE COURT:  When are you going to do that?

19         MR. FLOWERS:  Very soon.  Very soon.  I actually need

20  to talk with some folks within our defense team to kind of

21  figure out not only do we want to show it to Ms. McGuinn, but

22  there might be other folks that we'd like to show those text

23  messages to because this has been an ongoing problem in this

24  district with the FBI.

25         THE COURT:  Is there a problem?

```
 1            MS. MCGUINN:  I -- do I feel there is a problem with
 2    the FBI?
 3            THE COURT:  Yeah.
 4            MS. MCGUINN:  No, Your Honor.  I will tell Your Honor,
 5    in fact, my agent when they were discussing the operation to do
 6    the arrest kept it off the main channels.  Usually the FBI has a
 7    whole gets notification, et cetera, et cetera.  They kept it, as
 8    best they could, under wraps.  Because there had been -- counsel
 9    and his client had just been in the media for his state case and
10    so it had just recently kind of been in the news.  So because
11    that name was familiar, they kept it off the regular channels.
12            And, in fact, from what I understand no media was
13    present when they first got to the home to do the warrant.
14    There were people out early walking their dogs and things like
15    that and phone calls got made.  I have no information that the
16    FBI leaked this to anyone.  There would be no benefit to do
17    that.
18            THE COURT:  Well, if there was an indictment returned
19    in the case, I assume there was, there's one in front of me now.
20            MS. MCGUINN:  Yes.
21            THE COURT:  I assume it had been returned by that
22    time.
23            MS. MCGUINN:  Yes.
24            THE COURT:  I assume that the government came before a
25    magistrate judge of this court and asked for a seal order.
```

 1            MS. MCGUINN:  Yes.

 2            THE COURT:  And that the indictment was sealed.

 3            MS. MCGUINN:  Yes.

 4            THE COURT:  Asked for arrest warrants pursuant -- an

 5     arrest warrant pursuant to the indictment and that that was

 6     sealed.

 7            MS. MCGUINN:  Yes.

 8            THE COURT:  So those are all orders that the

 9     government presumably sought that this court entered and so

10     forth.  So if the government came to learn that some official or

11     person elsewhere in the government violated that sealed order,

12     then you need to bring that to the Court's attention.

13            MS. MCGUINN:  So -- and if I learn that I will.

14     Counsel, in fairness, this is the most specific I've heard.  I

15     heard -- I mean, he wrote a little bit about leaked information

16     to the media, I don't understand what that means exactly.

17     Leaked that they were going to make an arrest?  Leaked, I don't

18     know understand what that means.  So this was the most specific

19     information I've received about this.

20            THE COURT:  All right, so --

21            MR. FLOWERS:  And that is why Your Honor, the

22     protective order raises issues for us.  Because if the FBI is

23     leaking sealed information, then we've got concerns about what

24     we can and cannot do with that information.  For example --

25            THE COURT:  Well, you know, Mr. Flowers, you really

1   think that this court is going to enter an order that says, you

2   know, because there's evidence that somebody in the FBI is

3   misbehaving -- and I'm not saying for a second yet that I

4   believe that -- but let's say that I come to believe that

5   because of information that's presented to me, that the remedy

6   for that is going to be the defendant gets one free leak.

7             MR. FLOWERS:  No.

8             THE COURT:  Well, maybe five free leaks.

9             MR. FLOWERS:  That's not --

10            THE COURT:  That's preposterous.  So that would never

11   be a reason not to enter a protective order.  Might be a reason

12   for there to be some inquiry made about whether somebody

13   released information that they shouldn't have, and we should be

14   subjected to some sort of discipline or sanction in relation to

15   that, but it would never be a basis for saying, yeah, good for

16   the goose, good for the gander.

17            MR. FLOWERS:  Your Honor, I submit that the Court need

18   only look at our conduct here.  We have not leaked anything.

19            THE COURT:  Let me see the draft protective order.

20            MS. MCGUINN:  I don't have it with me, Your Honor.  I

21   wasn't prepared to discuss the protective order, but as soon as

22   I -- I have my computer I can email it.

23            THE COURT:  Let me say two things coming out of this.

24   Number one, I would expect to enter a standard protective order

25   in this case and will plan to do so after I've reviewed it as

1    soon as this afternoon.

2            Number two, if anybody's violating seal orders of this

3    court, the lawyers in this case who are aware of that occurring

4    have a responsibility to report it to the court and file an

5    appropriate motion, and that responsibility exists on both

6    sides.

7            MS. MCGUINN:  Yes, sir.

8            THE COURT:  All right.  So that takes care of

9    protective order issue.

10           MR. FLOWERS:  Your Honor, with respect to the

11   protective order I just want to be clear.  That our position was

12   never that we get to just leak stuff.  That wasn't our position,

13   Your Honor.  The position of the protective order simply was, as

14   you know, there's that part in the protective order where the

15   FBI is allowed to use sealed information -- or the government

16   really, the federal government, to share that with any number of

17   agencies.  I had a part in the protective order that simply said

18   that we would like to be able to share that information with the

19   court.  That's what we --

20           THE COURT:  Share what information?

21           MR. FLOWERS:  Any type of sealed information for any

22   remedy that we might have because this information which was

23   supposed to be sealed --

24           THE COURT:  So the way you handle that is, we'll enter

25   the standard protective order and you find yourself in a

 1    circumstance where you feel you have a need to share something

 2    with the court that the protective order precludes you from

 3    doing, then you file a motion with the court and say, I need to

 4    share some information with you, but right now I can't because

 5    there's a protective order that, properly interpreted, restricts

 6    me from doing so, please, can I have relieve.

 7              MR. FLOWERS:  Very well, Your Honor.

 8              THE COURT:  All right.  So get that protective order

 9    in here and let's get that signed.

10              All right.  So now we've got a protective order

11    signed.  Now are we with discovery?

12              MS. MCGUINN:  So then I will be able to send the

13    discovery -- I sent some.

14              THE COURT:  Yeah.

15              MS. MCGUINN:  And then the other that I would want the

16    protective order in place for mainly were names and addresses

17    and things like that, I can send that.

18              THE COURT:  Yeah.

19              MS. MCGUINN:  I have it available, I can get that

20    started tomorrow, and so that's where we are.  And counsel has

21    already seen --

22              THE COURT:  How many tranches of discovery are we, you

23    know, anticipating in this case?  I mean, is this basically it?

24    You've got the discovery assembled and you're ready to produce

25    it --

1          MS. MCGUINN:  Yes.

2          THE COURT:  -- or this is a rolling process.

3          What's the status of forensic investigations with

4   respect to devices?  Has that been completed?

5          MS. MCGUINN:  No, it has not.  We have done a

6   preliminary investigation as to the iCloud and that's where

7   those five videos were found.  And given the government's view

8   that that is -- there's a danger and a seriousness there we

9   charged the five that we had.  The investigation is ongoing as

10  to the devices.  They're still being searched and analyzed by

11  our agents, by the digital forensics.  So those are not -- at

12  this point, if we had to try the case today, the government

13  would present those five videos and the expert to discuss the

14  EXIF data, et cetera.  Counsel has come to see those videos with

15  his investigative team.  So we're ready to proceed on those.

16         THE COURT:  Are you in a position to say, and you may

17  well not be, but are you in a position to say at this point

18  whether the government expects to supersede in this case or not?

19         MS. MCGUINN:  I'm not in a position, but I would not

20  be surprised.

21         THE COURT:  Okay.  How soon do you expect that your

22  position would be more firm one way or another?

23         MS. MCGUINN:  As Your Honor knows --

24         THE COURT:  A week?  A month?

25         MS. MCGUINN:  I would say at least a month.  As Your

 1    Honor knows -- first of all, there were 18 devices, let alone

 2    the iCloud.  The iCloud had thousands of photos and images.

 3    It's just a lot to cull which is why we did what we did as fast

 4    as we could.  Because otherwise we would have been waiting

 5    months and months and months and this would have dragged on and

 6    the state case was pending and there are a lot of factors to be

 7    considered.  So that search remains ongoing.

 8            We've made them available to counsel, he's obviously

 9    welcome to come see the five videos at another time when he

10    needs to.  He asked that we strip the audio, which we were just

11    able to do and I'm going to send that out in the next round of

12    discovery.  So everything is ready as to those five counts.

13            THE COURT:  What's a reasonable deadline for the court

14    to set for the government to complete their non-Jencks discovery

15    in the case?

16            MS. MCGUINN:  I am starting a trial on Monday so I

17    would ask for two weeks.  I know Ms. Hagan is working on the

18    case with me, but I, obviously, started the bulk of it and have

19    most of it.  I would just ask for a little bit of that extra

20    time so that in between trial I can just make sure -- review

21    what's being sent.  It shouldn't take much, I have --

22            THE COURT:  Okay.  But what I'm talking about is a

23    discovery deadline --

24            MS. MCGUINN:  Yes.

25            THE COURT:  -- in the case, not just the production of

```
1   whatever you have assembled at this point.  I mean, you've told
2   me that there is an ongoing investigation.
3              MS. MCGUINN:  Yes.
4              THE COURT:  What I've got to contend with is -- the
5   fact is, what I have to contend with is there is, as a matter of
6   fact, a pending indictment.  So an indictment has been returned.
7              MS. MCGUINN:  Yes.
8              THE COURT:  So it's imperative on the court to bring
9   this to a conclusion.  So in that regard, when would it be
10  reasonable for the court to require the government to have
11  completed their discovery for this case?
12             MS. MCGUINN:  And so in answer to the question, it is
13  a little complicated in that the discovery related to the five
14  charges as they stand right now, the government can -- has all
15  of the reports and can turn now, once we get the protective
16  order, can turn that over in the next two to three weeks, all of
17  it.
18             THE COURT:  Right.
19             MS. MCGUINN:  With the ongoing that's going to be
20  rolling.  If we continue to go through this iCloud --
21             THE COURT:  I understand that.
22             MS. MCGUINN:  That I don't know.
23             THE COURT:  If there were a superseding indictment
24  then the court would have to reconsider the schedule --
25             MS. MCGUINN:  Sure.
```

1          THE COURT:  -- that it entered.  But if there isn't,

2     then we're proceeding on the indictment that exists now.

3          MS. MCGUINN:  Yes.

4          THE COURT:  And there's an imperative to set a

5     schedule with respect to that.

6          MS. MCGUINN:  Yes.

7          THE COURT:  It should be a reasonable one, it should

8     be one that accommodates the government's reasonable

9     investigative needs, and that's why I'm asking you for the

10    suggestion of a date.  But my plan would be to set the discovery

11    deadline and then set a motions deadline for the defendant, some

12    reasonable time after that deadline, and get this case moving.

13         MS. MCGUINN:  So given that we would also need to set

14    motions and trial and the -- for the bulk of discovery I would

15    ask then to at least all September and October, I would say by

16    November 1.  But the only issue I'll bring to Your Honor's

17    attention is I did ask counsel preliminary, before we came

18    today, if they would be willing to toll speedy trial.  One, to

19    allow us to get the discovery.  Counsel's already made allusions

20    to the fact that they're going to call an expert witness given

21    it's contraband, obviously that takes a little doing to make

22    arrangements for their expert to come.  Counsel has indicated,

23    depending on Your Honor's ruling as to detention, they may or

24    may not.  So it's a hard for me to say.

25         I believe I can -- if I'm forced to get discovery out

 1  by an October, November trial date then that's what I'll have to
 2  do.  If Your Honor is allowing us time to make sure we can keep
 3  going through the iCloud if other things are found that are
 4  relevant to these five counts, I'll keep doing that and I'll
 5  keep disclosing discovery through September and October.
 6              THE COURT:  So my inclination is to set a discovery
 7  deadline of November 1.
 8              MS. MCGUINN:  Yes, sir.
 9              THE COURT:  And require the government to produce all
10  the non-Jencks discovery in their possession on or before that
11  date.  But you raise the issue of speedy trial.  I'm wondering
12  how much speedy trial has already been burned up.  Now, we've
13  had some detention motions pending that would have tolled it to
14  some extent.
15              MS. MCGUINN:  And I actually was looking at that
16  myself, Your Honor.  We started the clock on August 21st.
17              THE COURT:  Okay.
18              MS. MCGUINN:  So we're, what two weeks, I think, right
19  now, almost three.  And so if we're setting November 1st, that's
20  obviously getting pretty close if not right near the 70 days,
21  and I think this detention hearing -- the fact that I couldn't
22  file the standard protective order right away, I do think we all
23  need a little bit more time, but I'm not saying it needs to be
24  necessarily into next year per se, but we definitely need a
25  little bit more time, I think, so I can meet my obligations and

 1   certainly so counsel with can have time to prepare.

 2            THE COURT:  And Mr. Flowers, you want to be heard on

 3   speedy trial?

 4            MR. FLOWERS:  Absolutely, Your Honor.  The Court

 5   probably knows my position on speedy trial.  We certainly are

 6   not going to toll speedy trial all the while Mr. Bendann is

 7   incarcerated.  So it really depends on kind of where that --

 8   what the court is going to do as far as it's ruling.

 9            Certainly not -- if the court is going to release

10   Mr. Bendann back on the conditions that he was released on,

11   there we are certainly willing to, you know, to work with the

12   government on tolling speedy trial.  But obviously, you know, if

13   my client is incarcerated, we need to move to trial as quickly

14   as possible.

15            THE COURT:  All right.  Let's do some quick

16   calculations here.  This motion has only been pending since last

17   Friday, I think.  Let's say that it's resolved in the next 24

18   hours.  The clock will start to run again.  Speedy trial from

19   the 21st to the 1st that's about 11 days out of the 70 that have

20   been burned at this point, leaving us with roughly 59, 60 days.

21   All right.

22            MR. FLOWERS:  Your Honor, I believe the speedy trial

23   clock started on the 18th; that's when we had our initial

24   appearance.  We had the arraignment on the 21st.

25            MS. MCGUINN:  The arraignment was the 21st.  So I

1   always thought it was --

2           THE COURT:  First appearance with counsel.

3           MR. FLOWERS:  Right, was the 18th.

4           THE COURT:  You appeared with counsel at initial?

5           MR. FLOWERS:  Yes.

6           THE COURT:  Then it would be the initial.

7           MS. MCGUINN:  That's fine.

8           THE COURT:  Okay.  So it's the 18th, so it's a little

9   bit more time that's been burned up.  Very well.

10          I'd hoped to do scheduling today since I had you here,

11  but in light of the circumstances that have been discussed here

12  in the last few minutes it doesn't seem that that is feasible.

13  So scheduling will occur in the near future, but obviously it

14  will happen in the context of where we stand with respect to

15  speedy trial.  And I respect the fact that there will be some

16  contingent issues there that I'm not going to resolve now.

17          All right.  The detention issue is -- stands

18  submitted, the Court will rule promptly.

19          Is there anything else we can productively address

20  today, M. McGuinn?

21          MS. MCGUINN:  No, Your Honor.  But as of right now the

22  November 1st discovery deadline stands, and then we'll adjust

23  accordingly or --

24          THE COURT:  Let me be clear that it does not.

25          MS. MCGUINN:  Okay.

1          THE COURT:  I should have been a little more explicit

2    than that.  But no scheduling today is the sort of bottom line

3    on where we are.

4          MS. MCGUINN:  Okay.

5          THE COURT:  Anything else from the defendant?

6          MR. FLOWERS:  Nothing from the defense, Your Honor.

7    Thank you.

8          THE COURT:  The defendant's remanded to the custody of

9    the marshal pursuant to the magistrate judge's order.

10         We're in recess.

11         THE CLERK:  All rise.  This honorable court is now in

12   recess.

13              (The proceedings concluded at 12:14 p.m.)

14

15

16

17              CERTIFICATE OF OFFICIAL REPORTER

18         I, Kassandra L. McPherson, Registered Professional
     Reporter, in and for the United States District Court for the
19   District of Maryland, do hereby certify, pursuant to 28 U.S.C. §
     753, that the foregoing is a true and correct transcript of the
20   stenographically-reported proceedings held in the above-entitled
     matter and that the transcript page format is in conformance
21   with the regulations of the Judicial Conference of the United
     States.
22
                          Dated this 1st day of December 2023.
23
                          -S-
24                        _____
                          KASSANDRA L. MCPHERSON, RPR
25                        FEDERAL OFFICIAL COURT REPORTER

**'**

**'22** [1] - 16:8

**1**

**1** [2] - 47:16, 48:7
**11** [1] - 49:19
**11:02** [1] - 2:1
**120** [1] - 1:19
**12:14** [1] - 51:13
**140558** [1] - 31:15
**15** [2] - 10:13, 11:3
**16** [1] - 5:23, 6:11
**16,000** [1] - 31:16
**17** [2] - 5:23, 6:11
**18** [4] - 8:3, 9:13, 16:11, 45:1
**18th** [4] - 34:17, 49:23, 50:3, 50:8
**1st** [5] - 23:23, 48:19, 49:19, 50:22, 52:7

**2**

**2001** [1] - 6:17
**2006** [1] - 31:15
**2008** [1] - 32:9
**2023** [9] - 1:8, 7:17, 11:17, 18:7, 24:2, 24:3, 26:16, 27:3, 52:7
**21201** [1] - 1:16
**21202** [1] - 1:20
**21st** [6] - 24:2, 24:3, 48:16, 49:19, 49:24, 49:25
**24** [1] - 49:17
**24-hour** [1] - 31:22
**24/7** [2] - 20:15, 35:10
**2500** [1] - 1:19
**28** [1] - 52:4

**3**

**3** [3] - 6:13, 23:22, 23:23
**3142(e)(3)(E)** [1] - 4:2
**3142(g** [1] - 4:8
**36** [1] - 1:15

**4**

**4** [2] - 10:2, 12:11
**4755840** [1] - 32:10

**5**

**5** [1] - 10:2
**59** [1] - 49:20
**5A** [1] - 1:9

**6**

**60** [1] - 49:20

**7**

**70** [2] - 48:20, 49:19
**753** [1] - 52:4
**78** [2] - 19:2, 19:5
**78-year-old** [4] - 19:12, 19:24, 20:5, 32:22

**8**

**80** [1] - 19:6

**A**

**a.m** [1] - 2:1
**ability** [1] - 28:14
**able** [13] - 4:3, 6:22, 7:2, 7:10, 13:9, 13:13, 16:24, 25:2, 28:9, 32:23, 42:18, 43:12, 45:11
**above-entitled** [1] - 52:5
**Abrams** [3] - 1:18, 2:12, 2:17
**absolutely** [4] - 30:11, 30:15, 35:15, 49:4
**access** [14] - 9:3, 16:18, 16:24, 17:7, 17:18, 18:14, 20:1, 20:12, 20:13, 20:24, 21:6, 33:17, 33:19, 33:21
**accessing** [1] - 19:25
**accommodates** [1] - 47:8

**accomplish** [1] - 21:24
**accordingly** [1] - 50:23
**account** [3] - 4:11, 5:4, 20:2
**accusation** [1] - 27:17
**accusations** [1] - 16:12
**accused** [2] - 26:19, 27:20
**acquitted** [1] - 32:12
**Act** [2] - 35:13, 35:20
**activity** [2] - 6:7, 6:8
**acts** [1] - 11:15
**actual** [1] - 8:10
**addition** [1] - 37:8
**address** [3] - 14:20, 15:25, 50:19
**addressed** [2] - 18:22, 22:21
**addresses** [1] - 43:16
**addressing** [1] - 4:8
**adequately** [3] - 18:15, 18:22, 29:8
**adjective** [1] - 6:10
**adjudication** [1] - 14:12
**adjust** [1] - 50:22
**administrators** [1] - 19:19
**admitted** [1] - 31:19
**adult** [1] - 11:6
**adulthood** [1] - 15:8
**adults** [2] - 11:12, 12:6
**advocacy** [1] - 7:16
**affiliated** [1] - 19:17
**afraid** [1] - 28:20
**afternoon** [1] - 42:1
**age** [4] - 8:3, 9:13, 16:11, 17:17
**agencies** [1] - 42:17
**agency** [1] - 21:24
**agent** [1] - 39:5

**agents** [2] - 38:10, 44:11
**ages** [1] - 8:11
**ago** [2] - 19:18, 31:10
**agree** [6] - 3:1, 12:19, 18:2, 18:3, 29:20, 37:3
**agrees** [1] - 21:2
**aided** [1] - 1:25
**alcohol** [1] - 12:25
**allegations** [8] - 17:5, 24:17, 24:18, 24:20, 24:25, 29:24, 32:16, 34:22
**allege** [1] - 15:14
**alleged** [1] - 24:21
**allegedly** [1] - 7:21
**alleges** [1] - 25:11
**allow** [1] - 47:19
**allowed** [2] - 16:17, 42:15
**allowing** [1] - 48:2
**alluded** [1] - 5:6
**alluding** [1] - 5:18
**allusions** [1] - 47:19
**almost** [2] - 12:12, 48:19
**alone** [2] - 15:24, 45:1
**alternatively** [1] - 20:7
**America** [1] - 2:6
**AMERICA** [1] - 1:3
**analysts** [2] - 6:22
**analyzed** [1] - 44:10
**ankle** [1] - 17:13
**answer** [3] - 27:14, 33:10, 46:12
**anticipating** [1] - 43:23
**apart** [1] - 24:19
**apologize** [1] - 23:13
**appearance** [2] - 49:24, 50:2
**appeared** [1] - 50:4
**Apple** [2] - 25:1, 25:4
**applying** [1] -

**2:23**
**apprehended** [1] - 15:24
**appropriate** [2] - 38:2, 42:5
**appropriately** [1] - 18:18
**approximate** [1] - 8:10
**architecture** [1] - 18:9
**argue** [1] - 4:20
**argument** [3] - 4:24, 10:8, 36:8
**arraignment** [2] - 49:24, 49:25
**arrangement** [2] - 34:12, 34:25
**arrangements** [1] - 47:22
**arrest** [6] - 16:4, 38:10, 39:6, 40:4, 40:5, 40:17
**arrested** [2] - 32:10, 38:8
**art** [1] - 33:6
**articulate** [1] - 30:23
**articulated** [1] - 28:25
**aspect** [2] - 15:14, 29:19
**aspects** [1] - 16:20
**assaulted** [1] - 11:25
**assembled** [2] - 43:24, 46:1
**assertions** [1] - 4:21
**assistance** [1] - 20:17
**Assistant** [2] - 1:15, 2:5
**associated** [1] - 19:17
**assume** [3] - 39:19, 39:21, 39:24
**assure** [2] - 18:1, 29:9
**assured** [3] - 18:11, 18:24, 21:4
**attained** [1] - 8:2
**attempts** [1] - 28:11
**attention** [4] - 25:23, 34:10,

**40:12, 47:17**
**attorney** [1] - 27:6
**Attorney** [2] - 1:15, 2:5
**audio** [1] - 45:10
**August** [3] - 24:3, 34:17, 48:16
**authored** [1] - 3:5
**available** [2] - 43:19, 45:8
**aware** [7] - 11:5, 11:8, 24:25, 30:14, 31:13, 34:17, 42:3

**B**

**babysit** [1] - 12:3
**babysitting** [4] - 11:17, 12:1, 12:8, 13:20
**bad** [1] - 29:2
**Bail** [2] - 35:12, 35:20
**Baltimore** [13] - 1:9, 1:16, 1:19, 1:20, 7:14, 7:15, 11:11, 11:19, 11:21, 12:7, 13:9, 22:4, 33:14
**Based** [1] - 21:18
**based** [5] - 18:20, 21:16, 29:22, 31:1, 31:9
**basis** [2] - 18:14, 41:15
**bathroom** [1] - 13:7
**bed** [2] - 12:10, 12:13
**BEFORE** [1] - 1:11
**begin** [1] - 3:1
**Behalf** [2] - 1:13, 1:17
**behalf** [3] - 2:4, 2:11, 26:7
**behavior** [2] - 31:3, 36:6
**behaviors** [1] - 5:20
**believes** [3] - 10:22, 20:12, 25:22
**belongs** [1] - 5:4
**bendann** [1] - 35:4
**Bendann** [45] - 2:6, 2:11, 2:14,

9:17, 23:18,
23:19, 23:25,
24:5, 24:6,
25:19, 25:25,
26:7, 26:16,
26:20, 26:22,
27:3, 27:7,
29:25, 30:10,
30:11, 30:15,
30:16, 31:20,
32:14, 32:20,
32:21, 33:2,
33:8, 33:11,
34:2, 34:3, 34:6,
34:16, 34:18,
34:22, 34:25,
35:5, 35:10,
35:16, 35:21,
38:8, 49:6,
49:10
**BENDANN** [1] -
1:5
**Bendann's** [3] -
29:22, 33:20,
33:21
**benefit** [3] - 36:3,
36:15, 39:16
**best** [2] - 31:10,
39:8
**better** [1] - 17:8
**between** [4] -
5:20, 10:8, 25:9,
45:20
**birth** [1] - 6:16
**bit** [8] - 4:20,
36:19, 36:23,
40:15, 45:19,
48:23, 48:25,
50:9
**blanket** [1] -
12:10
**Blauvelt** [1] - 32:1
**blurred** [1] - 13:18
**bodily** [1] - 35:3
**bottom** [1] - 51:2
**boundaries** [1] -
13:15
**boundary** [1] -
13:24
**BREDAR** [1] -
1:11
**Bredar** [1] - 26:1
**brief** [2] - 22:18,
22:20
**bring** [5] - 34:9,
37:25, 40:12,
46:8, 47:16
**broad** [1] - 18:5
**Brown** [1] - 1:19
**bulk** [2] - 45:18,

47:14
**burden** [1] - 4:6
**burned** [3] -
48:12, 49:20,
50:9
**business** [2] -
33:6, 33:7
**businesses** [1] -
33:7

## C

**calculations** [1] -
49:16
**cannot** [2] -
29:25, 40:24
**capability** [1] -
18:13
**capable** [1] - 20:5
**car** [4] - 8:14, 9:6,
9:22, 9:23
**cards** [1] - 38:12
**care** [1] - 42:8
**careful** [5] - 3:14,
15:20, 15:21,
26:10, 28:7
**carefully** [1] -
18:19
**carry** [1] - 31:1
**CASE** [1] - 1:4
**case** [52] - 2:7,
4:7, 4:19, 5:7,
5:21, 12:23,
13:24, 15:6,
17:11, 17:19,
22:19, 22:24,
22:25, 23:19,
23:22, 26:2,
26:6, 26:13,
29:10, 30:12,
31:11, 31:15,
31:17, 31:19,
31:24, 31:25,
32:8, 32:9,
32:10, 32:11,
32:12, 32:14,
33:25, 36:3,
36:14, 36:18,
36:20, 37:11,
39:9, 39:19,
41:25, 42:3,
43:23, 44:12,
44:18, 45:6,
45:15, 45:18,
45:25, 46:11,
47:12
**category** [1] -
21:1
**caused** [1] - 12:22
**CDF** [1] - 34:13,

34:15, 34:18
**cell** [1] - 20:21
**center** [1] - 7:16
**Center** [1] - 34:19
**central** [1] - 15:23
**certainly** [13] -
4:21, 6:9, 12:16,
17:8, 23:15,
23:16, 24:25,
33:9, 34:24,
49:1, 49:5, 49:9,
49:11
**CERTIFICATE** [1]
- 52:1
**certify** [1] - 52:4
**cetera** [1] - 33:18,
39:7, 44:14
**channels** [2] -
39:6, 39:11
**character** [1] -
23:7
**characteristics**
[2] - 10:9, 13:22
**charge** [1] - 32:13
**charged** [14] -
4:10, 5:3, 9:19,
10:2, 10:17,
11:18, 11:23,
29:4, 30:10,
30:12, 31:3,
35:23, 44:9
**charges** [15] -
4:19, 12:15,
14:12, 14:14,
15:11, 16:2,
17:3, 26:18,
29:6, 30:14,
31:1, 35:1,
46:14
**charging** [1] -
30:6
**Charles** [1] - 1:15
**check** [1] - 20:23
**child** [4] - 7:15,
25:11, 25:13,
31:16
**children** [5] -
10:17, 12:21,
12:24, 17:6,
17:9
**Chris** [1] - 33:20
**CHRISTOPHER**
[1] - 1:5
**Christopher** [3] -
2:6, 2:11, 2:14
**circumstance** [1]
- 43:1
**circumstances**
[9] - 2:22, 4:1,
4:5, 4:9, 5:2,

9:19, 15:22,
22:22, 50:11
**cite** [1] - 31:14
**city** [2] - 33:13,
33:14
**claims** [1] - 13:8
**classic** [1] - 28:2
**clean** [1] - 3:8
**clear** [11] - 4:6,
13:24, 17:24,
31:11, 34:5,
35:13, 35:14,
35:21, 42:11,
50:24
**CLERK** [1] - 51:11
**client** [16] - 2:18,
23:12, 24:21,
25:9, 25:10,
25:13, 26:13,
27:12, 27:17,
28:18, 29:3,
29:7, 29:13,
34:11, 39:9,
49:13
**client's** [1] - 32:19
**clock** [3] - 48:16,
49:18, 49:23
**close** [1] - 48:20
**closed** [1] - 19:14
**clothed** [1] - 10:3
**co** [1] - 2:12
**co-counsel** [1] -
2:12
**Colby** [1] - 2:10
**colleagues** [1] -
26:12
**Colleen** [2] - 1:14,
2:3
**colloquial** [1] -
13:1
**combination** [3] -
3:12, 17:25,
36:17
**coming** [3] -
15:10, 26:23,
41:23
**comment** [1] -
36:2
**committed** [1] -
16:6
**committing** [1] -
19:11
**communicate** [1]
- 25:14
**communicating**
[2] - 24:21,
25:19
**communication**
[5] - 18:13,
18:17, 20:19,

20:25, 25:9
**communication
s** [3] - 25:6,
29:14, 30:7
**community** [7] -
4:22, 10:12,
14:24, 15:5,
19:20, 29:9,
36:18
**community's** [1] -
18:1
**compelling** [2] -
9:21, 10:8
**competent** [2] -
20:5, 20:9
**complaining** [15]
- 25:6, 25:20,
26:1, 26:3, 26:8,
26:20, 27:2,
27:5, 27:20,
27:21, 27:22,
27:23, 28:1,
28:3, 28:5
**complete** [1] -
45:14
**completed** [2] -
44:4, 46:11
**completely** [2] -
12:12, 21:2
**compliance** [3] -
24:8, 29:22,
36:5
**compliant** [1] -
14:14
**complicated** [1] -
46:13
**complied** [2] -
23:20, 25:25
**comply** [5] - 15:2,
16:23, 17:12,
18:4, 21:9
**computer** [2] -
6:22, 41:22
**Computer** [1] -
1:25
**Computer-aided**
[1] - 1:25
**computers** [2] -
20:21, 33:17
**concede** [1] -
22:24
**concern** [4] -
20:3, 25:16,
25:17, 28:25
**concerned** [1] -
18:18
**concerns** [6] -
13:23, 20:8,
23:11, 28:14,
34:22, 40:23

**concession** [1] -
16:3
**concluded** [1] -
51:13
**conclusion** [1] -
46:9
**condition** [6] -
17:25, 33:21,
34:7, 34:12,
35:8, 36:17
**conditions** [19] -
14:13, 16:17,
16:23, 17:11,
17:25, 21:10,
23:20, 24:8,
24:10, 27:8,
29:7, 31:2,
32:15, 34:16,
35:16, 35:18,
35:19, 36:17,
49:10
**conduct** [9] -
2:21, 3:2, 16:6,
25:7, 28:9,
28:14, 29:15,
33:23, 41:18
**conducted** [2] -
3:5, 34:1
**conducting** [1] -
7:3
**Conference** [1] -
52:6
**conformance** [1]
- 52:5
**connect** [2] -
18:13, 20:22
**connection** [1] -
18:12
**connections** [1] -
33:17
**consider** [1] - 4:5
**considerable** [1] -
27:4
**considered** [1] -
45:7
**consistent** [1] -
25:7
**contact** [2] -
17:18, 34:2
**contacted** [3] -
12:21, 15:7,
15:8
**contend** [3] -
4:13, 46:4, 46:5
**contends** [2] -
3:20, 8:2
**contention** [3] -
10:15, 17:21,
25:8
**contest** [3] -

22:23, 24:25
**context** [2] - 25:19, 50:14
**contingent** [1] - 50:16
**continue** [4] - 16:1, 17:23, 30:24, 46:20
**continued** [1] - 25:14
**contraband** [1] - 47:21
**control** [1] - 18:10
**conversations** [1] - 13:12
**convey** [1] - 22:11
**convictions** [3] - 10:14, 10:16, 10:18
**convincing** [7] - 4:6, 17:24, 31:11, 34:5, 35:13, 35:14, 35:21
**corollary** [1] - 28:10
**correct** [4] - 28:24, 30:9, 34:14, 52:4
**corroborated** [3] - 9:10, 12:2, 13:8
**corroborates** [1] - 7:9
**corroboration** [2] - 8:19, 9:14
**Coulson** [1] - 10:23
**counsel** [26] - 2:11, 2:12, 2:18, 12:20, 13:14, 13:25, 14:5, 17:15, 19:3, 26:11, 26:15, 26:19, 26:22, 28:4, 36:22, 37:2, 39:8, 40:14, 43:20, 44:14, 45:8, 47:17, 47:22, 49:1, 50:2, 50:4
**Counsel's** [1] - 47:19
**counsel's** [4] - 4:3, 4:21, 10:10
**count** [1] - 6:12
**Count** [1] - 6:13
**country** [1] - 32:23
**counts** [3] - 10:2, 45:12, 48:4

**Counts** [1] - 10:2
**County** [9] - 7:14, 7:15, 11:11, 11:19, 11:22, 12:7, 13:9, 22:4, 34:19
**couple** [1] - 37:10
**course** [2] - 6:3, 30:9
**Court** [13] - 3:1, 22:5, 22:18, 32:3, 32:6, 34:10, 34:14, 34:17, 37:25, 41:17, 49:4, 50:18, 52:3
**court** [68] - 2:21, 7:3, 13:4, 14:11, 15:13, 17:11, 17:23, 21:2, 21:25, 22:4, 22:5, 22:7, 23:13, 24:1, 24:8, 24:9, 24:11, 24:13, 24:17, 24:24, 25:5, 25:16, 25:18, 26:6, 26:11, 26:21, 26:24, 26:25, 27:7, 27:10, 27:13, 28:8, 28:12, 29:4, 29:5, 29:19, 30:6, 30:13, 30:14, 31:12, 31:21, 31:22, 31:24, 32:2, 32:21, 32:22, 33:1, 33:2, 33:9, 33:24, 37:24, 39:25, 40:9, 41:1, 42:3, 42:4, 42:19, 43:2, 43:3, 45:13, 46:8, 46:10, 46:24, 49:8, 49:9, 51:11
**COURT** [130] - 1:1, 2:9, 2:14, 2:16, 3:4, 3:10, 3:14, 3:18, 4:13, 4:17, 4:25, 5:9, 5:12, 5:15, 6:2, 6:5, 6:14, 6:18, 6:20, 7:1, 7:11, 7:18, 7:21, 7:24, 8:1, 8:23, 11:8, 13:25, 14:4, 14:9, 14:19,

14:23, 15:13, 15:17, 17:21, 18:4, 19:6, 19:13, 19:16, 20:4, 20:15, 21:14, 21:17, 21:22, 22:3, 22:8, 22:15, 23:2, 23:6, 24:9, 24:14, 24:20, 25:8, 26:10, 27:11, 28:6, 30:4, 30:18, 30:20, 32:2, 32:7, 32:18, 33:3, 33:12, 33:14, 33:16, 34:11, 35:24, 36:19, 37:1, 37:5, 37:8, 37:13, 37:16, 37:18, 37:21, 38:4, 38:11, 38:15, 38:18, 38:25, 39:3, 39:18, 39:21, 39:24, 40:2, 40:4, 40:8, 40:20, 40:25, 41:8, 41:10, 41:19, 41:23, 42:8, 42:20, 42:24, 43:8, 43:14, 43:18, 43:22, 44:2, 44:16, 44:21, 44:24, 45:13, 45:22, 45:25, 46:4, 46:8, 46:18, 46:21, 46:23, 47:1, 47:4, 47:7, 48:6, 48:9, 48:17, 49:2, 49:15, 50:2, 50:4, 50:6, 50:8, 50:24, 51:1, 51:5, 51:8, 52:10
**Court's** [2] - 34:9, 40:12
**court's** [4] - 15:23, 23:14, 25:23, 29:11
**court-ordered** [1] - 24:8
**courthouse** [2] - 28:13, 32:16
**Courtroom** [1] - 1:9
**courtroom** [1] -

28:7
**create** [1] - 4:19
**crime** [3] - 25:10, 25:13, 35:23
**crimes** [4] - 15:14, 15:22, 19:11, 24:22
**CRIMINAL** [1] - 1:4
**criminal** [5] - 2:7, 6:7, 6:8, 12:20, 28:2
**cull** [1] - 45:3
**custodian** [8] - 18:16, 19:1, 19:5, 19:24, 20:6, 20:10, 32:24, 35:11
**custodians** [1] - 32:18
**custody** [3] - 34:25, 35:7, 51:8
**cut** [1] - 34:4
**cutting** [1] - 33:20

# D

**dancing** [1] - 12:10
**danger** [14] - 4:14, 14:23, 15:5, 16:13, 16:15, 16:25, 18:23, 31:11, 35:9, 35:22, 36:10, 36:11, 44:8
**dangerousness** [1] - 4:16
**data** [13] - 3:20, 3:21, 6:17, 6:19, 6:24, 7:9, 8:6, 8:9, 8:19, 9:8, 9:13, 30:2, 44:14
**date** [9] - 6:16, 6:25, 7:5, 8:18, 9:10, 11:18, 47:10, 48:1, 48:11
**Dated** [1] - 52:7
**dated** [1] - 24:2
**dates** [2] - 8:11, 9:17
**days** [4] - 34:20, 48:20, 49:19, 49:20
**de** [5] - 2:21, 3:2, 3:9, 5:15, 10:22
**deadline** [7] -

45:13, 45:23, 47:11, 47:12, 48:7, 50:22
**deal** [2] - 23:16, 30:5
**December** [3] - 16:8, 24:22, 52:7
**Defendant** [2] - 1:6, 1:17
**DEFENDANT** [1] - 2:15
**defendant** [48] - 2:20, 5:5, 5:21, 5:25, 8:15, 8:18, 9:25, 10:3, 10:6, 11:15, 11:16, 11:25, 12:3, 12:8, 12:9, 12:16, 12:25, 13:6, 13:23, 14:4, 14:11, 15:4, 15:7, 15:11, 15:18, 16:6, 18:6, 19:9, 20:12, 20:24, 21:5, 21:9, 21:12, 22:5, 22:12, 30:24, 31:16, 31:17, 31:21, 32:10, 32:11, 32:14, 36:4, 36:8, 36:12, 41:6, 47:11, 51:5
**defendant's** [8] - 4:12, 4:13, 8:14, 9:22, 9:23, 14:23, 24:6, 51:8
**defense** [10] - 2:18, 4:3, 10:10, 13:14, 13:25, 14:5, 28:2, 28:4, 38:20, 51:6
**deference** [1] - 3:7
**definitely** [1] - 48:24
**dehumanize** [2] - 26:8, 28:3
**deliberate** [1] - 15:21
**demonstrated** [2] - 35:14, 35:19
**depart** [1] - 21:6
**Department** [2] - 7:14, 7:15
**dependent** [1] - 19:19

**depicts** [1] - 5:24
**described** [1] - 9:8
**description** [1] - 5:17
**designed** [1] - 27:1
**detain** [1] - 28:17
**detained** [1] - 34:18
**detected** [1] - 15:24
**detention** [15] - 2:19, 4:14, 5:7, 10:18, 14:12, 17:24, 20:16, 22:12, 31:12, 34:17, 35:8, 47:23, 48:13, 48:21, 50:17
**Detention** [1] - 34:19
**DETENTION** [1] - 1:10
**determinative** [1] - 14:10
**device** [2] - 20:24, 21:6
**devices** [15] - 6:23, 9:3, 11:21, 16:18, 16:25, 17:4, 17:18, 18:13, 20:13, 20:19, 20:21, 33:17, 44:4, 44:10, 45:1
**different** [2] - 12:12, 12:16
**digital** [2] - 6:24, 44:11
**dignity** [1] - 26:8
**diminishing** [1] - 18:20
**direct** [1] - 25:23
**directive** [4] - 22:5, 22:7, 27:13, 28:12
**directly** [2] - 16:9, 16:10
**directory** [1] - 16:12
**disagreement** [2] - 36:24, 37:1
**discharging** [1] - 20:6
**discipline** [1] - 41:14
**disclose** [1] - 12:8
**disclosed** [3] - 9:22, 11:13,

11:14
**discloses** [1] - 9:6
**disclosing** [1] - 48:5
**disclosure** [9] - 7:8, 7:11, 7:13, 8:8, 8:22, 9:13, 11:20, 12:2, 12:23
**discovery** [18] - 36:20, 43:11, 43:13, 43:22, 43:24, 45:12, 45:14, 45:23, 46:11, 46:13, 47:10, 47:14, 47:19, 47:25, 48:5, 48:6, 48:10, 50:22
**discuss** [2] - 41:21, 44:13
**discussed** [1] - 50:11
**discussing** [1] - 39:5
**discussion** [1] - 13:19
**discussions** [1] - 36:23
**dismissed** [1] - 30:14
**disorder** [1] - 31:19
**dispositive** [1] - 14:10
**dispute** [1] - 30:8
**District** [7] - 32:3, 32:6, 33:7, 52:3, 52:4
**DISTRICT** [2] - 1:1, 1:1
**district** [1] - 38:24
**disturbing** [3] - 5:19, 6:2, 6:6
**DIVISION** [1] - 1:2
**docket** [1] - 5:10
**documentary** [1] - 3:19
**documents** [2] - 3:19, 28:8
**dogs** [1] - 39:14
**done** [5] - 17:10, 26:5, 27:24, 28:2, 44:5
**doubt** [1] - 27:25
**down** [2] - 20:15, 30:1
**draft** [1] - 41:19
**dragged** [1] - 45:5
**drunk** [1] - 12:10

**during** [3] - 16:1, 21:4, 33:3
**duties** [1] - 20:6

## E

**eager** [1] - 23:10
**early** [7] - 8:20, 8:23, 9:2, 9:4, 22:24, 33:25, 39:14
**effort** [1] - 28:22
**either** [3] - 27:18, 28:11, 36:11
**electronic** [5] - 3:20, 18:9, 20:16, 20:19, 33:16
**electronically** [1] - 18:8
**elevated** [1] - 4:19
**elsewhere** [1] - 40:11
**email** [1] - 41:22
**employment** [1] - 13:13
**end** [2] - 28:17, 29:11
**ending** [1] - 15:3
**endure** [1] - 27:4
**enforcement** [1] - 20:18
**engage** [2] - 31:4, 34:6
**engaged** [3] - 15:18, 29:16, 33:22
**ensure** [4] - 18:16, 20:18, 28:8, 36:17
**enter** [4] - 41:1, 41:11, 41:24, 42:24
**entered** [4] - 2:20, 2:22, 40:9, 47:1
**entire** [3] - 5:10, 12:22, 12:23
**entirely** [3] - 19:19, 21:3, 28:14
**entitled** [1] - 52:5
**entrust** [1] - 19:23
**entrusting** [1] - 19:4
**escalation** [1] - 5:20
**Esquire** [4] - 1:14, 1:14, 1:18, 1:18
**essentially** [2] - 26:17, 35:17

**established** [1] - 29:3
**et** [4] - 33:18, 39:7, 44:14
**events** [2] - 7:22, 9:23
**evidence** [27] - 3:11, 3:15, 3:19, 4:7, 6:2, 6:6, 6:7, 7:4, 7:8, 9:20, 11:10, 14:2, 14:6, 16:7, 17:25, 22:3, 22:6, 22:24, 27:12, 30:15, 30:17, 31:11, 34:6, 35:13, 35:14, 37:14, 41:2
**exacerbated** [1] - 35:6
**exact** [1] - 30:23
**exactly** [3] - 26:1, 28:20, 40:16
**examination** [1] - 7:4
**examined** [1] - 11:21
**example** [1] - 40:24
**execute** [3] - 15:22, 29:2, 37:9
**executed** [1] - 15:15
**Exhibit** [2] - 23:22, 23:23
**exhibit** [3] - 23:23, 23:24, 23:25
**EXIF** [10] - 6:17, 6:19, 7:9, 8:6, 8:9, 8:19, 9:8, 9:13, 44:14
**exists** [2] - 42:5, 47:2
**expect** [2] - 41:24, 44:21
**expects** [1] - 44:18
**experience** [1] - 23:8
**experienced** [2] - 11:14, 11:15
**expert** [3] - 44:13, 47:20, 47:22
**experts** [1] - 7:2
**explain** [1] - 24:16
**explained** [1] - 26:21

**explaining** [1] - 37:19
**explicit** [1] - 51:1
**exploitation** [7] - 10:17, 31:15, 31:17, 31:18, 31:21, 31:25, 32:12
**exposed** [1] - 16:2
**expunged** [1] - 25:2
**extended** [1] - 21:12
**extent** [1] - 48:14
**extorting** [1] - 15:9
**extra** [1] - 45:19
**extract** [1] - 6:23
**extracted** [1] - 7:10
**extreme** [1] - 15:19
**extremely** [1] - 29:14
**eyes** [2] - 12:17, 19:13

## F

**Facebook** [2] - 26:16, 26:22
**faces** [1] - 14:15
**facilities** [1] - 34:23
**facility** [1] - 35:2
**facing** [1] - 16:1
**fact** [19] - 8:7, 8:18, 9:17, 10:15, 12:3, 12:16, 13:11, 15:5, 27:24, 31:1, 33:7, 35:22, 39:5, 39:12, 46:5, 46:6, 47:20, 48:21, 50:15
**factor** [1] - 10:20
**factors** [2] - 4:8, 45:6
**facts** [1] - 17:10
**fair** [4] - 23:5, 28:9, 28:14, 28:21
**fairness** [1] - 40:14
**fallen** [1] - 28:25
**familiar** [2] - 37:5, 39:11
**families** [7] - 8:15,

8:16, 8:17, 9:9, 9:10, 9:16, 12:18
**family** [3] - 10:24, 12:2, 12:4
**family's** [1] - 22:11
**far** [5] - 22:22, 32:16, 34:7, 35:8, 49:8
**fast** [1] - 45:3
**father** [6] - 19:12, 19:20, 19:24, 20:5, 32:19, 33:11
**father's** [2] - 18:7, 35:17
**FBI** [17] - 6:22, 11:12, 11:19, 12:7, 37:11, 37:19, 37:22, 38:1, 38:8, 38:10, 38:24, 39:2, 39:6, 39:16, 40:22, 41:2, 42:15
**fear** [2] - 26:4, 28:21
**feasible** [1] - 50:12
**February** [1] - 24:2
**FEDERAL** [1] - 52:10
**federal** [5] - 11:21, 30:13, 38:8, 38:9, 42:16
**few** [2] - 34:1, 50:12
**field** [1] - 7:2
**fight** [2] - 26:17, 30:12
**figure** [1] - 38:21
**file** [5] - 25:2, 36:24, 42:4, 43:3, 48:22
**filed** [1] - 28:12
**filing** [1] - 22:20
**filings** [2] - 22:19, 26:5
**filmed** [2] - 6:25, 8:13
**filming** [3] - 5:25, 9:23, 10:6
**films** [1] - 10:1
**fine** [2] - 23:8, 50:7
**firm** [3] - 23:9, 26:12, 44:22

**first** [16] - 3:1, 4:9, 5:22, 6:11, 7:24, 8:13, 9:21, 18:1, 20:18, 23:13, 25:1, 26:23, 30:6, 39:13, 45:1, 50:2
**five** [17] - 4:10, 5:3, 5:19, 9:1, 9:4, 9:5, 9:12, 17:3, 24:18, 41:8, 44:7, 44:9, 44:13, 45:9, 45:12, 46:13, 48:4
**flight** [2] - 4:14, 4:17
**Flowers** [2] - 1:18, 2:10
**flowers** [7] - 2:9, 22:16, 23:3, 26:10, 35:24, 40:25, 49:2
**FLOWERS** [43] - 2:10, 22:17, 23:5, 23:13, 24:12, 24:15, 24:24, 25:17, 26:14, 27:19, 29:18, 30:9, 30:19, 31:8, 32:5, 32:8, 32:20, 33:5, 33:13, 33:15, 33:19, 34:14, 37:10, 37:14, 37:17, 37:19, 37:23, 38:6, 38:14, 38:16, 38:19, 40:21, 41:7, 41:9, 41:17, 42:10, 42:21, 43:7, 49:4, 49:22, 50:3, 50:5, 51:6
**focused** [2] - 14:1, 15:21
**folks** [2] - 38:20, 38:22
**following** [1] - 24:5
**FOR** [1] - 1:1
**forced** [1] - 47:25
**foregoing** [1] - 52:4
**forensic** [3] - 6:22, 7:3, 44:3
**forensics** [1] - 44:11
**form** [1] - 7:8

**format** [2] - 16:20, 52:5
**forth** [7] - 3:22, 7:6, 16:24, 21:1, 28:23, 30:7, 40:10
**forum** [1] - 38:2
**forward** [6] - 11:19, 11:24, 12:23, 15:11, 17:4, 28:6
**founded** [1] - 23:12
**four** [4] - 9:4, 11:5, 27:4, 36:10
**fourth** [1] - 15:2
**frankly** [2] - 2:22, 36:8
**free** [2] - 41:6, 41:8
**Friday** [1] - 49:17
**friends** [1] - 10:24
**front** [2] - 30:6, 39:19
**full** [3] - 12:23, 23:4, 24:8
**fully** [3] - 10:3, 20:5, 20:9
**furnished** [1] - 12:25
**future** [5] - 31:9, 36:5, 36:9, 36:11, 50:13

## G

**gain** [1] - 17:18
**gained** [1] - 20:13
**gander** [1] - 41:16
**gardener** [1] - 36:16
**Garner** [1] - 1:22
**general** [1] - 19:2
**generalized** [1] - 28:25
**generally** [1] - 33:12
**Gilman** [9] - 10:13, 11:3, 12:19, 12:21, 12:24, 13:11, 13:12, 13:15, 13:22
**given** [11] - 3:6, 14:14, 16:18, 17:10, 22:13, 28:13, 29:6, 35:1, 44:7, 47:13, 47:20

**Goldstein** [1] - 1:19
**gonna** [1] - 31:9
**goose** [1] - 41:16
**governed** [1] - 2:24
**Government** [3] - 3:11, 3:25, 5:8
**government** [42] - 2:4, 3:20, 10:19, 10:21, 11:5, 13:13, 13:14, 16:3, 20:9, 20:12, 21:2, 21:8, 21:11, 21:23, 22:21, 25:11, 25:21, 25:22, 26:15, 26:19, 26:22, 27:11, 27:19, 28:3, 28:17, 28:24, 30:21, 30:22, 37:3, 39:24, 40:9, 40:10, 40:11, 42:15, 42:16, 44:12, 44:18, 45:14, 46:10, 46:14, 48:9, 49:12
**government's** [8] - 15:4, 15:19, 17:23, 19:21, 23:11, 27:17, 44:7, 47:8
**GPS** [2] - 6:24, 9:8
**grand** [1] - 8:24
**grant** [1] - 17:23
**grave** [2] - 25:16, 25:17
**greater** [2] - 10:20, 34:8
**grooming** [1] - 16:20
**ground** [1] - 2:25
**guess** [2] - 15:23, 35:12

## H

**Hagan** [3] - 1:14, 2:5, 45:17
**handle** [1] - 42:24
**hang** [1] - 32:13
**harass** [1] - 27:2
**hard** [1] - 47:24
**head** [1] - 32:13
**health** [3] - 15:10, 19:3, 35:6

**hear** [5] - 14:5, 18:5, 18:19, 23:10
**heard** [3] - 40:14, 40:15, 49:2
**hearing** [6] - 3:5, 13:25, 14:6, 23:10, 29:13, 48:21
**HEARING** [1] - 1:10
**held** [1] - 52:5
**help** [1] - 21:23
**helpful** [2] - 14:16, 23:4
**hereby** [1] - 52:4
**highly** [1] - 31:4
**hill** [2] - 13:2, 13:3
**himself** [4] - 6:12, 8:2, 11:2, 31:17
**history** [2] - 10:9, 13:22
**home** [13] - 4:22, 11:17, 18:7, 18:11, 20:16, 20:18, 21:6, 31:21, 33:3, 33:12, 33:17, 33:19, 39:13
**homes** [4] - 8:14, 9:7, 9:9, 9:14
**Honor** [89] - 2:3, 2:8, 2:10, 2:13, 2:15, 3:3, 3:9, 3:13, 3:23, 3:24, 3:25, 4:5, 4:10, 4:16, 4:18, 4:21, 5:2, 5:5, 5:18, 6:9, 7:7, 8:6, 9:5, 9:20, 10:11, 10:16, 10:22, 11:11, 13:3, 15:1, 15:7, 16:15, 16:16, 16:22, 16:23, 17:6, 17:16, 19:1, 19:8, 19:9, 20:11, 21:8, 21:10, 21:11, 21:16, 21:18, 21:20, 22:2, 22:10, 22:11, 22:17, 23:16, 23:19, 23:25, 24:13, 25:18, 26:14, 29:18, 32:5, 32:12, 33:10, 34:9, 35:16, 36:1, 36:12, 36:25,

37:4, 37:10, 37:15, 37:23, 38:6, 38:17, 39:4, 40:21, 41:17, 41:20, 42:10, 42:13, 43:7, 44:23, 45:1, 48:2, 48:16, 49:4, 49:22, 50:21, 51:6
**Honor's** [4] - 6:10, 21:19, 47:16, 47:23
**honorable** [1] - 51:11
**HONORABLE** [1] - 1:11
**hoped** [1] - 50:10
**hopefully** [2] - 8:23, 36:25
**hours** [1] - 49:18
**house** [10] - 8:15, 8:18, 9:18, 11:16, 12:1, 12:3, 13:20, 17:13, 20:20, 35:17
**house-sit** [1] - 12:3
**housed** [3] - 34:13, 34:15, 35:1
**Howard** [1] - 34:19

## I

**iCloud** [9] - 4:11, 5:4, 6:23, 17:4, 44:6, 45:2, 46:20, 48:3
**ID** [1] - 20:2
**idea** [1] - 11:1
**identification** [1] - 20:2
**identified** [1] - 18:23
**ignorance** [1] - 19:20
**ignore** [1] - 36:6
**image** [1] - 9:25
**images** [6] - 6:23, 6:24, 10:7, 15:9, 31:16, 45:2
**imperative** [2] - 46:8, 47:4
**important** [4] - 23:19, 23:21, 27:6

**importantly** [1] - 9:24
**impose** [1] - 17:12
**IN** [1] - 1:1
**inappropriate** [4] - 16:5, 29:14, 31:4, 33:23
**incarcerated** [2] - 49:7, 49:13
**incarceration** [1] - 24:6
**inclination** [2] - 29:2, 48:6
**including** [3] - 5:12, 8:10, 9:7
**incongruent** [1] - 24:17
**indeed** [1] - 29:21
**indicate** [1] - 12:14
**indicated** [10] - 5:3, 5:5, 11:4, 12:9, 12:11, 17:3, 17:6, 25:24, 26:15, 47:22
**indicates** [1] - 9:8
**indicating** [1] - 8:21
**indict** [1] - 8:25
**indictment** [7] - 39:18, 40:2, 40:5, 46:6, 46:23, 47:2
**individual** [1] - 11:18
**individuals** [2] - 10:17, 14:24
**information** [28] - 4:11, 5:6, 6:21, 8:8, 8:17, 25:3, 25:4, 30:6, 30:10, 30:11, 37:11, 37:12, 37:20, 38:1, 38:7, 39:15, 40:15, 40:19, 40:23, 40:24, 41:5, 41:13, 42:15, 42:18, 42:20, 42:21, 42:22, 43:4
**infrastructure** [1] - 18:9
**inherent** [1] - 15:13
**initial** [4] - 16:4, 49:23, 50:4, 50:6

**injury** [1] - 35:3
**innocent** [1] - 26:17
**inquiry** [2] - 3:2, 41:12
**insertion** [1] - 37:2
**inside** [3] - 8:14, 9:14, 17:14
**Instagram** [1] - 26:23
**instance** [1] - 24:10
**instead** [3] - 3:7, 25:20, 28:1
**insulated** [1] - 21:3
**insured** [1] - 22:13
**intention** [3] - 23:15, 23:16, 26:12
**intents** [1] - 19:9
**interaction** [3] - 16:9, 21:3, 27:15
**internet** [19] - 16:18, 16:25, 17:7, 17:17, 18:12, 19:25, 20:13, 20:23, 24:10, 24:12, 24:15, 24:19, 27:9, 33:17, 33:19, 33:21, 34:2, 34:4
**interpreted** [2] - 25:15, 43:5
**interview** [2] - 7:14, 11:17
**interviewed** [5] - 7:17, 9:16, 11:12, 12:6, 12:7
**intimidate** [7] - 17:1, 26:4, 26:7, 27:1, 28:3, 28:22, 30:25
**intimidated** [1] - 30:16
**intimidating** [3] - 26:20, 27:23, 28:5
**investigated** [2] - 12:14, 12:19
**investigating** [1] - 11:22
**investigation** [9] - 8:20, 8:24, 9:3, 11:20, 12:22,

27:25, 44:6, 44:9, 46:2

**investigations** [1] - 44:3

**investigative** [2] - 44:15, 47:9

**involved** [1] - 19:21

**issue** [8] - 14:9, 28:16, 29:24, 32:25, 42:9, 47:16, 48:11, 50:17

**issues** [9] - 14:19, 19:3, 22:21, 22:23, 22:25, 35:6, 37:25, 40:22, 50:16

**itself** [4] - 4:23, 6:3, 25:10, 29:4

**J**

**JAMES** [1] - 1:11

**January** [5] - 7:17, 16:4, 16:8, 24:22, 30:8

**Jencks** [2] - 45:14, 48:10

**JKB-23-278** [2] - 1:4, 2:7

**Journalist** [1] - 37:19

**journalist** [1] - 37:21

**Judge** [4] - 1:11, 10:23, 25:25, 32:9

**judge** [8] - 2:20, 2:24, 3:4, 5:13, 26:21, 30:25, 33:8, 39:25

**judge's** [2] - 29:20, 51:9

**judges** [1] - 32:16

**Judicial** [1] - 52:6

**June** [3] - 26:16, 27:3, 27:15

**junior** [1] - 32:22

**jury** [1] - 8:24

**K**

**Kassandra** [1] - 52:3

**KASSANDRA** [1] - 52:9

**keep** [3] - 48:2, 48:4, 48:5

**keeping** [1] -

13:23

**KENJI** [1] - 1:5

**Kenji** [1] - 2:6

**kept** [3] - 39:6, 39:7, 39:11

**kill** [1] - 35:7

**Kim** [1] - 2:5

**Kimberly** [1] - 1:14

**kind** [9] - 23:17, 28:22, 29:24, 33:6, 34:3, 38:2, 38:20, 39:10, 49:7

**knowing** [3] - 15:11, 20:14, 30:12

**known** [2] - 26:1, 33:9

**knows** [7] - 5:18, 10:16, 17:8, 34:10, 44:23, 45:1, 49:5

**Kobie** [1] - 1:18

**L**

**Lance** [1] - 32:20

**landline** [2] - 18:15, 20:20

**laps** [1] - 13:1

**large** [1] - 27:5

**last** [12] - 9:24, 22:9, 23:7, 23:14, 24:3, 24:16, 33:25, 34:18, 35:25, 36:2, 49:16, 50:12

**latest** [1] - 22:20

**launched** [1] - 12:23

**Law** [2] - 31:15, 32:10

**law** [3] - 20:17, 23:9, 26:12

**lawyers** [1] - 42:3

**leak** [2] - 41:6, 42:12

**leaked** [8] - 37:11, 37:20, 37:22, 39:16, 40:15, 40:17, 41:18

**leaking** [2] - 38:1, 40:23

**leaks** [2] - 38:4, 41:8

**learn** [2] - 40:10, 40:13

**learned** [1] - 25:1

**least** [11] - 5:6, 12:2, 12:17, 13:21, 13:23, 16:19, 17:6, 19:21, 24:25, 44:25, 47:15

**leaving** [2] - 17:14, 49:20

**legitimacy** [1] - 18:20

**less** [1] - 26:8

**lesson** [1] - 34:16

**letters** [2] - 10:24, 10:25

**level** [1] - 33:9

**Levy** [1] - 1:19

**life** [1] - 35:3

**light** [4] - 4:21, 12:16, 12:17, 50:11

**likelihood** [1] - 15:25

**limited** [1] - 18:14

**line** [3] - 26:25, 51:2

**lines** [1] - 13:18

**literally** [1] - 26:25

**live** [2] - 3:11, 18:7

**LLP** [1] - 1:19

**location** [3] - 7:5, 8:10, 9:8

**locations** [1] - 9:15

**lockdown** [2] - 31:22, 35:10

**locked** [1] - 20:15

**locking** [1] - 35:17

**lodge** [1] - 18:11

**logs** [1] - 20:1

**look** [4] - 4:1, 28:11, 30:5, 41:18

**looked** [1] - 31:24

**looking** [2] - 28:1, 48:15

**loved** [1] - 10:24

**M**

**magistrate** [8] - 2:20, 2:24, 3:4, 5:13, 26:21, 29:20, 39:25, 51:9

**main** [1] - 39:6

**maintain** [1] - 3:25

**maintaining** [1] - 11:23

**maintains** [2] - 10:19, 10:22

**man** [1] - 32:22

**Manisha** [1] - 1:22

**manner** [1] - 25:11

**March** [1] - 6:16

**marshal** [1] - 51:9

**Marshals** [1] - 34:20

**MARYLAND** [1] - 1:1

**Maryland** [5] - 1:9, 32:4, 32:6, 33:8, 52:4

**masturbates** [1] - 10:4

**masturbating** [3] - 5:24, 6:12, 11:15

**match** [1] - 9:15

**matter** [5] - 2:19, 25:16, 25:17, 46:5, 52:5

**matters** [1] - 30:19

**max** [1] - 34:24

**maximalist** [1] - 23:17

**MCGUINN** [85] - 2:3, 3:3, 3:9, 3:13, 3:17, 3:23, 4:16, 4:18, 5:1, 5:11, 5:14, 5:16, 6:4, 6:9, 6:16, 6:19, 6:21, 7:7, 7:13, 7:20, 7:23, 7:25, 8:5, 9:1, 11:11, 14:3, 14:8, 14:18, 14:22, 15:1, 15:16, 16:15, 18:3, 18:25, 19:8, 19:15, 19:23, 20:11, 21:8, 21:16, 21:18, 22:1, 22:6, 22:9, 36:1, 36:22, 37:2, 37:7, 39:1, 39:4, 39:20, 39:23, 40:1, 40:3, 40:7, 40:13, 41:20, 42:7, 43:12, 43:15, 43:19, 44:1, 44:5, 44:19, 44:23, 44:25, 45:16,

45:24, 46:3, 46:7, 46:12, 46:19, 46:22, 46:25, 47:3, 47:6, 47:13, 48:8, 48:15, 48:18, 49:25, 50:7, 50:21, 50:25, 51:4

**McGuinn** [10] - 1:14, 2:4, 3:1, 22:8, 22:15, 35:25, 36:21, 38:13, 38:21, 50:20

**McPherson** [1] - 52:3

**MCPHERSON** [1] - 52:9

**MD** [2] - 1:16, 1:20

**Meadow** [1] - 13:2

**mean** [5] - 7:11, 19:1, 40:15, 43:23, 46:1

**means** [6] - 15:14, 18:10, 20:22, 20:25, 40:16, 40:18

**mechanism** [1] - 30:24

**media** [12] - 13:17, 26:23, 26:24, 27:4, 27:5, 37:12, 38:1, 38:2, 38:7, 39:9, 39:12, 40:16

**meet** [3] - 17:15, 31:10, 48:25

**meetings** [1] - 34:1

**member** [2] - 4:22, 10:12

**members** [1] - 38:7

**memorandum** [6] - 5:7, 10:10, 11:4, 12:11, 13:3, 15:6

**mental** [2] - 15:10, 35:6

**mention** [1] - 35:5

**mentioned** [1] - 26:3

**messages** [10] - 13:4, 13:5, 13:8, 30:7, 37:15, 37:17, 38:7, 38:15, 38:16,

38:23

**met** [1] - 11:19

**methods** [1] - 15:14

**Michael** [2] - 1:18, 2:12

**might** [6] - 16:7, 16:9, 16:10, 38:22, 41:11, 42:22

**mind** [1] - 15:23

**minor** [28] - 5:20, 5:24, 7:9, 7:16, 7:18, 7:21, 8:1, 8:7, 8:16, 8:21, 9:5, 9:22, 10:1, 11:6, 12:4, 12:5, 12:22, 15:5, 15:8, 15:9, 16:9, 16:11, 19:11, 25:9, 31:5, 31:18

**Minor** [1] - 12:11

**minutes** [1] - 50:12

**misbehave** [1] - 30:24

**misbehaving** [1] - 41:3

**misconduct** [2] - 15:19, 34:7

**misused** [1] - 27:9

**mitigate** [1] - 29:8

**mitigated** [2] - 18:24, 35:10

**modus** [1] - 19:18

**moment** [1] - 19:18

**Monday** [1] - 45:16

**monitor** [1] - 19:25

**monitoring** [2] - 17:13, 20:16

**month** [4] - 33:25, 34:18, 44:24, 44:25

**months** [16] - 23:20, 24:1, 25:24, 25:25, 27:4, 29:22, 31:10, 32:25, 33:22, 35:15, 35:23, 36:4, 36:9, 45:5

**morning** [10] - 2:3, 2:8, 2:9, 2:10, 2:12, 2:15, 2:16, 22:16,

22:17
**most** [6] - 23:18, 23:21, 40:14, 40:18, 45:19
**motion** [4] - 17:23, 42:5, 43:3, 49:16
**motions** [3] - 47:11, 47:14, 48:13
**motor** [1] - 5:24
**move** [3] - 14:17, 17:4, 49:13
**moved** [2] - 8:14, 34:25
**moves** [1] - 35:2
**movies** [1] - 13:17
**moving** [1] - 47:12
**must** [1] - 35:1

**N**

**naked** [3] - 12:9, 12:12, 13:1
**name** [3] - 4:12, 26:3, 39:11
**names** [2] - 8:16, 43:16
**naming** [1] - 27:22
**nature** [10] - 4:9, 4:23, 5:2, 9:18, 14:14, 15:25, 16:18, 22:22, 29:17, 35:1
**Navy** [1] - 32:23
**near** [2] - 48:20, 50:13
**necessarily** [1] - 48:24
**necessary** [1] - 33:22
**need** [13] - 14:11, 18:6, 23:4, 28:6, 38:19, 40:12, 41:17, 43:1, 43:3, 47:13, 48:23, 48:24, 49:13
**needed** [3] - 34:8, 35:9, 35:18
**needless** [1] - 34:23
**needs** [5] - 3:25, 13:16, 45:10, 47:9, 48:23
**negative** [2] - 27:4
**never** [9] - 26:3,

26:7, 26:11, 27:8, 27:22, 41:10, 41:15, 42:12
**new** [1] - 20:2
**news** [1] - 39:10
**next** [4] - 45:11, 46:16, 48:24, 49:17
**night** [3] - 23:7, 23:14, 24:17
**NO** [1] - 1:4
**nominated** [1] - 20:8
**non** [2] - 45:14, 48:10
**non-Jencks** [2] - 45:14, 48:10
**noncriminal** [1] - 25:7
**none** [2] - 31:20, 32:13
**nonetheless** [1] - 15:19
**normally** [1] - 37:9
**NORTHERN** [1] - 1:2
**nose** [2] - 19:11, 19:13
**notes** [1] - 1:25
**nothing** [2] - 27:1, 51:6
**notification** [1] - 39:7
**November** [5] - 47:16, 48:1, 48:7, 48:19, 50:22
**novo** [5] - 2:21, 3:2, 3:9, 5:15, 10:22
**number** [4] - 2:7, 41:24, 42:2, 42:16

**O**

**obligations** [1] - 48:25
**obtain** [1] - 13:9
**obviously** [13] - 3:25, 4:6, 21:19, 22:23, 33:1, 34:18, 35:6, 45:8, 45:18, 47:21, 48:20, 49:12, 50:13
**occur** [4] - 6:12, 9:21, 16:19,

50:13
**occurred** [8] - 5:22, 5:23, 6:7, 7:22, 8:9, 8:11, 9:23, 16:20
**occurring** [1] - 42:3
**October** [3] - 47:15, 48:1, 48:5
**OF** [3] - 1:1, 1:3, 52:1
**offense** [4] - 5:3, 19:2, 22:22, 32:13
**offenses** [3] - 4:9, 9:19, 16:19
**officer** [1] - 24:4
**official** [1] - 40:10
**OFFICIAL** [2] - 52:1, 52:10
**old** [3] - 6:14, 19:2, 19:5
**older** [1] - 19:2
**once** [4] - 30:11, 30:12, 30:14, 46:15
**one** [19] - 4:20, 9:9, 9:25, 11:6, 11:13, 11:14, 12:11, 24:21, 29:19, 33:7, 35:23, 39:19, 41:6, 41:24, 44:22, 47:7, 47:8, 47:18
**onerous** [2] - 34:16, 35:9
**ones** [2] - 10:11, 10:24
**ongoing** [5] - 38:23, 44:9, 45:7, 46:2, 46:19
**online** [3] - 16:19, 16:20, 16:24
**open** [1] - 37:24
**operandi** [1] - 19:18
**operation** [1] - 39:5
**opinion** [1] - 3:6
**option** [1] - 21:5
**orchestrated** [1] - 27:5
**order** [30] - 2:19, 2:21, 4:9, 17:22, 20:24, 29:20, 36:23, 37:6, 39:25, 40:11,

40:22, 41:1, 41:11, 41:19, 41:21, 41:24, 42:11, 42:13, 42:14, 42:17, 42:25, 43:2, 43:5, 43:8, 43:10, 43:16, 46:16, 48:22, 51:9
**ordered** [2] - 24:8, 24:10
**orders** [2] - 40:8, 42:2
**otherwise** [3] - 18:17, 19:16, 45:4
**outset** [1] - 3:24
**outside** [2] - 28:7, 28:8
**overheated** [3] - 23:3, 23:15, 26:19
**overlay** [1] - 15:17
**own** [6] - 2:23, 19:3, 19:19, 27:6, 27:25, 33:6

**P**

**p.m** [1] - 51:13
**page** [1] - 52:5
**paper** [1] - 23:21
**papers** [3] - 27:15, 28:12, 31:14
**paragraph** [1] - 37:3
**parcel** [1] - 4:4
**parents** [1] - 19:19
**Park** [1] - 13:2
**part** [11] - 4:4, 8:5, 12:2, 23:19, 23:21, 24:25, 27:5, 27:16, 30:22, 42:14, 42:17
**particular** [8] - 8:18, 9:7, 9:9, 12:18, 13:24, 15:6, 23:7, 37:3
**particularly** [1] - 23:3
**parties** [1] - 10:9
**party** [9] - 18:16, 19:1, 19:4, 19:24, 20:6, 20:9, 32:18,

32:24, 35:11
**past** [1] - 36:6
**Paul** [2] - 13:2, 13:3
**peace** [1] - 22:13
**pedophilia** [1] - 31:19
**pending** [5] - 14:12, 45:6, 46:6, 48:13, 49:16
**people** [10] - 9:7, 19:2, 19:15, 19:16, 19:20, 21:2, 29:15, 30:25, 35:7, 39:14
**per** [2] - 12:20, 48:24
**perfect** [2] - 21:20, 29:22
**perfectly** [1] - 25:25
**performing** [1] - 11:15
**perhaps** [4] - 20:17, 23:21, 24:22, 37:24
**period** [3] - 16:10, 21:4, 25:12
**person** [10] - 10:6, 10:9, 11:24, 12:17, 13:22, 18:11, 19:9, 20:7, 25:3, 40:11
**personally** [1] - 32:3
**perspective** [2] - 19:21, 26:15
**phone** [2] - 20:1, 39:15
**phones** [1] - 20:21
**photo** [1] - 13:7
**photos** [2] - 9:14, 45:2
**picture** [2] - 16:13, 30:5
**piece** [1] - 23:21
**pivot** [1] - 14:16
**place** [3] - 16:16, 17:16, 43:16
**placed** [1] - 27:13
**plan** [2] - 41:25, 47:10
**planning** [1] - 14:20
**point** [27] - 3:7, 4:1, 5:25, 6:10,

6:17, 7:10, 7:24, 8:1, 8:20, 10:5, 11:20, 14:1, 17:8, 18:8, 19:18, 21:5, 21:11, 21:19, 27:3, 28:19, 29:1, 30:20, 30:21, 44:12, 44:17, 46:1, 49:20
**Police** [6] - 7:14, 7:15, 11:12, 11:19, 12:7, 13:9
**pornography** [1] - 31:16
**portion** [1] - 17:14
**portraits** [1] - 33:8
**pose** [1] - 14:24
**poses** [2] - 16:13, 16:15
**position** [11] - 12:1, 15:4, 36:16, 42:11, 42:12, 42:13, 44:16, 44:17, 44:19, 44:22, 49:5
**possession** [2] - 3:21, 48:10
**possible** [1] - 49:14
**post** [5] - 26:16, 26:22, 26:23, 26:24, 27:1
**potential** [2] - 17:9, 21:1
**powerful** [1] - 16:7
**pre** [1] - 30:6
**pre-charging** [1] - 30:6
**precludes** [1] - 43:2
**predates** [1] - 30:10
**predatory** [1] - 29:16
**predict** [4] - 21:21, 21:22, 36:9, 36:11
**predicting** [2] - 36:5, 36:7
**prefer** [1] - 34:12, 37:23
**preliminary** [2] - 44:6, 47:17
**prepare** [1] - 49:1

prepared [1] - 41:21
preparing [1] - 33:24
preposterous [1] - 41:10
Present [1] - 1:21
present [5] - 32:20, 34:5, 37:4, 39:13, 44:13
presentation [1] - 23:4
presented [2] - 13:4, 41:5
presenting [1] - 11:2
presents [1] - 4:23
president [1] - 19:6
pressure [1] - 31:4
pressuring [1] - 25:15
presumably [1] - 40:9
presumption [9] - 4:2, 29:6, 29:11, 29:19, 29:21, 31:2, 31:12, 36:3, 36:14
pretrial [14] - 17:24, 20:17, 21:24, 23:24, 23:25, 24:4, 24:7, 25:24, 29:22, 30:2, 30:3, 34:17, 35:8, 36:16
pretty [2] - 37:5, 48:20
previous [1] - 32:11
previously [5] - 2:21, 5:12, 23:8, 27:12, 31:5
prey [1] - 30:25
preyed [3] - 15:20, 15:21, 25:10
primarily [1] - 16:19
principles [1] - 2:23
proactively [1] - 29:12
probable [1] - 29:15
Probation [1] -

1:22
probative [1] - 6:3
problem [4] - 35:15, 38:23, 38:25, 39:1
problematic [1] - 29:5
proceed [4] - 3:11, 3:13, 3:22, 44:15
proceeding [5] - 3:2, 5:15, 28:9, 28:15, 47:2
proceedings [3] - 5:7, 51:13, 52:5
process [1] - 44:2
procure [1] - 13:13
produce [2] - 43:24, 48:9
producing [1] - 10:7
production [1] - 45:25
productively [1] - 50:19
professional [1] - 34:21
Professional [1] - 52:3
proffer [15] - 3:12, 3:13, 3:16, 7:1, 7:6, 7:7, 8:4, 8:5, 9:12, 10:6, 11:9, 11:24, 12:15, 16:21, 18:20
proffered [1] - 19:3
proffering [1] - 3:14
proffers [1] - 18:6
progressed [2] - 9:6, 18:8
progression [2] - 8:12, 9:5
promise [1] - 26:6
promptly [1] - 50:18
prong [2] - 4:15, 15:2
proof [1] - 4:6
properly [1] - 43:5
proposed [1] - 19:1
protective [21] - 34:25, 36:23, 37:6, 40:22, 41:11, 41:19, 41:21, 41:24,

42:9, 42:11, 42:13, 42:14, 42:17, 42:25, 43:2, 43:5, 43:8, 43:10, 43:16, 46:15, 48:22
proven [1] - 35:19
provided [5] - 5:16, 8:8, 8:16, 8:17, 13:14
psychologist [1] - 27:24
purpose [1] - 13:21
purposes [6] - 10:5, 11:23, 12:15, 14:6, 19:10, 29:13
pursuant [4] - 40:4, 40:5, 51:9, 52:4
push [1] - 38:11
put [7] - 12:10, 26:16, 28:18, 28:19, 29:1, 30:5
putting [1] - 21:20, 35:8

## Q

Quarrels [1] - 32:9
questioning [1] - 18:21
questions [2] - 33:1, 33:10
quick [1] - 49:15
quickly [1] - 49:13
quite [6] - 14:7, 15:20, 16:7, 23:10, 34:1, 36:8

## R

raise [1] - 48:11
raised [1] - 22:21
raises [2] - 29:19, 40:22
reach [2] - 17:1, 20:25
reached [1] - 30:16
reaches [1] - 10:4
react [2] - 29:5, 29:12
read [4] - 5:5, 5:6, 15:7, 22:19
reading [1] -

23:14
ready [5] - 17:4, 32:24, 43:24, 44:15, 45:12
really [9] - 3:6, 24:16, 24:17, 28:19, 29:11, 30:23, 40:25, 42:16, 49:7
reason [4] - 28:17, 34:15, 41:11
reasonable [5] - 45:13, 46:10, 47:7, 47:8, 47:12
reasonably [4] - 18:1, 18:23, 18:24, 25:15
reasons [3] - 27:21, 27:25, 35:16
rebut [1] - 4:3
rebutted [3] - 29:21, 36:4, 36:15
recalled [1] - 12:13
received [2] - 38:7, 40:19
recently [3] - 5:23, 24:22, 39:10
recess [2] - 51:10, 51:12
reconsider [1] - 46:24
record [5] - 5:9, 22:3, 27:16, 29:3, 29:12
recorded [1] - 6:15
records [1] - 13:13
referring [1] - 32:2
reflection [1] - 10:1
Reform [2] - 35:12, 35:20
regard [1] - 46:9
Registered [1] - 52:3
regular [1] - 39:11
regulations [1] - 52:6
relate [1] - 16:10
related [2] - 38:1, 46:13
relation [1] -

41:14
relationship [1] - 19:10
relationships [1] - 13:17
relative [1] - 20:7
relatively [1] - 22:18
release [10] - 14:23, 17:19, 23:20, 27:8, 32:15, 34:12, 35:17, 35:18, 35:19, 49:9
released [6] - 14:13, 31:21, 32:15, 34:16, 41:13, 49:10
relevant [5] - 6:3, 7:22, 14:14, 16:12, 48:4
relieve [1] - 43:6
remain [1] - 14:11
remained [1] - 25:13
remains [1] - 45:7
remanded [1] - 51:8
remark [1] - 5:19
remarked [1] - 10:23
remedy [3] - 38:5, 41:5, 42:22
remember [1] - 11:8
report [3] - 24:2, 24:3, 42:4
reported [2] - 24:7, 52:5
REPORTER [2] - 52:1, 52:10
Reporter [1] - 52:3
reporting [1] - 24:7
reports [1] - 46:15
representation [1] - 10:12
require [2] - 46:10, 48:9
required [2] - 23:9, 24:7
residence [1] - 18:12
resolve [2] - 14:21, 50:16
resolved [1] - 49:17
respect [9] - 29:18, 29:24,

31:5, 34:24, 42:10, 44:4, 47:5, 50:14, 50:15
responding [1] - 30:21
responsibility [3] - 29:12, 42:4, 42:5
responsible [2] - 20:6, 20:7
responsive [1] - 34:21
restriction [2] - 24:11, 24:15
restrictions [2] - 17:15, 24:13
restrictive [2] - 16:17, 17:14
restricts [1] - 43:5
retained [1] - 27:24
retired [2] - 33:3, 33:5
returned [3] - 39:18, 39:21, 46:6
review [3] - 2:19, 2:21, 10:23, 25:2, 45:20
reviewed [2] - 5:9, 41:25
rhetoric [1] - 26:19
Ridge [1] - 13:2
rightly [1] - 29:19
rise [1] - 51:11
risk [2] - 4:14, 4:17
risks [1] - 29:8
road [2] - 30:1
role [1] - 20:8
rolling [1] - 44:2, 46:20
room [1] - 12:12
roughly [1] - 49:20
round [1] - 45:11
RPR [1] - 52:9
rule [1] - 50:18
rules [2] - 2:23, 2:25
ruling [3] - 2:23, 47:23, 49:8
run [3] - 13:1, 13:6, 49:18
runs [1] - 33:6

**S**

**safety** [4] - 18:1, 22:13, 29:9, 36:18
**sanction** [1] - 41:14
**saw** [3] - 13:3, 27:15
**scenario** [1] - 21:14
**schedule** [2] - 46:24, 47:5
**scheduling** [4] - 36:20, 50:10, 50:13, 51:2
**school** [1] - 19:19
**School** [3] - 13:2, 13:3, 13:12
**screen** [1] - 10:3
**screenshots** [2] - 13:5, 13:8
**se** [2] - 12:20, 48:24
**seal** [3] - 5:17, 39:25, 42:2
**sealed** [9] - 37:12, 38:9, 40:2, 40:6, 40:11, 40:23, 42:15, 42:21, 42:23
**search** [1] - 45:7
**searched** [2] - 17:5, 44:10
**seated** [2] - 2:11, 2:18
**second** [4] - 8:1, 16:7, 26:11, 41:3
**secrecy** [1] - 15:17
**secretive** [1] - 31:4
**security** [1] - 34:21
**see** [7] - 6:24, 6:25, 9:25, 41:19, 44:14, 45:9
**seek** [1] - 4:14
**seem** [1] - 50:12
**seemingly** [1] - 21:4
**seized** [1] - 7:4
**seldom** [1] - 38:4
**send** [3] - 43:12, 43:17, 45:11
**sending** [1] - 15:9
**sent** [2] - 43:13, 45:21

**sentence** [1] - 24:3
**separate** [1] - 24:19
**September** [4] - 1:8, 23:23, 47:15, 48:5
**series** [1] - 24:22
**serious** [3] - 29:16, 31:1, 32:17
**seriousness** [1] - 44:8
**serve** [1] - 32:24
**served** [1] - 32:23
**service** [2] - 30:2, 30:3
**services** [5] - 20:17, 21:24, 23:24, 24:4, 25:24
**set** [9] - 14:13, 16:24, 29:7, 45:14, 47:4, 47:10, 47:11, 47:13, 48:6
**setting** [2] - 35:16, 48:19
**severity** [1] - 29:6
**sex** [2] - 11:15, 32:12
**sexual** [8] - 10:17, 29:16, 31:15, 31:17, 31:18, 31:21, 31:25, 32:11
**sexually** [1] - 11:25
**shade** [1] - 28:11
**share** [6] - 25:5, 42:16, 42:18, 42:20, 43:1, 43:4
**sharper** [1] - 28:19
**shed** [1] - 12:15
**short** [1] - 29:1
**show** [4] - 5:20, 38:11, 38:21, 38:22
**shower** [3] - 9:15, 10:1, 10:5
**showers** [1] - 9:7
**shown** [3] - 9:15, 38:15, 38:16
**shows** [1] - 31:3
**side** [4] - 23:11, 23:24, 28:11, 33:6
**sides** [2] - 28:6,

42:6
**signed** [2] - 43:9, 43:11
**significance** [1] - 3:7
**significant** [2] - 22:25
**simply** [7] - 4:4, 21:8, 23:16, 36:2, 36:4, 42:13, 42:17
**sit** [1] - 12:3
**sitting** [6] - 8:15, 8:19, 9:18, 11:16, 12:1, 13:20
**situation** [1] - 21:20
**six** [13] - 23:19, 24:1, 25:24, 25:25, 29:22, 31:10, 32:10, 32:25, 33:22, 35:14, 35:23, 36:4, 36:9
**skilled** [1] - 7:2
**slate** [1] - 3:8
**sleeping** [1] - 31:18
**sneakiness** [2] - 38:5
**sneaky** [1] - 38:4
**so-called** [1] - 25:9
**social** [4] - 7:16, 13:17, 26:23, 26:24
**socializing** [1] - 13:16
**solely** [1] - 4:14
**sometimes** [1] - 4:23
**son** [1] - 22:14
**soon** [5] - 38:19, 41:21, 42:1, 44:21
**sort** [11] - 5:17, 6:1, 12:21, 14:24, 15:2, 18:17, 20:23, 28:11, 29:10, 41:14, 51:2
**sought** [1] - 40:9
**source** [3] - 3:15, 4:11, 11:9
**South** [1] - 1:15
**speaking** [1] - 34:15
**specific** [8] - 14:24, 17:22,

18:6, 28:19, 29:1, 30:23, 40:14, 40:18
**specifically** [2] - 14:20, 15:5
**speculating** [1] - 31:9
**speculation** [2] - 25:21, 30:1
**speedy** [10] - 47:18, 48:11, 48:12, 49:3, 49:5, 49:6, 49:12, 49:18, 49:22, 50:15
**spin** [1] - 21:14
**spoken** [1] - 13:15
**St** [2] - 13:2, 13:3
**stage** [3] - 8:20, 8:24, 22:24
**stand** [3] - 32:21, 46:14, 50:14
**standard** [6] - 18:2, 18:3, 37:5, 41:24, 42:25, 48:22
**standing** [1] - 2:4
**standpoint** [1] - 15:19
**stands** [2] - 50:17, 50:22
**start** [3] - 3:7, 30:4, 49:18
**started** [7] - 8:13, 9:6, 12:21, 43:20, 45:18, 48:16, 49:23
**starting** [3] - 8:12, 24:1, 45:16
**state** [14] - 4:19, 12:15, 16:5, 23:24, 24:1, 24:11, 24:13, 26:18, 29:4, 30:13, 33:25, 39:9, 45:6
**state-side** [1] - 23:24
**statement** [1] - 18:5
**statements** [1] - 11:14
**STATES** [2] - 1:1, 1:3
**States** [8] - 1:13, 1:15, 2:6, 19:6, 31:14, 31:25, 52:3, 52:6
**stateside** [1] -

29:23
**status** [3] - 3:22, 19:22, 44:3
**statute** [1] - 14:14
**stay** [2] - 17:13, 17:14
**stenographically** [1] - 52:5
**stenographically-reported** [1] - 52:5
**stenotype** [1] - 1:25
**steps** [1] - 28:13
**still** [16] - 4:2, 10:18, 11:13, 11:21, 11:22, 12:14, 15:9, 16:12, 16:24, 16:25, 17:5, 17:7, 19:12, 20:11, 20:12, 44:10
**stop** [1] - 13:16
**straight** [1] - 2:25
**straightforward** [1] - 20:22
**Street** [2] - 1:15, 1:19
**strike** [1] - 26:4
**strikes** [1] - 15:13
**strip** [1] - 45:10
**students** [5] - 13:5, 13:10, 13:16, 13:19, 19:10
**stuff** [2] - 30:5, 42:12
**subject** [3] - 13:25, 20:16, 35:4
**subjected** [2] - 35:2, 41:14
**submission** [2] - 23:6, 23:14
**submissions** [1] - 23:3
**submit** [4] - 25:18, 27:10, 33:20, 41:17
**submitted** [4] - 23:7, 23:22, 26:24, 50:18
**submitting** [1] - 37:7
**substantial** [1] - 14:7
**successfully** [3] - 4:3, 15:25, 29:21

**suffer** [1] - 35:5
**sufficiently** [2] - 29:4, 29:9
**suggest** [1] - 26:11
**suggestion** [1] - 47:10
**Suite** [1] - 1:19
**super** [1] - 34:24
**supersede** [1] - 44:18
**superseding** [1] - 46:23
**supervised** [1] - 18:16
**supervising** [1] - 24:4
**supervision** [4] - 24:1, 24:7, 27:8, 27:14
**support** [2] - 10:25
**supporters** [1] - 34:3
**supports** [3] - 8:6, 8:10, 19:12
**suppose** [1] - 20:4
**supposed** [2] - 19:25, 42:23
**surprised** [1] - 44:20
**sweep** [1] - 20:18

**T**

**table** [1] - 2:12
**tactics** [1] - 31:5
**talented** [1] - 34:20
**tamper** [1] - 28:23
**tampering** [1] - 25:16
**teacher** [4] - 10:13, 11:3, 13:24, 16:22
**teachers** [1] - 13:18
**team** [2] - 38:20, 44:15
**teenager** [1] - 11:13
**telephone** [2] - 18:14, 20:20
**terms** [3] - 16:8, 28:20, 36:20
**terribly** [1] - 14:1
**test** [1] - 25:3
**testify** [1] - 7:3
**testimony** [3] -

3:18, 7:12
**text** [10] - 13:4, 13:5, 13:8, 30:6, 37:15, 37:17, 38:6, 38:15, 38:16, 38:22
**THE** [133] - 1:1, 1:1, 1:11, 2:9, 2:14, 2:15, 2:16, 3:4, 3:10, 3:14, 3:18, 4:13, 4:17, 4:25, 5:9, 5:12, 5:15, 6:2, 6:5, 6:14, 6:18, 6:20, 7:1, 7:11, 7:18, 7:21, 7:24, 8:1, 8:23, 11:8, 13:25, 14:4, 14:9, 14:19, 14:23, 15:13, 15:17, 17:21, 18:4, 19:6, 19:13, 19:16, 20:4, 20:15, 21:14, 21:17, 21:22, 22:3, 22:8, 22:15, 23:2, 23:6, 24:9, 24:14, 24:20, 25:8, 26:10, 27:11, 28:6, 30:4, 30:18, 30:20, 32:2, 32:7, 32:18, 33:3, 33:12, 33:14, 33:16, 34:11, 35:24, 36:19, 37:1, 37:5, 37:8, 37:13, 37:16, 37:18, 37:21, 38:4, 38:11, 38:15, 38:18, 38:25, 39:3, 39:18, 39:21, 39:24, 40:2, 40:4, 40:8, 40:20, 40:25, 41:8, 41:10, 41:19, 41:23, 42:8, 42:20, 42:24, 43:8, 43:14, 43:18, 43:22, 44:2, 44:16, 44:21, 44:24, 45:13, 45:22, 45:25, 46:4, 46:8, 46:18, 46:21, 46:23, 47:1, 47:4, 47:7, 48:6,

48:9, 48:17, 49:2, 49:15, 50:2, 50:4, 50:6, 50:8, 50:24, 51:1, 51:5, 51:8, 51:11
**therefore** [1] - 16:11
**they've** [1] - 30:5
**thinking** [1] - 21:7
**third** [10] - 9:25, 18:16, 19:1, 19:4, 19:24, 20:6, 20:9, 32:18, 32:24, 35:10
**Thomas** [1] - 31:14
**thoughtful** [1] - 3:6
**thousands** [1] - 45:2
**threatening** [2] - 25:15, 35:7
**threats** [1] - 35:3
**three** [6] - 9:24, 11:5, 11:12, 46:16, 48:19
**Thursday** [1] - 1:8
**ties** [1] - 19:17
**today** [15] - 4:24, 10:11, 14:11, 14:21, 17:4, 31:23, 32:16, 32:20, 36:25, 38:12, 44:12, 47:18, 50:10, 50:20, 51:2
**together** [1] - 21:24
**toll** [2] - 47:18, 49:6
**tolled** [1] - 48:13
**tolling** [1] - 49:12
**tomorrow** [2] - 36:25, 43:20
**tone** [1] - 23:6
**totality** [5] - 2:22, 4:1, 4:4, 9:2, 10:21
**totally** [1] - 12:12
**track** [2] - 29:3, 29:12
**trained** [1] - 30:2
**tranches** [1] - 43:22
**transcript** [2] - 52:4, 52:5
**transcription** [1] - 1:25

**transferred** [1] - 34:19
**transpired** [1] - 5:12
**treat** [1] - 26:8
**treatment** [1] - 23:17
**trial** [18] - 26:6, 28:9, 33:25, 45:16, 45:20, 47:14, 47:18, 48:1, 48:11, 48:12, 49:3, 49:5, 49:6, 49:12, 49:13, 49:18, 49:22, 50:15
**tried** [2] - 24:16, 25:5
**true** [3] - 10:19, 19:22, 52:4
**trust** [10] - 12:1, 16:22, 16:23, 17:11, 21:9, 21:12, 21:15, 29:25, 36:12
**trusted** [6] - 10:13, 11:3, 12:17, 14:13, 17:16, 28:18
**trustworthiness** [1] - 23:11
**try** [1] - 44:12
**trying** [1] - 28:2
**turn** [3] - 14:5, 46:15, 46:16
**turned** [1] - 5:23
**two** [13] - 3:12, 5:22, 6:11, 9:9, 9:21, 12:5, 22:10, 41:23, 42:2, 45:17, 46:16, 48:18
**type** [2] - 33:23, 42:21

## U

**U.S** [5] - 1:22, 2:5, 32:3, 32:5, 34:20
**U.S.C** [1] - 52:4
**ultimately** [5] - 3:6, 5:23, 8:14, 14:9, 28:9
**uncharged** [1] - 26:2
**uncles** [1] - 22:10
**under** [12] - 4:2, 4:8, 5:17, 9:12,

16:11, 19:11, 19:13, 20:2, 24:10, 24:12, 27:13, 39:8
**understood** [3] - 9:1, 14:3, 14:22
**undetected** [1] - 25:13
**UNITED** [2] - 1:1, 1:3
**United** [8] - 1:13, 1:15, 2:5, 19:6, 31:14, 31:25, 52:3, 52:6
**unlawful** [1] - 16:5
**up** [9] - 12:9, 12:11, 13:2, 13:3, 16:7, 32:21, 37:25, 48:12, 50:9
**upstanding** [1] - 10:12

## V

**vehicle** [1] - 5:24
**versus** [3] - 2:6, 31:14, 32:1
**veteran** [1] - 32:23
**victim** [31] - 5:20, 5:22, 5:24, 6:11, 6:12, 7:9, 7:16, 7:18, 7:21, 8:2, 8:7, 8:15, 8:16, 9:5, 9:22, 10:1, 10:4, 12:4, 12:22, 15:6, 15:8, 16:9, 16:11, 19:11, 22:10, 25:9, 25:10, 25:12, 31:18, 31:19
**Victim** [1] - 12:11
**victim's** [3] - 8:21, 15:10, 22:11
**victims** [9] - 11:6, 12:5, 15:20, 17:1, 17:9, 17:19, 21:1, 24:21, 31:5
**video** [1] - 7:5
**videos** [23] - 4:10, 5:3, 5:17, 5:19, 5:22, 6:11, 6:15, 6:19, 6:24, 8:3, 8:6, 8:9, 9:2, 9:5, 9:12, 9:16, 9:21, 9:24,

24:18, 44:7, 44:13, 44:14, 45:9
**videotaped** [1] - 31:17
**Vietnam** [1] - 32:22
**view** [1] - 44:7
**violated** [5] - 16:22, 22:6, 27:8, 27:12, 40:11
**violates** [2] - 21:15, 35:20
**violating** [2] - 22:5, 42:2
**voyeuristic** [1] - 6:1
**vs** [1] - 1:4

## W

**waiting** [1] - 45:4
**walk** [1] - 30:1
**walking** [1] - 39:14
**warrant** [4] - 38:9, 39:13, 40:5
**warranted** [1] - 10:18
**warrants** [1] - 40:4
**week** [1] - 44:24
**weeks** [4] - 9:4, 45:17, 46:16, 48:18
**weigh** [1] - 10:20
**weight** [4] - 9:20, 14:1, 14:5, 22:23
**welcome** [1] - 45:9
**well-being** [1] - 15:10
**West** [2] - 31:15, 32:9
**whole** [2] - 15:17, 39:7
**willing** [3] - 32:23, 47:18, 49:13
**wish** [3] - 3:11, 22:11, 23:9
**witness** [16] - 25:6, 25:20, 26:1, 26:9, 26:20, 27:2, 27:20, 27:21, 27:22, 27:23, 28:1, 28:3, 28:5, 28:22, 28:23,

47:20
**witness's** [2] - 26:3, 27:6
**witnesses** [6] - 21:1, 26:2, 30:16, 30:17, 30:25, 34:3
**woke** [2] - 12:9, 12:11
**wondering** [1] - 48:11
**word** [1] - 35:25
**worker** [1] - 7:16
**works** [1] - 33:8
**worry** [1] - 18:20
**worthy** [1] - 4:24
**wraps** [1] - 39:8
**written** [1] - 10:25
**wrote** [4] - 10:24, 11:4, 15:6, 40:15

## Y

**year** [2] - 24:23, 24:5
**years** [5] - 10:13, 11:3, 19:2, 19:5, 36:10
**young** [5] - 11:12, 12:6, 15:8, 29:15, 31:5
**yourself** [1] - 42:25

## Z

**zero** [2] - 14:20, 30:15
**Zero** [1] - 30:17
**zeroed** [1] - 28:16
**Zoom** [1] - 34:1

## §

**§** [1] - 52:4