**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| | * |
| **UNITED STATES OF AMERICA** | * |
| | * |
| v. | * |
| | *     **Crim. No. JKB-23-278** |
| **CHRISTOPHER KENJI BENDANN,** | * |
| | * |
| **Defendant.** | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM AND ORDER**

Pending before the Court are Defendant Christopher Kenji Bendann's Motion to Suppress Evidence Obtained from Search Warrants (ECF No. 78) and Motion to Suppress Evidence Obtained from Cellphone (ECF No. 79). The Court held a hearing on May 9, 2024 regarding these Motions and denied both Motions in open court, promising a written opinion and order to follow. For the reasons previously stated in open court, and those provided below, both Motions will be denied.

**I.      MOTION TO SUPPRESS EVIDENCE OBTAINED FROM SEARCH WARRANTS**

Defendant's home, electronic devices, and various electronic accounts were search by state and/or federal officials pursuant to two search warrants, one signed by Baltimore County District Judge Karen Pilarski and one signed by United States Magistrate Judge for the District of Maryland Beth Gesner. (*See* ECF Nos. 81, 81-1.) Defendant contends that the search of his house and subsequent searches of his electronic devices and accounts pursuant to these warrants were unlawful because the warrants were deficient. (ECF No. 78.) Specifically, Defendant argues that the supporting affidavits (which the Parties treat as largely identical for both the state and federal

warrants) did not set out probable cause that evidence of a crime would be found at the time of the execution of the warrants or that, if such probable cause had once existed, it had become stale and therefore no longer supported the searches.

Reviewing courts "afford a magistrate's determination of probable cause great deference, declining to defer only when the finding was not supported by substantial evidence in the record or when the basis of the determination was a knowingly or recklessly false affidavit." *United States v. Davis*, 94 F.4th 310, 316 (4th Cir. 2024) (quotation omitted). Further, under *United States v. Leon*, evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant" is not subject to the exclusionary rule unless (1) the magistrate issuing the warrant "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) the magistrate issuing the warrant "wholly abandoned his judicial role" and functioned as a rubber stamp for law enforcement; (3) the warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized"—such that "the executing officers cannot reasonably presume it to be valid." 468 U.S. 897, 922–23 (1984) (citations and quotations omitted).

The evidence obtained pursuant to the search warrants is, at a minimum, admissible under *Leon*. Having reviewed the search warrants and supporting affidavits (ECF Nos. 81, 81-1) the Court finds that they are not misleading, nor "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," nor "facially deficient," nor did either Judge Pilarski or Magistrate Judge Gesner "wholly abandon [the] judicial role" when signing them. *See*

*Leon*, 468 U.S. at 922–23. Any reasonable officer would have relied on the warrants in good faith. *See id.* Accordingly, suppression of evidence is not warranted.

In any case, probable cause is amply demonstrated in the affidavits. They contain detailed allegations from the complaining witness, including a description of on-going criminal activity over the course of years. (*See* ECF Nos. 81 at 6–10, 81-1 at 28–15.) While illegal acts described largely occurred years prior, in this context, that lapse of time is insufficient to erode probable cause. As described in the affidavits, collectors of child pornography typically maintain their gallery for years, and even if they have attempted to delete the contraband, it may still be recoverable years later. (*See* ECF Nos. 81 at 15–17, 81-1 at 4–7.) Accordingly, in this context, the Court finds that the information contained in the affidavits was not stale and that the affidavits contained probable cause that evidence of a crime would be located pursuant to the warrants when they were executed in 2023. Therefore, Defendant's Motion to Suppress Evidence Obtained from Search Warrants (ECF No. 78) will be denied.

## II.     MOTION TO SUPPRESS EVIDENCE OBTAINED FROM CELLPHONE

Having heard the testimony of the Government's witnesses, and viewed the Government's evidence presented in open court, in particular the body-worn camera video entered as Exhibit 3, the Court makes the following findings of fact regarding the sequence of events and circumstances surrounding acquisition of evidence from Defendant's cell phone. Federal and state officials arrived at Defendant's home to execute a search warrant just after 5:00 a.m. The tactical team executing the warrant arrived at Defendant's residence with visible weapons, riot shields, and a battering ram, waking up the Defendant, who was in a state of undress. The Defendant was placed in flex-cuffs and supervised while the tactical team secured the residence. After the residence was

secured, the flex-cuffs were removed and then-Detective Shannon Markel arrived.[1]  Detective

Markel advised the Defendant of his rights and explained that they were executing a sealed warrant

and that, while Defendant would not be permitted to review the warrant at that time, the warrant

extended to the use of Defendant's face and hands to unlock his electronic devices.  The Defendant

invoked his right to remain silent.  When Detective Markel recovered Defendant's cell phone and

placed it in front of the Defendant's face to use his biometric data to unlock the phone, the phone

requested entry of Defendant's passcode.  Detective Markel did not say anything to the Defendant

at that time and Defendant, unprompted, entered the six-digit passcode into the cellphone within

Detective Markel's view.  Watching him, Detective Markel ascertained the first four digits of the

code and, based on those four digits, was able to deduce the final two digits of the passcode because

the six-digit code comprised the Defendant's date of birth.[2]

Defendant contends that, in the totality of the circumstances, entering the passcode into his

phone in view of Detective Markel was not voluntary, and therefore the exclusionary rule bars

admission of the contents of the phone.  Specifically, the Defendant highlighted the early hour, the

fact that he had recently been awakened, the number of officers and agents present at the time

(more than 12), the Defendant's recent state of physical restriction and undress, and Detective

Markel's statement to the Defendant that the warrant also allowed law enforcement to use

Defendant's face and hands to unlock the phone.

---

[1] Shannon Markel has since been promoted to the rank of corporal, but because Markel was a detective at the time, the Court will use that rank for simplicity.

[2] After this exchange, now-former FBI Agent Jon Shumway went to access a part of the phone for which the passcode again needed to be entered.  When he did so, Detective Markel confirmed the passcode with the Defendant by saying it aloud, prompting the Defendant to confirm.  The Court, however, need not decide if this subsequent exchange was lawful (and it likely was not) because Detective Markel had already deduced the passcode based on having viewed the Defendant type it in.  Therefore, based on the testimony, video footage, and applicable law, the Court finds that whether the code was obtained lawfully depends entirely on the initial exchange between Detective Markel and the Defendant.  Defense counsel did not disagree with this assessment from the Court during the May 9, 2024 hearing. Accordingly, the Court will examine only the lawfulness of the initial exchange during which the Defendant entered his passcode.

After a person in custody has invoked their right to remain silent, "the police may not question him." *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.* at 475. The government must prove any waiver was voluntary by a "preponderance of the evidence." *United States v. Robinson*, 404 F.3d 850, 860 (4th Cir. 2005). "[T]he exclusionary rule bars admission of the nontestimonial physical fruits of statements obtained in violation of *Miranda* when those statements are involuntary, and statements obtained in violation of *Miranda* are presumptively involuntary." *United States v. Alston*, 941 F.3d 132, 137 (4th Cir. 2019). Voluntariness depends on whether the statement was "the product of an essentially free and unconstrained choice by its maker" or whether the defendant's "will has been overborne and his capacity for self-determination critically impaired." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973). The court should assess "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Id.* at 226.

Having considered the video evidence as well as the testimony presented by the Government, which the Defendant characterized differently but did not dispute, the Court concludes that the Defendant voluntarily entered his passcode into his phone and therefore the exclusionary rule does not apply. *See United States v. Patane*, 542 U.S. 630, 632–43 (2004) ("[B]ecause police cannot violate the Self–Incrimination Clause by taking unwarned though voluntary statements, an exclusionary rule cannot be justified by reference to a deterrence effect on law enforcement."). The circumstances in which the Defendant entered his passcode are, admittedly, concerning and maybe approach the border of coercive. However, the Court concludes

that, in the totality of the circumstances, the Defendant's choice to enter his passcode was "the product of an essentially free and unconstrained choice by its maker." *See Schneckloth*, 412 U.S. at 225. Detective Markel's behavior, while it may have been intended to take advantage of an opportunity, was not unlawfully calculated to elicit information. Detective Markel did not lie to or mislead the Defendant, nor was the Defendant subjected to shocking scare tactics, like flash bangs or a no-knock warrant. The video footage depicts the Defendant sitting peacefully, speaking calmly with Detective Markel. When the phone is placed in front of his face, the Defendant voluntarily, perhaps even reflexively, enters the passcode. He may have assumed that he was supposed to do so, but his will was not "overborne." Accordingly, the Court finds that, even though entering the passcode implicates the protections of *Miranda*, the exclusionary rule does not apply because in the totality of the circumstances, the Defendant's will was not overborne and he entered the passcode voluntarily.[3]

## III.   CONCLUSION

For the reasons above and stated on the record in open court, it is ORDERED that:

1. Defendant's Motion to Suppress Evidence Obtained from Search Warrants (ECF No. 78) is DENIED;

2. Defendant's Motion to Suppress Evidence Obtained from Cellphone (ECF No. 79) is DENIED; and

3. The Parties SHALL FILE a joint status report with the Court no later than June 10, 2024.

---

[3] The Court also notes that, even if the Defendant did not voluntarily enter the passcode, if "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means" then the exclusionary rule does not apply. *Nix v. Williams*, 467 U.S. 431, 444 (1984). Here, the passcode was the Defendant's birthday, and it was reasonably likely that law enforcement would have tried such a commonly used passcode when attempting to unlock the phone. However, because the Court has concluded that the Defendant entered the passcode voluntarily, the Court need not make any factual findings regarding the inevitable discovery exception.

DATED this __10__ day of May, 2024.

BY THE COURT:

James K. Bredar
United States District Judge