**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CASE NO:  JKB-23-278** |
| **CHRISTOPHER KENJI BENDANN,** | |
| **Defendant.** | |

**GOVERNMENT'S ADDENDUM TO MOTION TO ADMIT EVIDENCE**
**PURSUANT TO RULES 414, 413, 404(b), & 401,**
**AND AS INTRINSIC TO THE CHARGED COUNTS**

The United States hereby files a motion for a pretrial ruling regarding the admission of evidence at trial pursuant to Rules 414, 413, 404(b), & 401 of the Federal Rules of Evidence.  This Motion supplements the Government's notice filed in ECF 36 and provides notice of additional evidence that the Government intends to introduce at trial.[1]  The evidence should be admitted because it is relevant, intrinsic to the charged offenses, and its admission will not unduly or unfairly prejudice the Defendant. It follows that all the evidence is admissible under Federal Rules of Evidence 401, 404(b), and/or 413 and 414.

The Government provides notice for the following evidence pursuant to ECF 36 and this Motion:

1.   The Defendant's attempt to remove a towel from a then adolescent boy, witness W.G.[2], after W.G. had showered, and Defendant's attempt to have W.G. and others send explicit images over Snapchat (Rule 414, 413, 404(b) and 403);
2.   The Defendant's initiation, encouragement, coercion, or enticement of adolescent boys to run naked in his presence (404(b) and 401);
3.   The Defendant's impermissible contact with adolescent boys including but not

---

[1]  The government previously identified  evidence it seeks to admit pursuant to 404(b) and 414 and has provided copies of the relevant records in discovery.  To the extent that this filing addresses additional evidence, the government has previously provided the relevant records in discovery, and this motion should be treated as notice of the government's intent to admit such evidence.

[2] W.G., DOB 2000, is legally an adult however was a minor at the time of the offenses.

limited to socializing, social media connection, and texting while serving as a
teacher at Gilman (401);

4.       The Defendant's Google searches (414, 404(b) and 401).


I.       **FACTUAL BACKGROUND**

         **A. The Instant Offense**

The investigation into the Defendant began on January 21, 2023, when the Baltimore

County Department of Social Services ("DSS") received a report that a middle school teacher at

the Gilman School ("Gilman") had provided alcohol to students.  The report specified that the

teacher, Christopher Kenji Bendann (the Defendant), drove students to the area of St. Paul's

School and Meadowood Regional Park in Baltimore County, requested that the students remove

their clothing, and had the students run around the park area, naked, in front of the Defendant.

The report alleged that this occurred more than once, and that the incidents occurred in July and

August of 2021.  Other allegations included that the Defendant bought alcohol for underaged

students.  On January 16, 2023, Gilman placed the Defendant on administrative leave, and he

was subsequently terminated on January 20, 2023.   Upon receipt of the DSS report, Baltimore

County Police ("BCPD") began their investigation into the allegations involving the Defendant.

On January 30, 2023, Minor Victim was forensically interviewed at the Child Advocacy

Center ("CAC").  Minor Victim disclosed that the Defendant had sexually abused him and had

taken explicit images and videos of him.   Minor Victim stated that he met the Defendant when

Minor Victim attended middle school at Gilman.  The Defendant was his student-advisor during

this time.  According to Minor Victim, when he was in 8th or 9th grade (2015-2016), the

Defendant  gave Minor Victim and his friends rides home after they had been drinking.  In

exchange for the ride,  the Defendant made Minor Victim and his friends run naked at

Meadowood Regional Park and at the hill at St. Paul's School.  Minor Victim stated that this

went on for over a year.

On one occasion, when Minor Victim was a freshman or sophomore in high school (2016-2017) at Gilman, the Defendant drove a long way to pick Minor Victim from a party. On the drive home, the Defendant stopped at McDonald's and bought Minor Victim something to eat. The Defendant then told Minor Victim that Minor Victim "owed him" for having the Defendant drive such a long way. The Defendant told Minor Victim to get naked and masturbate. Minor Victim was 15 or 16 years-old at the time. Minor Victim complied with the Defendant's request. Minor Victim described the Defendant's car as a silver Honda CRV. Over the course of the following year, the Defendant continued to demand that Minor Victim remove his clothes and masturbate during their drives, and at some point, during these encounters, the Defendant began to touch Minor Victim's genitals. The first touching began in the Defendant's car when the Defendant picked Minor Victim up from a party. The abusive acts intensified, and, as Minor Victim described, "things got worse."

The Defendant sexually abused Minor Victim at houses where the Defendant housesat for Gilman families. The Defendant also sexually abused Minor Victim at Minor Victim's home. The Defendant recorded these instances of abuse, which often occurred in showers in the residences of Gilman families and in Minor Victim's home.

Minor Victim also disclosed that the Defendant contacted Minor Victim via text message and over social media platforms such as Snapchat and Instagram, demanding that Minor Victim send naked videos and images of himself to the Defendant. Minor Victim stated that the Defendant reached out to him on Snapchat and started "making deals" with Minor Victim. Specifically, the Defendant repeatedly threatened Minor Victim with exposure if Minor Victim did not produce a certain number of nude images. If Minor Victim tried to block the Defendant

on social media, the Defendant harassed Minor Victim's friends and threatened Minor Victim with exposure of the nude images.

When Minor Victim left the Baltimore area for college in 2020, the Defendant created an Instagram account with the username, "FD_TCH" that contained naked images of Minor Victim from high school.  The Defendant used this Instagram account to send friend requests to Minor Victim's friends.   The "FD_TCH" account was private, meaning no one could see it unless invited to do so.  If Minor Victim did not comply with the Defendant's various demands, the Defendant would periodically make the account public and alert Minor Victim so as to force Minor Victim to comply..  The Defendant would also threaten to contact Minor Victim's girlfriend and exposed Minor Victim through the "FD_TCH" account.

Minor Victim gave law enforcement his cell phone and iPad with consent that they could search his devices.  Investigators located text messages between the Defendant and Minor Victim from May 2022 through January 2023, when Minor Victim was an adult.  Within the texts, the Defendant threatened Minor Victim with exposure if Minor Victim did not comply with his demands such as responding back in a timely way; going to the Defendant's residence to talk or engage in sexual acts; or sending images or videos via Snapchat, etc.

Subsequent search warrants for the Defendant's iCloud and two laptop devices revealed explicit images and videos of Minor Victim.  Within the iCloud, eight sexually explicit videos of Minor Victim were located, including two wherein the Defendant had sexual contact with Minor Victim.[3]  Duplicates of some of these videos as well as some other sexually explicit images of Minor Victim were located in two of the Defendant's laptops.  The Defendant also had numerous non-explicit images of Minor Victim, starting from when he was around 14 years of age, as well

---

[3] Although there were 8 videos, some occurred on the same dates and times, resulting in 5 separate charges of Sexual Exploitation of a Child.

as a photo of Minor Victim's driver's license.

### B.  Evidence of Other Offenses and Bad Acts

    i.  **Witness W.G. and an attempted sexual contact; attempts to obtain explicit images over Snapchat**

W.G. was a student at the Gilman School during the relevant time frame of 2016- 2018. W.G. played lacrosse with Minor Victim and socialized with him.  The Defendant was W.G.'s teacher in middle school, and the Defendant often babysat W.G. while his parents were out of town.  W.G. will testify that on more than one occasion, the Defendant brought him as well as Minor Victim and other student-witnesses to Meadowood Park and the St. Paul's School and encouraged them to run naked while the Defendant watched them.  On one occasion after a "naked run," W.G. attempted to retrieve his clothes, and the Defendant swatted them away.

W.G. was "friends" with the Defendant through the social media platform Snapchat.[4] After posting a "Snap" at night with his shirt off, W.G. received a message through Snapchat from the Defendant asking, "are you wearing pants?"

W.G. will testify that on one occasion when he was approximately 16 years old and a junior in high school (2017 to 2018),  the Defendant babysat him while his parents were away and the Defendant slept over.  T.  W.G. took a shower and walked into his own bedroom wearing just a towel.  The Defendant was waiting for him, laying on W.G.'s  bed.  The Defendant said, "let's wrestle," and grabbed the towel off of W.G.'s body and genital area.  W.G. held on to the towel, and the Defendant pulled so hard the towel ripped.

In addition to W.G., several other student-witnesses will also testify that during their high

---

[4] Snapchat is an American multimedia instant messaging app and service developed by Snap Inc., originally Snapchat Inc. One of the principal features of Snapchat is that pictures and messages are usually only available for a short time before they become inaccessible to their recipients.  Messages are referred to as "snaps."

school years at Gilman, while exchanging messages with the Defendant over Snapchat, the

Defendant would ask questions like, "are you wearing any pants?" or "show me your tummy."[5]

W.G. and the others thought the questions were odd and did not respond to the Defendant's

requests.

> ### ii.     Witness testimony that the Defendant would initiate, encourage, coerce or entice, them to run "naked laps" while they were minors.

In addition to W.G., other student-witnesses will testify that they ran "naked laps" in the

Defendant's presence and at his behest.  These witnesses, along with Minor Victim, were

brought to Meadowood Park and St. Paul's School, by the Defendant.  The Defendant  watched

these boys run naked, and in one instance the Defendant recorded Minor Victim running a lap

around a student's house, saying "You've got two more, pup."[6]

When this investigation was first uncovered, the initial complaints to the Gilman School

were that the Defendant provided alcohol to minors and had students run around naked at

Meadowood Park and St. Paul's School.  That information prompted employees at Gilman to

begin an internal investigation and later to report the matter to Baltimore County Police.

> ### iii.    The Defendant's illicit contact with adolescent male students while serving as a teacher at Gilman including but not limited to socializing, connecting on social media , and text messaging.

The Defendant began working at the Gilman School in approximately 2007.  During the

relevant time frame, 2016-2022, Gilman utilized an employee handbook that contained an

Acceptable Use Policy (AUP) relating to social media and the internet.  The AUP included that

teachers could not "friend" any current students on social media.  Employees had to sign the

---

[5] Users of Snapchat often engage in "streaks" with their friends wherein the user will send at least one selfie photo of himself, and the receiver must respond in kind, once a day every day – the goal being to keep the streak alive for as long as possible.

[6] "Pup" is a name used several times by the Defendant, referring to Minor Victim.  This particular video was found on the Defendant's Sony Vaio laptop

handbook every February when employees received their contacts. Gilman teachers were and are only permitted to have contact with students through approved means such as school email or, if absolutely necessary, text messages.

In 2010-2011, the Defendant met with the head of the Gilman middle school as well as the head of Human Resources, Ms. Angela Johnson. Ms. Johnson advised the Defendant that he could no longer babysit students or give students rides home. Approximately a year later, Gilman's then-headmaster and Ms. Johnson met with the Defendant again and advised him he could no longer babysit students. Sometime between 2019 and 2021, the current headmaster, Henry Smyth, and Ms. Johnson met with the Defendant again and advised him to stop babysitting students. During these meetings, they informed the Defendant how this behavior appeared to others. The Defendant responded that he would never do anything to a kid and that the families in the community trusted him. The Defendant also expressed that he felt Gilman was focusing on him because he was a minority, and the Defendant asked that he be shown a "no babysitting" policy in the handbook.

Witnesses from the Gilman School will also testify that the Defendant was known to be too close to the students physically during the school day, and that his horseplay with students was uncomfortable for his coworkers to observe.

Former students at Gilman will testify that the Defendant would babysit for their families and would socialize with them outside of school. Despite the school's policy, the Defendant was "friends" with them on social media platforms like Snapchat and Instagram, and the Defendant would text them socially because he had their contact information. These social media connections and text messaging occurred while these witnesses were still middle and high school students at Gilman, in violation of Gilman's AUP.

### iv.     The Defendant's Google searches

Pursuant to a search warrant, investigators were able to review the Google searches made through the Defendant's two Google accounts:  cbendann@gmail.com and ckbendann@gmail.com.  Some of the search terms that the Government intends to introduce include specific searches for: Minor Victim's YouTube accounts and lacrosse related accounts; Minor Victim's astrological sign; "can people see saved messages in snapchat," nanny/spy cameras, "send anonymous text messages," "can you lock your hidden photos," and "can people see saved messages in snapchat."  Other more explicit search terms include:  "naked lax bros," "guys running naked," "naked boys in public," "teenboysmilk.com," and others.  A list of some of these searches include dates and times are attached in Gov Ex. A.

## II.     THE LAW

### A.     The Elements of the Offenses

As a result of the conduct described above, the defendant was charged in  the Superseding Indictment with five (5) counts of Sexual Exploitation of a Child in violation of 18 U.S.C. §2251(a) (Counts 1-5), three (3) counts of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 6-8) and one (1) count of Cyberstalking, in violation of 18 U.S.C. § 2261(a)(2) (Count 9).  Below are the elements of the charges in the Superseding Indictment.

#### a.     The elements of Counts One through Five (Sexual Exploitation of a Minor)

i.   An actual minor, that is, a real person who was less than 18 years old, was depicted;

ii.   That the defendant knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct[7] for the purpose of producing a visual

---

[7] The jury will be instructed that sexually explicit conduct includes the lascivious exhibition of the

depiction of such conduct; and

      iii.  The defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

     b.  <u>The elements of Counts Six through Eight (Possession of Child Pornography):</u>

      i.  First, that the defendant knowingly transported (or shipped or distributed or received or sold or possessed with intent to sell) or possessed a visual depiction;

      ii.  Second, that the visual depiction was transported in or affecting interstate or foreign commerce or the visual depiction was produced using materials that had been transported in or affecting interstate or foreign commerce;

      iii.  Third, that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrays that minor engaged in that conduct; and

      iv.  Fourth, that the defendant knew that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrayed a minor engaged in that conduct.

     c.  <u>The elements of Count Nine (Cyberstalking):</u>

      i.  First, that the defendant used an interactive computer service or an

---

genitals or pubic area of any person. The jury will be further instructed, consistent with *Sand*, that the term "lascivious exhibition" means a depiction that displays or brings to view to attract notice to the genitals or pubic area of children in order to excite lustfulness or sexual stimulation in the viewer, and that the jury should consider the following, non-exhaustive list of questions in reaching their decision:

➢ Whether the focal point of the visual depiction is on the child's genitals or pubic area, or whether there is some other focal area;
➢ Whether the setting of the visual depiction makes it appear to be sexually suggestive, for example, in a place or pose generally associated with sexual activity;
➢ Whether the child is displayed in an unnatural pose, or in inappropriate attire, considering the age of the child;
➢ Whether the child is fully or partially clothed, or nude, although nudity is not in and of itself lascivious;
➢ Whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and
➢ Whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

electronic communication service or an electronic communication system, or any other facility of interstate commerce;

        ii.   Second, that the defendant engaged in a course of conduct with the intent to harass, intimidate, or cause substantial emotion distress to the victim; and

        iii.   Third, that as a result of that course of conduct the victim experienced substantial emotional distress.

### B.    Federal Rules of Evidence 413 and 414

Both Rule 413 and 414 provides that in a criminal case in which the defendant is accused of a sexual assault or child molestation, evidence of the defendant's commission of another offense of sexual assault or child molestation is admissible and may be considered for its bearing on *any matter to which it is relevant*. Fed. R. Evid. 413(a) and Fed R. Evid 414(a) (emphasis added). Such evidence is not temporally limited to prior acts of a defendant, but instead encompasses all other acts, whether before, after, or contemporaneous with the charged conduct. *See United States v. Mohr*, 318 F.3d 613, 617 (4th Cir. 2003) (discussing Rule 404(b)); *see also United States v. Sioux*, 362 F.3d 1241, 1246–47 (9th Cir. 2004).

Rule 413 provides in pertinent part:

> In a criminal case in which a defendant is accused of sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant.

*Id.* Sexual assault is defined in the rule to include both state and federal crimes involving sexual abuse, sexual acts, or sexual contact. Rule 413 defines "sexual assault" broadly to include:

1.     Any conduct prohibited by 18 U.S.C. chapter 109A;

2.     **Contact, without consent, between any part of the defendant's body – or an object – and another person's genitals or anus;**

3.     Contact, without consent, between the defendant's genitals or anus and any part of another person's body;

    4.      Deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or

    **5.**      **An attempt or conspiracy to engage in conduct described in subparagraphs (1)-(4).**

Fed. R. Evid. 413(d) (emphasis added).


Rule 414 provides in pertinent part:

> In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant.

*Id.* Child molestation is defined broadly to include a crime under state and federal law involving:

    A.      Any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child;

    C.      **Any conduct prohibited by 18 U.S.C. chapter 110**;

    C.      Contact between any part of the defendant's body – or an object – and a child's genitals or anus;

    D.      Contact between the defendant's genitals or anus and any part of a child's body;

    E.      Deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or

    F.      **An attempt or conspiracy to engage in conduct described in subparagraphs (A)-(E).**

Fed. R. Evid. 414(d) (emphasis added).

Federal Rules of Evidence 413 and 414 were designed to "supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b)" and to create a presumption that evidence admissible under these rules "is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects." 140 Cong. Rec. H8992 (1994) (remarks by principal House sponsor, Rep. Molinari). Thus, Rules 413 and

414 permit the jury to consider sexual assault and other child molestation evidence "on any matter to which it is relevant." Fed. R. Evid. 413(a); 414(a).

> Sexual assault and child molestation cases are different. In such cases, "the court may admit evidence that the defendant committed any other sexual assault" or "any other child molestation" and such "evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a) (assault); Fed. R. Evid. 414(a) (molestation). Indeed, Rules 413 and 414 permit evidence of prior acts of sexual assault or child molestation to prove a defendant's propensity to commit such acts.

*United States v. Vickers*, 708 F. App'x 732, 736 (2d Cir. 2017).

"In other words, a prosecutor may use evidence of prior sexual assaults precisely to show that a defendant has a pattern or propensity for committing sexual assault." *United States v. Schaffer*, 851 F.3d 166, 177–78 (2d Cir. 2017) (discussing Rule 413); *see also United States v. Davis*, 624 F.3d 508, 512 (2d Cir. 2010) (recognizing the same as to Rule 414). There is no requirement that there be a conviction for the prior abuse, *United States v. Johnson*, 283 F.3d 138, 151 (3d Cir. 2002), nor is there any proscribed temporal limitation. *United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997) (affirming the admissibility of testimonial evidence of uncharged prior acts of molestation committed 16 – 20 years prior to those alleged at trial); *see also United States v. Wager*, 651 F. Supp.3d 594, 602 (N.D.N.Y. 2023) (Hurd, J.) ("the Second Circuit has noted Congress intended the "temporal scope" of Rules 413 and 414 to be fairly broad.")

As a result, "[w]hereas in other cases it is impermissible, and unfairly prejudicial, for the jury to infer a propensity to commit the charged crime from evidence of prior, similar acts, Rule 414[8] makes that a permissible inference." *United States v. Spoor*, 904 F.3d 141, 154 (2d Cir. 2018). Accordingly:

> the district court should consider such factors as: (1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening

---

[8] And Rule 413.

circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial.

*Id.*, quoting *United States v. LeMay*, 260 F.3d 1018, 1028 (9th Cir. 2001) (internal quotation marks omitted).

In support of admitting evidence of prior sexual assaults, the court in *United States v. Enjady* noted that Rule 413 reflects Congress's view that it was "necessary to lower the obstacles to admission of propensity evidence in a defined class of cases," including assessing credibility. *United States v. Enjady*, 134 F.3d 1427, 1431 (10th Cir. 1998).   Additionally, the court noted that there is a "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible." *Id.* (*quoting United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir. 1997)). Therefore, the court should treat Rules 413 and 414 as rules of inclusion and generally admit evidence of prior sexual offenses. *See Id.  See also United States v. Kelly*, 510 F.3d 433, 437 (4th Cir. 2007) ("Rule 414 reflects Congress's view that this propensity evidence is typically relevant and probative.")

In *United States v. Stamper*, the court laid out three elements required for evidence to be admissible under Rules 413 and 414:

> (1) the defendant must be accused of a sexual assault or child molestation;

> (2) the evidence proffered must pertain to the defendant's commission of another sexual assault or child molestation; and

> (3) the evidence must be relevant.

*United States v. Stamper*, 106 F. App'x 833, 835 (4th Cir. 2004) (unpublished).

Evidence that meets the requirements of Rule 413 and 414 is still subject to the balancing test of Rule 403.  *Id.*   Evidence admissible under Rule 413 and 414 "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

14

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

The Fourth Circuit instructs district courts to consider a number of factors when subjecting Rule 413/414 evidence to the Rule 403 balancing test, including:

(1) The similarity between the previous offense and the charged crime;
(2) The temporal proximity between the two crimes;
(3) The frequency of the prior acts;
(4) The presence or absence of any intervening acts; and
(5) The reliability of the evidence of the past offense.

*Kelly*, 510 F.3d at 437.  In *Kelly*, the Fourth Circuit acknowledged the split between the Ninth and Seventh Circuits as to whether a district court must address these or other specific factors. Compare *United States v. LeMay*, 260 F.3d 1018, 1027-28 (9th Cir. 2001), with *United States v. Hawpetoss*, 478 F.3d 820, 825-26 (7th Cir. 2007). "Although disposition of this case does not require choosing between these views, the Seventh Circuit's more flexible approach seems preferable in view of this circuit's general view that a district court has 'wide discretion' in admitting or excluding evidence under Rule 403." *Kelly*, 510 F.3d at 437, n.3.

Additionally, while evidence of prior sexual acts will always be "emotionally charged and inflammatory," courts must keep in mind that the allegation that the defendant committed the charged crimes will be just as inflammatory. *LeMay*, 260 F.3d at 1030.  In enacting Rule 413 and 414, Congress was aware that evidence of child sexual abuse carries a "unique stigma" and risk of jury prejudice. *United States v. LeCompte*, 131 F.3d 767, 769-70 (8th Cir. 1997).  Nevertheless, Congress intended to override concerns about the stigma of such evidence—concerns which had previously excluded prior sexual act evidence—by enacting Rule 414. *Id.*

The Fourth Circuit, like other circuits, has affirmed that evidence admitted under Rule 414 may be considered by the jury for any relevant purpose, including proof that a defendant has

sexually predatory propensities. *United States v. Kelly*, 510 F.3d 433, 436-37 (4th Cir. 2007). "Rule 414 allows the admission of evidence for the purpose of establishing propensity to commit other sexual offenses.  In allowing this evidence, courts have noted that Rule 413/414 reflects Congress's view that this propensity evidence is typically relevant and probative." *Id.* at 437; *see United States v. Jones*, 748 F.3d 64, 70 (1st Cir. 2014) ("Rule 414 removes Rule 404(b)'s blanket ban on propensity inferences in child-molestation chases."); *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006) (Rule 414 "create[s] an exception to the general ban on propensity evidence contained in Rule 404(b)"); *United States v. Bentley*, 561 F.3d 803, 815 (8th Cir. 2009) ("Because propensity evidence is admissible under Rule 414, the fact that evidence of prior acts suggests a propensity to molest children is not unfair prejudice.").

### C.   Federal Rule of Evidence 404(b)

Federal Rule of Evidence 404(b) provides that in a criminal case, evidence of other acts of the defendant is admissible for the showing of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." Fed. R. Evid. 404(b). *See Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.").

The Fourth Circuit uses a multi-factor test to determine admissibility of "other acts evidence" under Rule 404(b). *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). To be admitted under 404(b), other acts evidence must meet all the *Queen* factors:

(1)    The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes;

    (2)       The act must be necessary in the sense that it is probative of an essential claim or an element of the offense;

    (3)       The evidence must be reliable; and

    (4)       The evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*Queen*, 132 F.3d at 997.

Such evidence may also be offered to rebut reasonably anticipated defenses. *See United States v. Hanson*, 936 F.3d 876, 882 (9th Cir. 2019) (affirming prior acts evidence of defendant's possession of child pornography under 414 and alternatively 404(b) to rebut defendant's defense about how he obtained the charged child pornography); *United States v. Hardrick*, 766 F.3d 1051, at 1055–56 (9th Cir. 2014) (affirming district court's admission of testimony regarding uncharged items of child pornography to prove knowledge and rebut defenses) (*citing United States v. Schene,* 543 F.3d 627, 643 (10th Cir. 2008) (affirming district court's admission of uncharged child pornography images for the purpose of proving the defendant's intent and knowledge)); *United States v. Norweathers*, 895 F.3d 485, 490-91 (7th Cir. 2018) (affirming the admission under 403 and 404(b) of an uncharged email exchange that the government used to weaken the defendant's anticipated defense that he did not distribute child pornography); *United States v. Salcido,* 506 F.3d 729, 735 (9th Cir. 2007) (per curiam) (affirming district court's admission of defendant's sexually explicit instant messaging chats for the purpose of proving the defendant's knowledge); *United States v. Long*, 328 F.3d 655, 663–65 (D.C. Cir. 2003) (affirming district court's admission of uncharged child pornography photographs found in the defendant's home for the purpose of proving the defendant's possession and intent); *United States v. Forrest*, 429 F.3d 73, 79-80 (4th Cir. 2005) (affirming the district court's admission of pornographic and nonpornographic images of adult males under 403, noting that such images "directly rebutted" the defendant's argument that he did not produce child pornography found

alongside the adult images).

"Although it is not mentioned in the rule, there is no doubt that proving predisposition is one of the purposes for which bad-act evidence may be admissible." *United States v. McLaurin*, 764 F.3d 372, 308 (4th Cir. 2014); *see also United States v. Wolford*, 386 F. App'x 479, 484 (5th Cir. 2010) (affirming admission of pornographic images of children found on defendant's computer as evidence of defendant's motive and intent to entice a minor to engage in illegal sex acts).

     **D.**    **Federal Rule of Evidence 401**

Federal Rule of Evidence 401 defines relevance as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. A "fact of consequence" is not limited to the ultimate issue or elements in a case, but rather can be any step along a path of inference that leads to an "ultimate fact." *Old Chief v. United States*, 519 U.S. 172, 179 (1997). "Facts of consequence" also include reasonably anticipated defenses. *United States v. Lewis,* 759 F.2d 1316, 1349 n.14 (8th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 407, 88 L.Ed.2d 357 (1985); *United States v. Curtin*, 489 F.3d 935, 940 (9th Cir. 2007); *Rooks v. United States*, No. 4:07CR142, 2014 WL 949100, at *7 (E.D. Va. Mar. 11, 2014).


**III.**    **ARGUMENT**

     **A.**    **Attempted sexual assault of W.G. and attempts to obtain explicit images over Snapchat.**

In order for this evidence concerning the Defendant's attempt sexual assault of W.G. and attempts to obtain explicit images to be admissible under Rule 413 and 414, the three elements

18

from *Stamper* must be present:  the defendant must be accused of an offense of sexual assault or child molestation; the evidence proffered must pertain to the defendant's commission of another child molestation or sexual assault; and the evidence must be relevant.

The Defendant is charged with offenses involving child molestation, under Chapter 110: 18 U.S.C. §2251(a) Sexual Exploitation of a Child and 18 U.S.C. § 2252A Possession of Child Pornography.  The Defendant is also accused, within the nature of those charges, of sexual assault against Minor Victim.  Counts 4 and 5 of the Superseding Indictment specifically allege that the Defendant had sexual contact with Minor Victim by touching and masturbating Minor Victim's penis; this contact was not consensual and was part of the Defendant's entire scheme of threats and duress placed on Minor Victim to comply with his demands.

The Defendant waited in W.G.'s bedroom and attempted to pull the towel off of W.G. so that W.G. would be naked, conduct that falls squarely within Rule 413  – an attempt of sexual assault,  i.e. attempted sexual contact with W.G.'s genitals, without consent against another person.

The Defendant's attempt to have W.G. and others send Snapchat images of their stomachs and genitals also falls squarely within Rule 414 – prior attempts of child molestation and/or violations of conduct prohibited by 18 U.S.C. Chapter 110, i.e. attempts to produce child pornography or receive child pornography.

The evidence is also relevant and intrinsic to the charged offenses.  The Defendant's attempts to commit other sexual offenses with other minors during the time the Defendant was sexually exploiting and abusing Minor Victim is highly relevant propensity evidence.   It is unmistakable that the Defendant's attempted sexual exploitation and abuse of W.G. and others, is evidence that the Defendant is sexually attracted to minor boys, that he had the motive to produce

and possess the sexually explicit videos and images in the charged counts, and that he intended to produce and possess them for his own sexual stimulation.

Additionally, for the same reasons addressed above, the first four factors of Rule 414's 403 analysis are met (similarity, temporal proximity, frequency, lack of intervening circumstances).[9]

As to reliability, W.G., and the other student-witnesses will testify under oath, subject to cross-examination, regarding their interactions with the Defendant while they were in middle and high school 2014 to 2020. These witnesses' testimonies are admissible irrespective of them not being the subject of a count in the Superseding Indictment. Courts have admitted evidence where the victim of the charged offense and the victim in the evidence admitted are different. In *Reigle*, the Fourth Circuit held that Judge Garbis did not err in admitting evidence under 404(b) of the defendant's molestation of children who were not the victim subjects in the child pornography produced by the defendant. *United States v. Reigle*, 228 F. App'x 353, 356 (4th Cir. 2007). In *United States v. Foley*, 740 F.3d 1079, the Seventh Circuit affirmed the district court's admission of evidence under Rule 413 of a minor male's testimony (different from the minor victim in the charged offense) that several years earlier the defendant had sexually molested him. 740 F.3d 1079, 1087-88 (7th Cir. 2014) ("Under Rule 414, Minor Male B's testimony about his past molestation was admissible to prove Foley's propensity to produce and possess child pornography under federal law.").

Additionally, the evidence of the Defendant's conduct towards W.G. is highly relevant and probative under 404(b) to all the counts of the Superseding Indictment. First, the Defendant's conduct towards W.G. and the other student-witnesses is relevant to the Defendant's sexual attraction to minors. The striking similarity of his conduct towards Minor Victim and W.G. fits

---

[9] *See United States v. Kelly*, 510 F.3d 433 (4th Cir. 2007)

squarely within Rule 404(b)'s language – motive, intent, identity, common scheme or plan, absence of mistake, knowledge, and modus operandi.  The Defendant's conduct toward W.G. is also relevant to prove the depictions in the charged counts were taken to excite lustfulness or sexual stimulation in the Defendant.

Finally, the evidence of the Defendant's conduct towards W.G. is also admissible under a Rule 403 analysis.  When applying the Rule 403 balancing test to this type of evidence, the courts have noted that exclusion is only required in "those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence."  *Morgan v. Foretich*, 846 F.2d 941, 945 (4th Cir. 1988) (*quoting United States v. Masters*, 622 F.2d 83, 87).  Evidence of sexual assault and sexual molestation of a child always has the potential for prejudice.  That risk does not, however, automatically exclude the admissibility of the evidence, especially in a case where the charges are already focused on the production of child pornography and the sexual molestation of children.

Given the overwhelming probative value of this evidence, the similarity to the charged conduct, and the presumption in favor of admission, the probative value of this evidence is clearly not substantially outweighed by the risk of unfair prejudice, and thus, the evidence should be admitted.

**B.      Testimony that the Defendant would initiate, encourage, coerce, or entice students to run "naked laps" while they were minors.**

Evidence that the Defendant encouraged, coerced, and enticed Minor Victim and other student-witnesses to run "naked laps" is highly probative and relevant.  Under Rule 404, this evidence is not inadmissible character evidence but instead is intrinsic to the charged counts and

proves motive, intent, opportunity, preparation, plan, knowledge, absence of mistake and lack of accident.

On the Defendant's Dell Inspirion laptop, law enforcement located a video of Minor Victim running a "naked lap" around the home of one of the student-witnesses, J.S.   This video is part of the charges in Count 7, Possession of Child Pornography.

Intrinsic to this video is the testimony that the Defendant encouraged and enticed Minor Victim's friends, who were minors at the time, to run around naked in front of the Defendant.  This is relevant to show that the Defendant had the motive, intent, and knowledge to sexually exploit minors – or certainly to see naked minors – and it was not a mistake or accident of any kind that the Defendant produced videos and images of Minor Victim when he was 16 and 17 years old.

This evidence meets the multi-factor test to determine admissibility provided in *Queen*.[10] The fact that the Defendant not only sought out Minor Victim while he was still a child but sought out other children to see naked is *relevant* and *necessary* to the issue of the Defendant's knowledge that Minor Victim was a minor at the time of the charged offenses, and that the Defendant's intent was to produce sexually explicit images of a minor.   The Defendant groomed Minor Victim by normalizing nudity, and then sought out opportunities when the Defendant could coerce Minor Victim into other illegal sexual conduct.  The evidence is *reliable* in that these student-witness will testify and be subjected to cross examination.  Moreover, the Government intends to introduce a video depicting Minor Victim running naked at witness J.S.'s house that was produced by the

---

[10] 132 F.3d 991, 997 (4th Cir. 1997):  1. the evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant;  2. the act must be necessary in the sense that it is probative of an essential claim or an element of the offense; 3. the evidence is reliable; and 4. the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

Defendant.  The evidence is also *highly probative* and is not substantially outweighed by undue prejudice.

> **C.** **The Defendant's illicit contact with adolescent male students including but not limited to socializing, social media connection, and texting while serving as a teacher at Gilman**

The Defendant's repeated violation of Gilman's AUP regarding social media internet contact as well as social contact in general with students is relevant evidence and intrinsic to the charged counts.   The Government intends to call witnesses who will testify that all teachers at Gilman, including the Defendant, resigned an employee/faculty handbook in February of each year, the time when the coming school year employment contracts were offered.  The Defendant signed the handbook, which included an AUP that teachers were not to have social media contact with current students.  Several student-witnesses will testify that the Defendant was their "friend" on both Snapchat and Instagram during their time of enrollment at Gilman and that the Defendant had access to their cell phone numbers and would text them socially.

The witnesses from Gilman will testify that on more than one occasion, the Defendant was brought in for a meeting to discuss his behavior towards his students.  In essence, the Defendant was told that that he was crossing the boundary between teacher and student and that the students were not to be his "friends" in the social sense.  The Defendant was also told at least once that his physicality, his horseplay, and physical closeness to the children was off-putting to other staff members and also blurred the boundary between student and teacher.

This evidence and testimony is relevant and intrinsic to the charged counts.  The Defendant would not have been able to simply begin sexual contact or recording sexual behaviors of Minor Victim without first grooming Minor Victim and developing a trust and relationship outside of school over time.   All of the student-witnesses will testify that at the time

they were in middle school and high school, the Defendant was someone they trusted, and part of that trust existed because they were socially friends with the Defendant as well as social media friends/contact with the Defendant.

The Defendant's continued violations of his employment ground rules, while not criminal, are highly relevant, and high probative evidence in this case. Under Rules 401 and 403, this evidence should be admissible.

**D.     The Defendant's internet web pages and search history from his Google account.**

The Defendant's search and web history relating to naked boys, "naked lax bros," teen boys, and boy videos is highly relevant to the charged conduct. First, it is evidence that the Defendant had the motive and intent to sexually abuse and exploit Minor Victim, since this evidence makes it more likely that he is sexually attracted to minor boys around Minor Victim's age. Next, searching for *any* pornography or images of sex acts makes it more likely that the videos and images the Defendant produced and possessed that are the subject of Counts One through Eight were intended to elicit a sexual response. The fact that his specific interest is in pornography *of minors* appearing naked or engaged in sexually explicit conduct, or even "teens" engaged in sexually explicit conduct, is powerful evidence that is producing images of Minor Victim was intended to elicit a sexual response. The Government anticipates that the Defendant may attempt to argue that the videos and images in Counts 1 through 8 do not constitute child pornography or that the Defendant did not know the age of Minor Victim and did not intend to produce or possess images of a child.[11]   Further, the Defendant may attempt to argue that from the Defendant's perspective, the Minor Victim was of the legal age to consent to sexual conduct

---

[11] Although the Government does not have to prove that the Defendant knew the person in the visual depiction was less than eighteen years old, the Defendant may attempt to argue lack of knowledge to either nullify or mitigate his conduct.

in Maryland; therefore there was no intent to capture images of a minor but only of a consenting sexual partner.  The Defendant's seeking out and visiting web sites and images depicting "boys" and "teens" "naked lax bros," "teenboysmilk," "naked boys in public," "boys naked outdoors," and "guys running naked," is evidence the jury must hear to evaluate the purpose of his conduct.[12]

The internet Google search history is also relevant to establish that his production and possession of those videos and images was knowing.   In applying the standards in *Stamper, Queen*, and Rule 401, this evidence shows the Defendant's sexual propensity for minor children.

### CONCLUSION

Under a Rule 403 balancing assessment, the pieces of evidence and testimony described above each have a greater probative value that substantially outweighs any danger of unfair prejudice.  To avoid the risk of unfair prejudice or cumulative evidence, the Government seeks to admit only a limited amount of the universe of potential exhibits and testimony that fits within the categories set forth in Rules 414, 413 and 404(b), and that directly bear on the Defendant's intent/ knowledge for the counts of the Superseding Indictment.   The probative value of the limited evidence set forth above is especially high in a case like this that involves sexual exploitation of a

---

[12] In deciding whether videos or images are "lascivious," the analysis is not limited to four corners of photographs, but also includes surrounding circumstance.  *Courtade v. United States*, No. 2:15CR29, 2017 WL 6397105, at *7 (E.D. Va. Dec. 13, 2017), *aff'd*, 929 F.3d 186 (4th Cir. 2019), *as amended* (July 10, 2019);  *See also United States v. Barry*, 634 F. App'x 407, 415 (5th Cir. 2015) (in evaluating the defendant's images of his children's genitals, the analysis included that the defendant's computer included chat history replete with sexual references to young boys to determine that the defendant intended to elicit a sexual response in the viewer); *United States v. Steen,* 634 F.3d 822, 825 (5th Cir. 2011) (the same court relied on the lack of evidence on the defendant's computers relating to minors to determine that the images were not lascivious); *United States v. Miller*, 829 F.3d 519, 526 (7th Cir. 2016) ("Whether the image 'arouses sexual desire' is informed by the intent of the person creating the image."); *United States v. Larkin*, 629 F.3d 177 (relying on producer's having trafficked a photo at issue to a pedophile to determine that she "designed the image depicted ... to arouse"); *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011) (upholding the district court's allowance of the government to introduce evidence of molestation to support the argument that the defendant intended to create sexually provocative photographs of his daughters); *but see United States v. Frabizio*, 459 F.3d 80, 89-90 (1st Cir. 2006) (rejecting a "four corners rule" for determining the lasciviousness of a depiction, and stating that "the text of the statute itself does not require" such a rule); *United States v. Amirault*, 173 F.3d 28, 31--32 (1st Cir. 1999) ("in determining whether there is an intent to elicit a sexual response, the focus should be on the objective criteria of the photograph's design.").

child and possession of child pornography, where the Government must prove the defendant's specific intent to use a child for the purpose of producing depictions of sexually explicit conduct.

For all of the foregoing reasons, the United States respectfully requests that this Court permit the admission of this evidence at trial.

Respectfully submitted,

Erek L. Barron
United States Attorney

By: _____
    Colleen E. McGuinn
    Kim Y. Hagan
    Assistant United States Attorneys