UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Crim. No: JKB-23-278 |
| CHRISTOPHER BENDANN | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION IN LIMINE
TO ADMIT EVIDENCE PURSUANT TO RULES 414, 413, 404(b), & 401
AND AS INTRINSIC TO THE CHARGED COUNTS**

The Defendant, through undersigned counsel, hereby files this response in opposition to the Government's Motion in Limine to Admit Evidence Pursuant to Rules 414, 413, 404(b), and 401 and as Intrinsic to the Charged Counts. ECF 107. This evidence should be excluded as it is irrelevant, extrinsic to the charged offenses, and its admission will unduly and unfairly prejudice the Defendant.

ARGUMENT

**I.  Rules 413 and 414 do not apply to W.G.'s testimony**

The Government argues that Federal Rules of Evidence 413 and 414 are applicable regarding the admission of other bad acts, specifically those acts alleged by W.G. However, the Government stretches the definition of attempted sexual assault and attempted child molestation beyond their intended meaning in order to introduce propensity evidence that would be otherwise inadmissible. In order for evidence to be admissible under Rules 413 and 414

(1) The defendant must be accused of a sexual assault or child molestation;
(2) The evidence proffered must pertain to the defendant's commission of another sexual assault or child molestation; and
(3) The evidence must be relevant

*United States v. Stamper*, 106 F. App'x 833, 835 (4th Cir. 2004)(unpublished).

1

The Defendant does not contest that he is accused of a crime which meets the definition of sexual assault or child molestation as defined by Federal Rules 413 and 414.  However, the evidence prompted by the Government does not pertain to the Defendant's commission of another sexual assault or child molestation. The cases cited to by the Government in support of admission contain clear examples of prior or subsequent sexual assault or child molestation. In *United States v. Enjady*, 134 F.3d 1427, 1429 (10th Cir. 1998), the court allowed in testimony under Rule 413 related to another rape which had occurred two years earlier. In *United States v. LaCompte*, 131 F.3d 767, 768 (8th Cir. 1997), the Rule 414 the Government sought to admit was testimony from a niece who would testify that the defendant had forced her to touch his penis, and had touched her private parts while she was a minor. In *United States v. Kelly*, 510 F.3d 433, 436 (4th Cir. 2007), the court allowed the admission of a prior conviction for attempted rape of a 12-year-old. In *United States v. LeMay*, 260 F.3d 1018, 1023 (9th Cir. 2001), the evidence brought in under Rule 413 was a prior juvenile adjudication for the rape of a two-year-old and eight-month old. In *United States v. Hawpetoss*, 478 F.3d 820, 822 (7th Cir. 2007), the Government sought to introduce the testimony of two juveniles, one who testified he was assaulted twice and another who testified that the defendant had asked the juvenile to touch his genitals, and when the juvenile said no, the defendant pulled down the juvenile's pants, fondled the juvenile's genitals, and the defendant rubbed his own genitals on the juvenile's buttocks.  In *United States v. Jones*, 748 F.3d 64 (1st Cir. 2014), the Government admitted a prior conviction for aggravated sexual assault and endangering the welfare of a child. In *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006), the other acts introduced were related to unconsented to sexual penetration. In *United States v. Bentley*, 561 F.3d 803, 814 (8th Cir. 2009), the underlying Rule 414 evidence was the prior rape of two juvenile females.

In comparison to the cases cited by the Government, it is apparent that the testimony of W.G. does not fit within the confines of Rule 413 or 414. The Government argues that the alleged incident where the Defendant asked W.G. to wrestle and attempted to grab the towel off of him constitutes an attempted sexual assault. However, there is no actual evidence that the Defendant tried to touch W.G.'s genitalia, which is required for a sexual assault. In fact, it appears that no further actions were taken after the Defendant grabbed at the towel – instead the Defendant backed off from the situation entirely. This does not qualify as an attempted sexual assault under the definition provided for in Rule 413.

Further, while the allegations from W.G. that the Defendant sent messages such as "are you wearing pants?" or "show me your tummy" are definitely odd, they do not constitute an attempt to produce or receive child pornography as alleged by the Government.  Child pornography is defined as "any visual depiction including any photograph, film, video, picture or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct" which "involves the use of a minor engaging in sexually explicit conduct" 18 U.S.C. § 2256(8). A minor is defined as anyone under the age of eighteen years. 18 U.S.C. § 2256(1). Sexually explicit conduct is defined as, among other things, "lascivious exhibition of the anus, genitals, or pubic area of any person. 18 U.S.C. § 2256(2)(A)(v). Again, while asking to see anyone's tummy is odd, it simply is not pornography. Further, asking someone if they are wearing pants is a weird thing to ask, but to view that as a request for a photograph of someone's genitalia is a stretch too far.

Wherefore, the admissibility of the allegations by W.G. should be determined only by Federal Rules of Evidence 403 and 404(b).

II. **Rule 414 does not apply to Defendant's internet web pages and search history from his Google Account**

Likewise, the Government should not be permitted to admit the Defendant's internet web pages and search history from his Google Account under Rule 414, as it would be an impermissible admission of propensity evidence. While the Government provides no explanation as to how these searches fulfil the requirements of Rule 414, in order for these searches to be admissible under Rule 414, they must be an attempt to possess child pornography in order to be governed under Rule 414. The proposed web page and search history simply does not fit that bill. There is nothing illegal about searching for and viewing pornography unless it is of a minor. Nothing in the searches provided for by the Government indicates a desire to search for pornography that depicts minors. Nothing about the words "boys", "bros," or "guys" indicates a desire to see a minor or is indicative of a sexual attraction towards minors. Further, while one page that was viewed had the name "teen" in the website, there was no search for "teens" and no indication that through these searches contact was made with any under-aged teen. Finally, a simple Google search cannot be viewed as an attempt to access child pornography, given Google's serious efforts to keep child sex abuse material off of their search engines.[1] Simply stated, this is not the kind of evidence to which Rule 414 applies.

### III.     The proposed evidence is inadmissible under Rules 404(b), 403, and 401

### A.  The Law

---

[1] *See* Google, *Fighting Child Sex Abuse Online*, available at: https://protectingchildren.google/#introduction (last accessed Aug. 5, 2024). Further, there can be no real re-creation of these Google searches to see what webpages generated on what page of the search results, given that Google's algorithms and search results regularly change based on policy, time, location, language, device type, and related searches. *See* Google Search Help, *Why your Google Search results might differ from other people*, available at: https://support.google.com/websearch/answer/12412910?hl=en#:~:text=Time%20causes%20differences%20in%20results&text=For%20example%2C%20we%20regularly%20add,because%20of%20newly%20available%20content (last accessed Aug. 5, 2024)

Federal Rule of Evidence 404(b) permits the admission of extrinsic other bad acts evidence (hereinafter "404(b) evidence") against a defendant only for limited purposes and only under limited circumstances. To be admissible, the 404(b) evidence must meet two basic tests. Initially, it is required to have a form of special relevance to an issue in the case at bar, and then it must be shown not to be linked solely to the question of the defendant's character. Preliminary to this analysis, however, the proponent of the 404(b) evidence must provide the basis for the admission of the 404(b) evidence, and in ruling upon this the trial court also must make a threshold determination that the defendant actually committed the extrinsic acts as alleged through the 404(b) evidence for the evidence to be admissible. Only when these requirements of such special relevance are met can the trial court proceed to determine that the evidence can be admitted under Rule 404(b), which also requires that the evidence meet the Rule 403 balancing of probative value versus prejudicial effect.

### 1. The threshold for admission pursuant to Rule 404(b)

The Supreme Court previously has set out the general test for admissibility of 404(b) evidence in *Huddleston v. United States,* 485 U.S. 681 (1988). Rule 404(b) evidence must be "probative of a material issue other than character." 485 U.S. at 686, and also must have probative value exceeding its prejudicial effect. *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir. 1978) (en banc), *cert. denied,* 440 U.S. 920 (1979). The Fourth Circuit set out a multi-factor test for admissibility in *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). To be admitted under 404(b), other acts evidence must meet all the *Queen* factors:

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes;

(2)     The act must be necessary in the sense that it is probative of an essential claim or an element of the offense;

(3)     The evidence must be reliable; and

(4)     The evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*Queen*, 132 F.3d at 997.

The proponent of the 404(b) evidence must provide a specific basis for its admission, and the failure of the trial court to require such a showing is an abuse of discretion. *United States v. Fortenberry,* 860 F.2d 628, 633-34 & nn. 11-13 (5th Cir. 1988); *United States v. Zelinka,* 862 F.2d 92, 99 (1st Cir. 1988) (reversal for failure "to articulate any theory of admissibility;" it was not enough that government "merely parrots" language of Rule); *United States v. Jemal,* 26 F.3d 1267, 1271 (3rd Cir. 1994) (caution warranted regarding admissibility, as government's motive for introducing 404(b) evidence often mixes need for proof of the extrinsic act with desire to impugn defendant's character); *United States v. Sampson,* 980 F.2d 883, 886 (3rd Cir. 1992) (same). "That rule [404(b)] is not to be used as an excuse or a smokescreen to get other acts evidence before the jury when the Government cannot show that it is necessary to resolve a material issue in dispute." *United States v. Rivera,* 837 F.2d 906, 912-13 (3rd Cir. 1992).

2.     <u>The two mandatory requirements for the admission of the evidence</u>

Initially, it must be demonstrated that there is evidence from which it can be shown whether the extrinsic bad acts actually took place (the first determination). *Huddleston v. United States,* 485 U.S. at 1499 ("the sale of the televisions was a 'similar' act only if the televisions were stolen"); *United States v. Utter,* 97 F.3d 509, 513 (11th Cir. 1996) (in arson prosecution, prior fire not shown to be arson); *United States v. Anderson,* 933 F.2d 1261,

1271 (5th Cir. 1991) ("Anderson presented insurance reports showing that the causes of the [four previous] fires were accidental or unknown."); *United States v. Neary,* 733 F.2d 210, 216 (2d Cir. 1984) (in arson prosecution, no evidence that prior fires were "incendiary in origin"); *United States v. Shavers,* 615 F.2d 266, 271 (5th Cir. 1980) ("Furthermore, the testimony of [a witness to the prior act] cast doubt as to whether the extrinsic offense was actually committed."). In other words, the prior extrinsic act must both have taken place and must have been "bad".

Only once a prior act has been determined to be "bad" does the inquiry move on to the reliability of the evidence (the second determination). "In the Rule 404(6) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred *and* the defendant was the actor." *Huddleston v. United Slates,* 485 U.S. at 689, citing *United States v. Beechum,* 582 F.2d at 912-13 (emphasis supplied). It is not sufficient that there be "unsubstantiated innuendo" regarding a defendant's participation. *Huddleston v. United States,* 485 U.S. at 689.

### 3. Minimal probative value outweighed by immense prejudicial effect

Even when evidence passes scrutiny under Rule 404(b), it then must be analyzed for relevance under Rule 403, and must meet the further test of being shown to be specifically probative to the charged offenses while likewise not unduly prejudicial to defendant. *United States v. Gilbert,* 229 F.3d 15, 26 (1st Cir. 2000) (jury could not consider 404(b) evidence "without drawing a forbidden inference of criminal propensity"); *United States v. Merriweather,* 78 F.3d at 1077 (trial court must determine if the evidence is relevant under Rule 403); *United States v. Veltmann,* 6 F.3d 1483, 1500 (11th Cir. 1993) (Rule 403 function is to exclude matter of "scant or cumulative probative force, dragged in for the sake of its

prejudicial effect'"); *United States v. Himelwright,* 42 F.3d 777, 784 (3rd Cir. 1994) (Rule 403 analysis showed prejudice "substantially outweighed" probative value).

> [T]he more closely the extrinsic offense resembles the charged offense, the greater the prejudice to the defendant. The likelihood that the jury will convict the defendant because he is the kind of person who commits this particular type of crime or because he was not punished for the extrinsic offense increases with the increasing likeness of the offense.

*United States v. Beechum,* 582 F.2d 915 n.20.

> No matter what limiting instruction might be given, the evidence presented a high risk that the jury might nevertheless improperly infer from the occurrence of several fires that the defendant probably set the one in the indictment.

*United States v. Neary,* 733 F.2d at 217; *United States v. Anderson,* 933 F.2d at 1271-72.

Where the 404(b) evidence supports the unsubstantiated claims of government witnesses made years later, such error cannot be harmless where the evidence was by no means overwhelming and where witness credibility was crucial. *United States v. LeCompte,* 99 F.3d at 279; *United States v. Anderson,* 933 F.2d at 1271-72 (404(b) witness shown to have perjured himself). Further, it is important to consider the reliability of witness testimony, especially in the context of 404(b) evidence. *See United States v. Gilbert*, 229 F.3d at 23 (finding 404(b) evidence inadmissible when it is made up almost entirely of allegations "made by a hostile witness months after the event in question.").

### B. The testimony of W.G. should not be permitted under Rule 404(b) or 403, and is not admissible as intrinsic evidence

As argued above, Rule 413 and Rule 414's relaxed standard for propensity evidence do not apply to W.G.'s testimony and admissibility must be examined under Rule 404(b). Under *Queen,* this evidence is not necessary, as it is not probative of an essential claim of element of the offense alleged.

Further, as to the third element under *Queen*, there is serious reason to question the reliability of the testimony of W.G., as well as several of the other unidentified Gilman students referenced by the Government. On February 3, 2023, J.S., who is a close and personal friend of the alleged Minor Victim in this case, sent the following text to 17 individuals:

> Hey everyone, I know this isn't the text you wanna be getting on a Friday. But after the recent details that have come out with the Bendann situation, it's really Got me thinking about it. Whoever it was that came forward was so brave to do what they did. After discussing it with my family, I think the best way we can support this individual who came forward is if anyone who has anything on bendann to come forward. The highest support we can show to that person is to do everything we can to put him away forever. Whoever they are, they shouldn't be alone right now. We gotta do what we can to come forward so they are no longer alone. This is our duty to them. I love you guys. Take care of one another.

*See* Exhibit A. Among those on the thread were "Sophomore G****" and "D.G." While it is unclear who "Sophomore G****" is, "D.G." is the brother of W.G. D.G. reacted to the message from J.S. with a heart reaction. In that same text thread, J.S. later texts "But we gotta bury this sick fuck." Exhibit A.

Finally, under Rule 403, the minimal probative value of this testimony is far outweighed by unfair prejudice to the Defendant and a risk of confusion of the issues. This type of testimony clearly falls within the scope of Rule 404(b) evidence which the Fourth Circuit held was inadmissible in *United States v. Brizuela*, 962 F.3d 784 (4th Cir. 2020). The introduction of the anticipated testimony of W.G. would serve the same impermissible purpose as the Government's calling of four patients of the defendant in *Brizuela*. Prescriptions written to the four patients were not part of the 21 counts of the unlawful distribution charges contained in the defendant's indictment. 962 F.3d at 790. The inference from the testimony from the other patients was essentially that the defendant had gotten them hooked on oxycodone, just as two patients whose prescriptions were charged in the defendant's indictment. *Id.* at 792–93.

The Fourth Circuit held that the testimony of the four patients was not necessary to "complete the story" of the 21 charged counts for unlawful distribution as their testimony did not reference or encompass any of those counts. *Id.* at 796. The additional accounts constituted "overkill" or "piling on" by the prosecution which invited the jury "to find guilt by association" rather than determining whether sufficient evidence supported a conviction. *Id.* Allegations from W.G. related to his SnapChat activity with the Defendant and horseplay are evidence which encourages the jury to "find guilty by association."

    **C. Evidence related to alleged discipline at Gilman for violations of school policy are inadmissible under Rule 404(b) and Rule 403.**

The evidence related to alleged violations of the Gilman handbook is not admissible under Rule 404(b), as they are not "bad acts," as there was no clear violation of the Gilman handbook. The employee handbook for Gilman from the years 2016 through 2022 states:

> Employees must exercise extreme caution in connection with electronic contact with students (for example chat rooms, message boards, social networking sites and newsgroups) and must avoid inappropriate communication with students with whom they are in a position of trust.
>
> Employees must exercise extreme caution when using social networking websites such as Facebook or MySpace, even when such use occurs in their own time using their own computer. In particular,
>
> - Employees may not "friend" any currently enrolled Gilman Student without the explicit permission of the Headmaster or the Director of Communications.
> - Employees should avoid contacting any student privately via a social networking website, even for school-related purposes.
> - Employees should not allow any students to access personal information that the employee has posted on a social networking site.

Exhibit 2 at C-21. While the Government avers that the employee handbook states that teachers "were and are only permitted to have contact with students through approved means such as school email or, if absolutely necessary, text messages" ECF 107 at 8, no such policy was placed in the employee handbook until the 2022-2023 year – well after the allegations contained in this

indictment. See Exhibit 3 at A-3 to A-4. Prior to 2022, the handbook was silent as to the appropriate electronic means of contacting students. Further, it is unclear whether the handbook prohibited accepting a friend request from a student, as opposed to the teacher requesting to be a friend of the student. This is made clear by the 2022-2023 Gilman Employee Handbook, which was amended to state explicitly: "Do not initiate *or accept* social media "friend" requests from current students (of any age) or former students under the age of 18." Exhibit 3 at D-19. With regards to babysitting or house-sitting, the employee handbook at the relevant times stated "the School prohibits all active employees from babysitting for a student which they *currently* teach." Exhibit 2 at C-7.

While the content of social media contact and text messages may be relevant, that contact being "forbidden" by the school has not been established, and as such, should not be admitted. Indeed, there is no indication that the school ever reprimanded the Defendant for his social media contact or text messages with students. The probative value of this contact being allowed by the school or not is minimal, and is substantially outweighed by unfair prejudice to the Defendant. Further, it is not necessary to the case. The jury will undoubtedly be shown social media and text messages between the Defendant; and the Alleged Minor Victim, as well as other Gilman students. The jury will have the opportunity to determine the appropriateness of those messages.

Any evidence pertaining to meetings between the Defendant and administration pertaining to them advising him to stop babysitting is likewise inadmissible under Rule 404(b) as the meetings are irrelevant and not evidence of a bad act. The Defendant, whose family has been a member of the Gilman community for generations, both as students and faculty members,

babysat and housesat for families within that community to supplement his lower salary.[2] While it is admissible testimony that the Defendant, in fact, babysat and housesat for Gilman families[3], it is not admissible that he was advised to stop. The Government has provided no records besides the testimony of a school administrator from Gilman to support this claim. Further, even by the school administrator's anticipated testimony, the Defendant was asked to stop, he then told administrators he would not because it was not against the school policy, and the school neither took action to change their policy nor to discipline the Defendant. Simply stated, it appears that this proposed evidence is only relevant for purposes of minimizing Gilman's potential civil liability as a result of this case and has nothing to do with the Defendant's criminal liability.

Finally, any evidence related to the Defendant being "too close to the students physically during the school day, and that his horseplay with students was uncomfortable for his coworkers to observe" ECF 107 at 8, should not be admitted, especially through individuals who do not claim to have personally observed such conduct. Again, there is no indication that he was ever disciplined for such alleged behavior. It is minimally probative, as none of the alleged conduct in this case is alleged to have occurred on Gilman school property. Further, the evidence does not specifically pertain to the alleged Minor Victim in this case. The minimum probative value is substantially outweighed by the unfair prejudice, suggested by the Government, that the Defendant was indiscriminately grooming Gilman students for future sexual relationships.

---

[2] Defendant notes that while Gilman is a prestigious school, which charges annual tuition rate of $35,400 for middle school and $37,960 for upper school, with only around a quarter of students receiving financial assistance, for the 2021-2022 school year, his annual salary as a teacher in his fourteenth year was only $58,081, with an additional $9,066 contributed to his retirement. For reference, this base salary is less than a first-year public school teacher in Baltimore City earns.

[3] The issue of whether the Defendant babysat and housesat for students is not a contested issue. That the Defendant texted and had social media contact with the students is not a contested issue. Bringing in multiple witnesses to establish either of those two facts would be a waste of time under Rule 403.

All evidence related to whether the Defendant was violating Gilman policies is minimally probative, and is thus outweighed by the risk of substantial prejudice to the Defendant that he was indiscriminately grooming his students for future sexual relationships.

**D. The Defendant's internet web pages and search history from his Google account is inadmissible under Rule 404(b) as it pertains to searches indicating a sexual interest in men.**

The Government seeks to introduce evidence of the Defendant's search history related to men purely as propensity and character evidence, which is impermissible. As argued above, the search history does not meet the requirements of Rule 413 and Rule 414, and as such, should not be admitted. It is also inadmissible under Rule 404(b). Under *Queen*, this evidence is not relevant to an essential claim or element of the offense, but is instead offered "to establish the general character of the defendant." *Queen*, 132 F.3d at 997. The admission of these Google searches would establish only that the Defendant had a sexual interest in the male sex. The probative value of that evidence is minimal and is substantially outweighed by confusion of the issues and unfair prejudice as they have the effect of negatively portraying the Defendant as a homosexual, with a propensity to commit crimes such as the one at bar. The unfair prejudice here is a clear implication that there is a predisposition to sexually abuse under-age boys based on the Defendant's potential interest in same-sex prurient [4]. Unlike in *United States v. Wolford,* 386 F. App'x 479, 484 (5th Cir. 2010), there is no indication that images of under-aged children were ever viewed because of these search results. The question relevant to the case is not whether the

---

[4] The Government cites to *United States v. McLaurin*, 764 F.3d 372, 380 (4th Cir. 2014) for the proposition that "proving predisposition is one of the purposes for which bad-act evidence may be admissible." ECF 107 at 18.  That is misleading as applied to this case. In *McLaurin*, the Fourth Circuit was addressing whether or not 404(b) evidence was admissible for the purpose of rebutting the affirmative defense of entrapment, which requires that the Defendant show there was no predisposition to engage in the criminal conduct. *Id.* at 379.  No such affirmative defense has been raised in this case.

Defendant was attracted to members of the same sex, but whether there was inappropriate sexual activity which occurred when the alleged Minor Victim was under the age of 18 and whether such contact was filmed. While the Government contends that these are admissible to rebut potential *legally unavailable defenses* regarding consent of the alleged Minor Victim or a mistake of age defense, such evidence should not be admissible unless and until those defenses are actually raised. *See United States v. Forrest*, 429 F.3d 73, 79-80 (finding evidence of naked images of adult males relevant only after the defense raised arguments that someone else manufactured the photo album containing nude images of a minor, or alternatively, suggested that the photographs were taken for the purpose of assisting the minor in a civil lawsuit against a jail). The Defendant does not object to the other webpages proposed by the Government.

Respectfully submitted,

   /S/                                    
CHRISTOPHER C. NIETO
GARY PROCTOR
233 East Redwood Street, Suite 1000C
Baltimore, Maryland 21202
Tel: (443) 863-818
Fax: (443) 378-5723
Email: cnieto@nietolawoffice.com