December 30, 2024

Honorable James K. Bredar
United States District Court Judge
United States District Court
101 West Lombard Street, Chambers 5A
Baltimore, MD 21201

Dear Judge Bredar

My son, Christopher Bendann, will be sentenced by you on January 21, 2025. Christopher cannot undo what he has done, what reprehensible crimes that he has committed. A fair trial has determined his guilt, and he should be and will be punished. But, in fact, my son has already lost everything that he achieved and possessed: friends, family, integrity, house, reputation, career, legacy, car, honor……EVERYTHING. Yet, as harmful as his transgressions were to the victims and larger community, they do not fully define Chris as a human being. Nor do they define his character.

Chris has been a loving and dependable son since he was handed to my late, dear wife and me at BWI airport on a cold and rainy December night in 1984 in the presence of almost 50 cheering friends and family. He was 5 months old. Coming full circle, he was a great deal of help to me and his mother when she was diagnosed with Pancreatic cancer in November of 2012. Chris helped support her and me until she passed on January 4, 2013.

Although he followed his professional calling as a teacher, much of Chris' work experience was in the adult world and not working directly with younger students. At Gilman, in addition to teaching, he was the Middle School Admissions Co-Ordinator, which involved parental engagement, and he served for years on the School Alumni Board. Even in college, he took a leadership role in the admissions office, giving tours and doing student interviews. He also headed up his Senior Class gift, surpassing all previous classes annual fund drives. I bring up these ancillary school activities as they represent his comfort in the adult world and indicate that with his intelligence, education, experience and talent, he is fully capable of making a difference and being productive in the adult world absent children. But he needs to be given the time and opportunity to do so. The time and opportunity, after he finishes paying his debt to society for his crimes. Time and opportunity, when he can demonstrate that his criminal actions do not wholly define him. I am hopeful

that you will see his potential and limit his incarceration to the least, rather the most extent possible. The longer his sentence, the least amount of time he will have to demonstrate that there is more to him than what these crimes indicate. Humans are complex and complicated animals. And so is Chris. He can contribute positively to society. He has already demonstrated that.

It is striking to me that I am writing this letter in the midst of our national and personal mourning over the loss of former President Jimmy Carter. Here was a man of great intellect, talent and ambition, who achieved the highest level of his chosen profession, only to be vilified as a failure, when he left office at the end of his political career. And considered by many at that time as the worst President in U.S. history.

But we know the rest of the story. President Carter was given the good fortune of time and opportunity to re-direct himself as a man of service. His humanitarian work over the last 45 years serves is a fitting model to all of us that "it ain't over, 'til it's over". With dedication, connections and hard work, President Carter re-focused the character traits that were always present. He just found another use for them, because he was given the time to do so. While the comparison to Chris is not exact, the model is instructive. Chris will always carry his criminal failures, but I believe there is more to him than the terrible crimes he made committed, and the victims that have and will suffer, as a result. The court can provide him with the time to demonstrate the good man that he is.

Respectively

Lance Bendann



January 6, 2025

Honorable James K. Bredar, Judge
United States District Court for Maryland
101 West Lombard Street
Baltimore MD 21201

Dear Judge Bredar,

I am writing on behalf of **Christopher Bendann** who will be sentenced on January 21. I'm a friend of the family, and pastor to Chris's parents, Lance and Anne (deceased).

I've known more *of* Chris than I know him personally. Lance and Anne adopted him at about the same time that I adopted my own two children. So I can speak best to the parenting Chris has received, parenting that I believe still grounds him, no matter what demons he's been wrestling with in his adult life.

I know Chris was adopted from Korea at an early age, and that attachment disorder is common among those adoptees. While that disorder is not an excuse, it can be seen as an explanation for a child (or man) who simply cannot ever have enough love surrounding him. Repressed feelings of shame and abandonment can result in an overwhelming need for controlling "love." And I fear that's what Chris has been living in, albeit I'm not convinced he's aware of the depths of the disorder.

My own adoptive children have the same disorder. So I know how deeply ingrained it can be, and how hard parents have to work to help their children function as members of society. I was lucky with my girls; Lance and Anne were not so with Chris. But their loving parenting remains, and I'm sure Chris is still grounded in that.

I guess we all know Chris will be spending time in prison. But he's a bright, gifted, compassionate young man with years ahead of him. I'm hopeful that with guidance and therapy and some meaningful work to do while incarcerated, Chris can come out of prison a more whole human being than the broken man who went in.

I hope you can take all these things into your consideration, Your Honor, as you sentence Chris on January 21.

In gratitude & with respect,

Rev. Gloria R. Carpeneto, D.Min., Ph.D.
Co-Pastor, Living Water Inclusive Catholic Community

Hon. James K. Bredar
United States District Court for Maryland
101 West Lombard Street
Baltimore, MD 21201

Dear Judge Bredar,

My name is John Claster. I am writing this letter on behalf of Christopher Bendann as you approach the sentencing of Christopher on January 21, 2025.

I have known Christopher almost his entire life. I have known him as both a young man and an adult. I have been close to his family for over 60 years. I have witnessed Christopher in numerous situations. I had dinner frequently with the Bendann's and particularly with Christopher and his Mom (until her passing ) and his Dad. At all times, I found Christopher to be courteous, smart, caring, and generous of spirit. It was no surprise to me that Christopher chose to go into teaching. And once he went into teaching, I was fully aware of his career as I was a trustee on the Executive Committee of the Board at Gilman School. I saw Christopher frequently on campus, and I was aware that he was highly thought of as a teacher at Gilman. Students seemed to gravitate to Christopher and respected what and how he was teaching them. Christopher was truly dedicated to his craft and he was intensely interested in the success of his middle school students.

I am deeply saddened by what has transpired, but I would urge you to lean toward giving Christopher a second chance at life. I think he can be a very productive person after he has paid his price to society. Chris is very educated, extremely well read, has always been interested in imparting his knowledge to others. I think there are any number of arenas where he could make a vital contribution to society. He could be very instrumental in working in the senior community, or working with people who are interested in seeking adult education, or he could be quite helpful in consulting with city and state educators to help design better curriculums for middle and upper school students. I would urge you to not waste these talents, but allow Christopher to return to society at a time in his life when he can use his talents for the betterment of others. In the core of his soul, Christopher is a good person who made a mistake, but I would hope you can see your way clear to allowing Christopher to once again be the person he was for years when he was incredibly well thought of as an intelligent and dedicated member of the teaching profession.

With deepest respect,
John Claster

January 3, 2025

Honorable Judge James K. Bredar
United States District Court for Maryland
101 West Lombard Street
Baltimore, MD 21201

Dear Judge Bredar:

I am writing on behalf of Christopher Kenji Bendann to request consideration of leniency in the sentencing scheduled for January 21, 2025. I have known Christopher since he was three years old. Christopher attended preschool, prefirst, elementary, middle, and high school with our eldest son. Our families spent many hours together over the years at our homes, taking trips, and hosting each other for holidays and other events.

I recognize the seriousness of the offences for which Christopher was indicted and do not wish to diminish the seriousness of the offenses in any way. At the same time, I have observed Christopher demonstrating several strengths over the years. Examples include establishing respectful relationships with adults; maintaining reciprocal relationships with peers; communicating about personal feelings; listening to others' feelings; standing up for values and principles; pursuing personal interests in history and other topics; identifying with his family, schools, and college.

Christopher will need a sense of hope to make use of his strengths and contribute to his environment in a productive and meaningful way. Thank you for reading this letter and considering what has been written.

Respectfully,

Margaret Grady Kidder, Ph.D.
314 Alabama Road
Towson, MD 21204
(410) 493-8516

TO: Honorable James K. Bredar
Judge United States District Court of Maryland
101 West Lombard St
Baltimore, MD 21201

My name is Mary Catherine Savage and I have known Christopher Bendann since he arrived at BWI airport on December 5, 1984 to be adopted by our friends Anne and Lance Bendann. He was welcomed to a warm and happy home by two people who loved him in ways that devoted and caring parents would.

Throughout the years since then we have been part of Christopher's life, celebrating his July birthday as well as his December 5 "Happy Day", with his extended family of aunts, uncles and many cousins. We have followed his journey as a student through Gilman School, Skidmore College, and his many years of teaching at Gilman School.

In first grade his teacher Betsy McDonald described Chris as "the ideal first grader ".
I knew Betsy well and this is not a compliment she would offer out freely. At Skidmore he was selected to be an admissions ambassador. He was very enthusiastic about the school and his upbeat, welcoming manner was perfect for the job.

My husband and I saw Chris often during his years of teaching at Gilman. He was a hard worker and very conscientious about whatever job he undertook. In high school he worked at the Farm Store and usually was responsible for closing and taking charge of the cash register. He also worked for a company that interviewed and gave surveys on various topics. He had the energy, discipline and work ethic that was impressive to me.

Even as a Gilman student his goal was to come back and be hired as a teacher. He was thrilled to be hired, and worked hard to do a good job.

With his discipline and frugality he was able to purchase a house in Rodgers Forge and become independent from his family. He was very proud of this accomplishment, as he should have been.

Chris had many friends throughout his life, both contemporaries as well as adults like myself. He was smart, funny and intellectually interesting. I always enjoyed our conversations and hearing about what he was doing.

Chris was a leader at Gilman. He was asked to chaperone student trips both locally and abroad.

Even while incarcerated I understand some of the other prisoners have asked his advice or sought him as a spokesperson.

It seems clear he has made some mistakes, but I feel comfortable saying he could make positive contributions in the community and be a responsible citizen if given the opportunity.

Respectfully,
Mary Catherine Savage

Hon. James K. Bredar, Judge
United States District Court for Maryland
101 West Lombard Street
Baltimore, Md. 21201

Dear Judge Bredar,

I am writing to you to let you know why I believe Christopher (Chris) Bendann can make a positive contribution to society.

First, I have known Chris his entire life. I met him shortly after he arrived in the United States when he was six months old. I have seen him and talked with him on more than two or three occasions every year since then. We have talked about a wide variety of subjects, including education policy and practice, politics, history and travel. From these conversations, I know Chris has an ability to see many sides of different issues and understand different perspectives on the same issue.

Chris is a very intelligent, articulate, and hard-working young man. He has a proven track record of being an excellent teacher, someone who was interested in his subject matter, and able to communicate his interest to his students. He was also viewed as a leader by Gilman, as evidenced by the fact that he was asked to lead student trips both within the United States and abroad, and given many admissions responsibilities.

In addition, between 2020-2023 (prior to his legal troubles), I met a number of different adults in different settings who in the course of conversation mentioned that they knew Chris Bendann and told me completely unsolicited how much they liked him, respected him and thought he had much to offer. These interpersonal skills that Chris possesses, along with his intelligence and work ethic, mean to me there are a lot of different settings in which Chris could contribute to the betterment of our society. Some that come to mind immediately are teaching adults in adult education settings, or teaching people in the prison system, or helping settle disputes between people. He could also be a wonderful travel guide for adults taking guided trips in this country or in Europe.

While I understand the Court must consider what an appropriate punishment is for Chris, I believe it would be a loss to our society if we can't find a way to make use of Christopher's many talents.

Very truly yours,
Frederick G. Savage

# JOHN PHILIP MILLER

12 Beechdale Road
Baltimore, Maryland 21210

January 6, 2025

Re: Christopher Bendann

Dear Judge Bredar:

I write to you regarding the upcoming sentencing of Christopher Bendann scheduled for January 21, 2025. I have known Christopher since he joined his parents over forty years ago. Our families have been friends over many years. In fact, for approximately 15 years our families spent summer vacations together in Cooperstown NY. Our son and Christopher spent much time together during this period.

I have followed Christopher through his schooling and growth into manhood and I know that he possesses many positive skills. I have always found him to be extremely polite and respectful to all persons with whom he had any contact. Obviously, his recent conviction is a great shock to everyone who has known Christopher throughout his life.

I greatly appreciate your responsibility in sentencing to balance punishment for the criminal acts committed with the need for the victims to feel that there has been appropriate responsibility imposed for the wrongdoer's actions.

Christopher and his family have also suffered greatly for his actions. I sincerely hope that your sentence will allow Christopher to, at some point, with appropriate supervision, rejoin his family and society and to make a positive contribution to the world. I trust that this will be possible. Thank you for considering the above in your decisionmaking in this matter.

Very truly yours,

John Philip Miller

HON. JAMES K. BREDAR, JUDGE
UNITED STATES DISTRICT COURT FOR MARYLAND
101 WEST LOMBARD STREET
BALTIMORE, MD 21201

Dear Judge Bredar,

   Christopher Bendann and his parents lived two doors away from my family while Christopher was in school. I have known Christopher well since he was about eleven years old. My daughter who is the same age as Christopher became, and remains, a good friend of his. Chris was always welcome in our home. He quite often joined us for dinner. I consider him to be like a nephew.

   I have seen so very much good in Christopher! He was always ready to step in and help with anything that arose. He showed compassion, good humor, and care to my elderly mother and mother-in-law. I have seen him offer advice and suggestions to parents facing behavior or education issues with their children. Over the years so many people have told me that Christopher had helped them.

   My hope is that you can find a way for Christopher to be in a situation where he can use his many talents for good. Thank you for your consideration.

                                                      Respectfully,

                                                      Kathleen Brosi

HON. JAMES K. BREDAR, JUDGE

UNITED STATES DISTRICT COURT FOR MARYLAND

101 WEST LOMBARD STREET

BALTIMORE, MD 21201

Dear Judge Bredar,

    I have known Christopher Bendann for 30 years. We lived a few houses apart growing up and spent countless hours together throughout our middle and high school years. We went on family vacations together and to all our schools' social events at Bryn Mawr and Gilman. He is like a cousin to me and his parents were like a loving aunt and uncle. My children refer to him as Uncle Chris.

    The sorrow I and other close friends feel at not having been able to identify and stop his downward spiral is crushing. That a person we love so much and who has so much goodness and compassion in him acted to harm others so deeply is devastating.

    I still believe that many of his good qualities remain core parts of him. His gregarious nature, his generous giving disposition, and his ability to meet others' challenges with empathy have been cornerstones of his personality throughout his life.

    My hope is that he will be able to use these qualities to make a positive impact on his community. For example, he has always loved cooking and bringing people together around food (I can remember many nights from my childhood when he would excitedly discuss recipes and help my mom make dinner while I shot hoops in the driveway). I could see him using these qualities in the future to create a welcoming and supportive community kitchen that nourishes those in need and helps them build positive networks of support. I hope that he is able to continue his education while incarcerated, perhaps earning a certificate or degree in business, so that he has additional skills to make positive change.

Sincerely,

Evelyn Semenza