```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND
 2                       NORTHERN DIVISION
   _____
 3                                 )
   UNITED STATES OF AMERICA,       )
 4                                 )
          Plaintiff,               )
 5                                 )Criminal No. 23-cr-0278-JKB
   vs.                             )
 6                                 )
   CHRISTOPHER KENJI BENDANN,      )
 7                                 )
          Defendant.               )
 8 _____)

 9
            TRANSCRIPT OF PROCEEDINGS PRIOR TO JURY VOIR DIRE
10             BEFORE THE HONORABLE JAMES K. BREDAR
                  AUGUST 21, 2024 AT 11:22 a.m.
11

12 APPEARANCES:

13      ON BEHALF OF THE PLAINTIFF:
          COLLEEN E. MCGUINN, ESQUIRE
14        KIM Y. HAGAN, ESQUIRE

15      ON BEHALF OF THE DEFENDANT:
          CHRISTOPHER C. NIETO, ESQUIRE
16        GARY E. PROCTOR, ESQUIRE

17      ALSO PRESENT:
          CALISTA WALKER, FBI SPECIAL AGENT
18        VICTORIA LIU, PARALEGAL

19

20

21

22      (Computer-aided transcription of stenotype notes)

23                      Reported by:
                  Ronda J. Thomas, RMR, CRR
24                Federal Official Reporter
               101 W. Lombard Street, 4th Floor
25                Baltimore, Maryland 21201
```

 1  (9:45 a.m.)

 2          THE COURT:  Good morning.  Be seated, please.

 3      Government will call the case.

 4          MS. MCGUINN:  Good morning, Your Honor.  Assistant

 5  United Attorney Colleen McGuinn on behalf of the Government

 6  calling United States of America v. Christopher Kenji Bendann.

 7  This is Criminal Case No. JKB-23-278.

 8      Your Honor, standing to my right is my co-counsel Kim

 9  Hagan as well as Special Agent Calista Walker of the FBI.

10      Good morning, Your Honor.

11          THE COURT:  Good morning.  Is the Government ready for

12  trial?

13          MS. MCGUINN:  Yes, sir.

14          THE COURT:  Good morning, Mr. Nieto.

15          MR. NIETO:  Good morning, Your Honor.  Christopher

16  Nieto and Gary Proctor on behalf of the Defendant.

17          THE COURT:  Good morning, Counsel.  Your client is not

18  with you this morning.  I received a communication from the

19  U.S. Marshal Service that when they traveled to the Chesapeake

20  Detention Facility this morning to collect your client for

21  trial that he declined to accompany them and to come to the

22  courthouse.

23      My view is that under Rule 43 he's got to be present, at

24  least at the start of the trial.  After that, under 43(c) the

25  court has some options if a defendant is choosing to be absent

1  to grant permission for that, if it's a knowing and intelligent

2  decision to not be present.

3      But the guidance from the opinion deciding *Crosby v.*

4  *United States*, United States Supreme Court Opinion 506 U.S. 255

5  1993 is pretty clear, and that is that the language of Rule 43

6  is straightforward, and in it is the mandate that a defendant

7  must be present for trial, at least at the start.

8      Do you have thoughts or any position you want to take on

9  the record before I decide what we're going to do here?

10         MR. PROCTOR:  Your Honor, I guess I would start

11  with -- I don't know what the court is inclined to do.  My

12  request is that he not be forcibly extracted from his cell.

13  That would irreparably harm the attorney-client relationship,

14  if it isn't already.  The fact that he won't come to court

15  suggests that he does not have faith in his counsel, and I'm

16  not sure that we shouldn't be moving to withdraw at this point

17  given that.

18      There are steps the court could take short of forcibly

19  extracting my client from his cell.  I seem to recall, back in

20  the deep, dark past, I had a marshal take a cell phone into the

21  cell and put my client on the phone and the court could conduct

22  a colloquy with him and find he had knowingly waived his right

23  to be present.

24      Rule 43 says what it says, but there are a panoply of

25  cases, and I could cite you a couple I find real quick, where I

1    appear for bail, I plead not guilty, you tell me a trial is a
2    week from Monday, and then I go had to North Korea or Cuba or
3    something like that.  And they didn't have to be present for
4    the start of trial because they had voluntarily relinquished
5    their right to be there.
6        You told him two weeks ago at the trial hearing, I'll see
7    you all for trial August 21.  He's aware of this date.
8        There are also reasons inconsistent with voluntarily
9    absenting himself from proceedings that would not trigger a
10   trial in abstention.
11       Just last week, Mr. Nieto contacted the jail and asked
12   that Mr. Bendann be screened for suicidal ideation.  And if
13   he's crippled with some sort of mental health issue that's not
14   consistent with the desire to thumb his nose at these
15   proceedings.
16       **THE COURT:**  Yeah, but I don't hear counsel, and I
17   certainly haven't seen anything in the papers submitted by
18   counsel, indicating that we have some kind of competency issue.
19   And you would have filed that if you could in good faith.  I'm
20   not going to ask you that question because I'm not going to put
21   you on that spot.  But I know the process.
22       **MR. PROCTOR:**  Well, yes and no, Judge.  You can be
23   competent and nevertheless be contemplating suicide.
24       **THE COURT:**  Well, that's a different issue.  And
25   anyone who is contemplating suicide is in terrible straits and

1   I am deeply concerned about that, but the legal question is
2   whether he's competent to proceed.

3        MR. PROCTOR:  We don't have a basis to raise that.

4        THE COURT:  Exactly.  And so we have got 78 potential
5   jurors in the building ready to begin the jury selection
6   process having responded to a special juror summons for this
7   case.

8        The Government has announced that they are ready for trial
9   this morning as they were directed to be, that presumably means
10  that their witnesses are all in place and at substantial
11  expense to the Government.

12       And with many resources committed, we're prepared to start
13  this trial.

14       I am aware of the case law that has taken up different
15  circumstances that can present and cause a defendant to not be
16  present on the first day, but I think at the end of the day the
17  guidance from *Crosby* is clear, and that is that if feasible the
18  defendant should be present at this point.

19       I've been told that he failed to appear at the mustering
20  point in the jail where federal detainees are collected.  My
21  intention is to now direct the Marshal Service to send deputy
22  U.S. marshals to his cell and to deliver to him direct
23  instruction to get up, we're going.  And we'll see what evolves
24  next.

25       We're in recess subject to call.

1      My expectation is that we will next convene in the Motz

2  Ceremonial Courtroom for jury selection upon the Defendant's

3  arrival at the courthouse.

4      Recess.

5          **THE CLERK:**  All rise.  This Honorable Court now stands

6  in recess.

7      (A recess was taken from 9:50 a.m. to 11:22 a.m.)

8          **THE COURT:**  Be seated, please.

9      Government will again call the case.

10          **MS. MCGUINN:**  Your Honor, good morning.  Assistant

11  United States Attorney Colleen McGuinn on behalf of the

12  Government.  Calling United States of America v. Christopher

13  Bendann.  Criminal Case No. JKB-23-278.  Your Honor, standing

14  to my left is my co-counsel Kim Hagan, also assistant United

15  States attorney, and Special Agent Walker is here.  She just

16  left and will be returning momentarily.

17          **THE COURT:**  Thank you and good morning.

18      Mr. Nieto.

19          **MR. NIETO:**  Yes, Your Honor.  For the record,

20  Christopher Nieto and Gary Proctor on behalf of Mr. Bendann who

21  standing at the trial table with us.

22          **THE COURT:**  Good morning to you.  And good morning to

23  you, Mr. Bendann.

24      Mr. Nieto, a couple of questions.  Tell me when you were

25  appointed to represent the Defendant in this case?

          MR. PROCTOR:  I can find it.

          MR. NIETO:  It was last fall, Your Honor.

          THE COURT:  Okay.  So 10 -- nine, 10 months ago, something like that?

          MR. NIETO:  Yes, Your Honor.

          THE COURT:  When was Mr. Proctor appointed to represent the Defendant?

          MR. NIETO:  That was --

          MR. PROCTOR:  If I can have a second, Judge.  I have the docket up.  It'll just take me a second.  January 9th of this year.

          THE COURT:  Thank you.  And since last fall and since January 9th, is it a fair assumption on the court's part that you have met regularly with Mr. Bendann at the jail, Mr. Nieto?

          MR. NIETO:  Yes.

          THE COURT:  And you can answer for both you and Mr. Proctor.

          MR. NIETO:  Yes, Your Honor.

          THE COURT:  And in that time, have you had occasion to discuss with him the substance of the case that the Government has intended to present against him?

          MR. NIETO:  Yes, Your Honor.

          THE COURT:  And have you been engaged at times in the -- in plea negotiations or at least discussions about the possibility of plea negotiations?

1          **MR. NIETO:**  Yes, Your Honor.

2          **THE COURT:**  And, in fact, at one point this matter

3   proceeded to a *Lafler-Frye* hearing before another judicial

4   officer; am I right about that?

5          **MR. NIETO:**  No, Your Honor.

6          **THE COURT:**  No *Lafler* hearing yet in this case?

7          **MS. MCGUINN:**  No, Your Honor.

8          **THE COURT:**  All right.  We'll get that conducted.  I'm

9   glad I asked that question.

10      And within the last, say, two months, can you estimate for

11  me how frequently you have met with your client?

12          **MR. NIETO:**  I can say, Your Honor --

13          **THE COURT:**  This summer.

14          **MR. NIETO:**  I can say, Your Honor, between Mr. Proctor

15  and myself and our paralegal, we've been meeting with him on a

16  regular basis.

17          **THE COURT:**  Weekly?

18          **MR. NIETO:**  Approximately, Your Honor, yes.

19          **THE COURT:**  In person?

20          **MR. NIETO:**  Yes, Your Honor.

21          **THE COURT:**  Okay.  And there was a telephone call with

22  Mr. Bendann within the last two weeks that you referenced in a

23  motion that you filed with the court this morning; is that

24  correct?

25          **MR. NIETO:**  Yes, Your Honor.  My understanding the

1  Government had forwarded it to us this morning.  My sense is it
2  was from yesterday.

3          THE COURT:  Okay.  And this was a phone call between
4  whom and whom?

5          MR. NIETO:  Although they haven't identified
6  themselves, Your Honor, my sense is between Mr. Bendann and his
7  father.

8          THE COURT:  Ah, okay.  And this was brought to your
9  attention today?

10          MR. NIETO:  Yes, Your Honor.

11          THE COURT:  Okay.  Very good.  Thank you, Mr. Nieto.
12  You may be seated.

13      Good morning, Mr. Bendann.

14          THE DEFENDANT:  Good morning.

15          THE COURT:  If you wouldn't mind standing.  Let's
16  start with some very basic things.  Tell me where you are this
17  morning?

18          THE DEFENDANT:  I'm in the courthouse, federal
19  courthouse in Baltimore.

20          THE COURT:  Okay.  Why are you here today?

21          THE DEFENDANT:  Because this is jury selection at the
22  start of the trial.  And I was told by a court order this
23  morning that I had to attend jury selection.

24          THE COURT:  Okay.  And tell me what you are on trial
25  for?

**THE DEFENDANT:**  I am on trial for what is possession of child pornography and extortion of a child and cyberstalking.  Yes.

**THE COURT:**  Okay.  And speaking strictly with reference to the indictment, at what time period do the charges seem to reference?

**THE DEFENDANT:**  Ms. McGuinn has made it seem as if they're referencing 2017 and 2018, but she has been very misleading.

**THE COURT:**  Okay.  I don't want to get into that sort of thing.  I'm just trying to talk with you about the documents that have been filed in the case and what you have been exposed to.

**THE DEFENDANT:**  Oh, sure.  I've read the indictments.

**THE COURT:**  Have you read the indictments?

**THE DEFENDANT:**  Yes, I have.  Multiple times.

**THE COURT:**  Okay.  And you have previously appeared in court; is that right?

**THE DEFENDANT:**  Yes, I have.

**THE COURT:**  Those court proceedings were in relation to advisements so that you could be told what your rights were; is that right?

**THE DEFENDANT:**  That is correct.

**THE COURT:**  And was there also a hearing where certain motions were heard by the court and then ultimately decided?

1           THE DEFENDANT:  Yes, there were.

2           THE COURT:  Were you present during that proceeding?

3           THE DEFENDANT:  Yes, I was.

4           THE COURT:  Did you have any difficulty following what

5   was transpiring, understanding that you're not an attorney and

6   probably needed legal advice but in general --

7           THE DEFENDANT:  Oh, yes.  Absolutely.

8           THE COURT:  Were you tracking?

9           THE DEFENDANT:  I found it very difficult to follow.

10  I find it difficult to understand how prosecution can directly

11  lie and that can be reported as evidence.

12          THE COURT:  Okay.  But putting that aside, just the

13  more superficial elements of what's transpiring.  Did you

14  understand that the Government had filed charges against you?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Did you understand that your lawyers in

17  response to those charges had filed certain motions on your

18  behalf?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And that in those motions they were

21  attacking some of the proof that had been proffered against

22  you?

23          THE DEFENDANT:  To some degree, but not the full

24  extent that I discussed with them.

25          THE COURT:  But you did discuss with them?

1          **THE DEFENDANT:**  Yes.

2          **THE COURT:**  Tell me how you are feeling today,

3    physically?

4          **THE DEFENDANT:**  I'm physically fine.

5          **THE COURT:**  Okay.  Tell me how you are doing mentally

6    and emotionally?

7          **THE DEFENDANT:**  Mentally, emotionally stable.  I'm

8    frustrated with our judicial system as a whole, but I think

9    anybody in my position would be.  I'm disappointed with the

10   media as well for listening to the prosecution solely.  And I

11   am slightly disappointed with my legal team for not allowing me

12   to speak to the media directly, which I've requested several

13   times.

14         **THE COURT:**  Okay.  Thank you.  You may be seated.

15      What should be apparent by now is that I am conducting a

16   hearing on the motion, Mr. Nieto, that you and Mr. Proctor have

17   filed within the last hour, suggesting that your client is

18   suffering from a mental disease or defect that renders him

19   incompetent to assist in his defense and otherwise meaningfully

20   participate in this proceeding.

21      Do you wish to present any other evidence or information

22   in support of the contentions made in the motion?

23         **MR. NIETO:**  No, Your Honor.  Again, our position is

24   not that Mr. Bendann is unable to comprehend where he is and

25   what's going on and those circumstance.  Our position is more

1   the third prong to the analysis, which is, being able to

2   meaningfully assist trial counsel in this case.

3        You know, these cases can always be a challenge, but the

4   jail call that we had listened to just this morning, to me it

5   was a bit of a tipping point because it was -- it was different

6   than what I had experienced or seen firsthand or heard from

7   Mr. Proctor or from our paralegal.

8        So it gave us cause -- cause for pause because it was our

9   concern, not just today, but as the case continues,

10  Mr. Bendann's ability to assist us in this matter.  And so that

11  was the -- that was the basis for the filing.

12        THE COURT:  Well, do you believe that your client by

13  virtue of a mental disease or defect is unable to take on

14  board, understand, comprehend, process the information that

15  you're transmitting to him about the case and the advice that

16  you are conveying to him in your role as his advocate.

17        MR. NIETO:  Your Honor, I think it's the second

18  portion of that question where I think there might be an issue.

19        THE COURT:  And tell me about that?

20       I mean, we need to distinguish between the effects of a

21  mental disease or defect and, I suppose, understandable

22  distress, even resistance to the circumstances that a person is

23  in when they are the subject of a federal grand jury indictment

24  on serious charges and are proceeding to trial.  That's a very

25  difficult scenario in any case and can be expected to generate

 1  in a rational person a level of stress and distress.

 2       So I'm asking you to help the court draw a distinction

 3  between the stress and difficulty that I think all of us would

 4  find ordinarily attends to the circumstances from a mental

 5  state that's caused by disease or defect, that by a

 6  preponderance of the evidence renders a defendant incompetent

 7  to proceed.  At least a basis on which I could make even a

 8  preliminary finding and advance to the next stage of the

 9  process?

10            MR. NIETO:  And, of course, Your Honor, I'm not a

11  mental healthcare professional.  So I'm not in the best

12  position to opine as to the mental defect or issue.  I can just

13  simply report to the court my interactions and my sense of the

14  case.

15       You know, having done this for 20 years, you know, I

16  understand the inherent stresses and strains in preparing for

17  trial, not just for the attorneys, but most specifically for

18  the defendant.  It's a pressure and strain I don't think

19  anybody can truly grasp lest they've been in that position.

20       I can tell Your Honor, consistent with the statements that

21  Your Honor has heard today, Mr. Bendann, in discussing and

22  preparing for this case, not just today but throughout,

23  there's -- he seems to be stuck on certain issues and cannot

24  get past that, again as Your Honor could hear in his

25  conversation with the court.

1        Taking that in --

2            **THE COURT:**  But being stuck on an issue or flat

3    opposed to a certain proposition is by itself not evidence of

4    mental disease or defect.  It can just be a very strongly held

5    view.

6            **MR. NIETO:**  Absolutely, Your Honor.  But it could also

7    be a symptom of something else and that was the basis for the

8    filing.  You know, it was not our aim to do it sort of last

9    minute, but based on where we found ourselves this morning, the

10   unique circumstances in which we're in, we thought that it was

11   appropriate under the circumstances.  And I understand what

12   Your Honor is endeavoring to do here, and I'm trying to respond

13   as best I can.

14           **THE COURT:**  You're in an awkward spot, Mr. Nieto, and

15   I recognize that.  You're an officer of this court of good

16   reputation, longstanding good reputation.  So no disparagement

17   meant in that regard whatsoever, you have a difficult path to

18   walk.  That said, this motion didn't come at the 11th hour, it

19   came at the 11th hour and 59th minute.  Literally after the

20   Defendant was in the building and ready to be presented for his

21   trial it hit my chamber's email box.  So, the timing of it is

22   highly problematic from the court's standpoint.  The timing of

23   it reflects on the credibility that I suppose I accord it

24   without disparaging your credibility as a lawyer.  Lawyers have

25   to do things, I understand that.

1    But you've been in a relationship with Mr. Bendann for

2  almost a year, your co-counsel for most of the year.  No such

3  motion has been proffered.  And this morning in an earlier

4  hearing, I would have to check the transcript, but I'm quite

5  certain that Mr. Proctor and I had a dialogue specifically

6  about competency.  And Mr. Proctor advised me that while your

7  client, at least at that moment, was declining to leave his

8  cell and come to court, that there was no basis for contending

9  that he was incompetent.  I think I'm remembering that

10  correctly.

11          **MR. NIETO:**  I believe Your Honor is correct.  Insofar

12  as it matters, the chronology of events, Your Honor, is after

13  leaving courtroom 5A and returning to the attorney's lounge,

14  sometime thereafter, the Government had emailed us a 12-minute

15  audio recording from a jail call.

16    Mr. Proctor and I listened to that call, we discussed it.

17  He had his laptop.  We thought, under the circumstances, it was

18  appropriate to file.  We did not know -- when Mr. Bendann

19  arrived, we then received notification.  It was our

20  understanding we had filed that and then had received the

21  notification to the court insofar as that matters.

22    So again, Your Honor, there has been issues, as I think

23  Mr. Proctor had explained earlier, earlier in the day,

24  throughout this representation, throughout the pendency of this

25  case; and it was simply listening to this call between father

 1  and son where it -- it was a different tone.  It had a

 2  different feel to it.  For us, it changed the analysis so much

 3  so -- significantly enough so that we thought that it was an

 4  appropriate motion to at least put before Your Honor.

 5          THE COURT:  Well, are you prepared to put that

 6  recording into evidence?

 7          MR. NIETO:  Again, yes, Your Honor.  We have it via

 8  email.  I'm sure we could provide that to the court.

 9          THE COURT:  Well, do you offer it in support of your

10  motion?

11          MR. NIETO:  Yes, Your Honor.

12          MR. PROCTOR:  I'd be happy to email it to chambers and

13  then submit a thumb drive or whatever later that can be marked

14  as an exhibit.

15          THE COURT:  If it's in evidence, it's in evidence.

16  I'm proposing that we play it.

17      Is there an objection to that?

18          MR. PROCTOR:  No.

19          THE COURT:  Government?

20          MS. MCGUINN:  No objection to playing it.

21          THE COURT:  Do we have the IT capacity in place to

22  play the exhibit?  Where does it exist right now?  In one

23  environment, I take it it's on somebody's laptop?

24          MR. PROCTOR:  Yeah.

25          MR. NIETO:  Yes, Your Honor.

 1          **MS. MCGUINN:**  The Government doesn't have -- we didn't

 2   bring them here for jury selection, but if Your Honor requires,

 3   I do have it on my laptop upstairs.

 4          **THE COURT:**  Let's do this.  Is it on your laptop,

 5   Mr. Proctor?

 6          **MR. PROCTOR:**  Yes, sir.  If there's an HDMI cord I can

 7   plug it in.

 8          **THE COURT:**  You can approach the podium and see if the

 9   technology is set up.  We weren't planning to play exhibits

10   today obviously so the IT staff didn't set up the courtroom

11   accordingly.

12       Mr. Nieto, who do you believe we would hear on this

13   telephone call?

14          **MR. NIETO:**  I believe it would be our client

15   Mr. Bendann and his father.

16          **MR. PROCTOR:**  May I presses play, Your Honor.

17          **THE JUDGE:**  Yes.

18          **MR. PROCTOR:**  I'll see what happens.

19       (Playing phone call.)

20          **THE COURT:**  Thank you, Counsel.

21       So, Mr. Nieto, while it was difficult to hear, you know,

22   what was said with precision, and perhaps the recording

23   warrants playback through a different medium that would make

24   some of the words a little bit more clear, but based on what

25   you have heard, both here in court and when you listened to it

1  previously, what in that recording gives rise to your belief

2  that it is evidence of mental disease or defect?

3       **MR. NIETO:**  Absolutely, Your Honor.  And I can tell

4  the court that throughout the pendency of this case, the tone,

5  the pallor of that conversation is -- it's inconsistent with

6  any conversation that I've had with my client.

7       Some of the things that were said in there was that "I

8  can't do it," meaning I can't be at trial.  "Don't bother

9  coming to court.  I'm not going to last that long."

10      His father responds "I hope that's not the case."

11      And the "I'm going to pass with a clear conscience."

12      The tone is defeated.  It's indicative of the loss of the

13 will to move forward.  Obviously, there's nothing about helping

14 the legal team or participating to assist properly in the

15 defense.

16      Again, Your Honor, just in the stark shift from what I

17 have grown accustomed to understanding from my client verse

18 this particular call.  It just gave us reasonable cause,

19 respectfully, to believe that there's something amiss.  And

20 that moving forward for him to be able to assist properly in

21 the defense of this case, we felt there's a risk that's not

22 going to happen.  Ergo the filing of the motion, Your Honor.

23      **THE COURT:**  So accepting for purposes of argument the

24 inference that counsel is arguing, which is that some of the

25 references made by your client in the phone call were

1  indicative of suicidal ideation, are you able to show me how a

2  person who is, at least at a point in time on the eve of trial

3  in a very serious case and who may be having thoughts about

4  suicide, is suffering from a mental disease or defect of the

5  sort that the statute contemplates when it authorizes a court

6  to order a further study to assess whether someone is

7  competent?

8      In other words, grim as that topic is, is the mere fact

9  that someone is thinking about suicide, and that's according

10 the tape inferences that I think you are most concerned about,

11 itself evidence?  Is it evidence to a preponderance standard

12 that someone is suffering from a mental disease or defect of

13 the requisite sort?

14      **MR. NIETO:**  Your Honor, I would submit that if the

15 suicidal ideologies are adversely affecting the Defendant's

16 ability to properly assist the defense team in trial -- and

17 again, not just in the preparation, through the actual trial.

18 So desire not to show up to court, there are adverse inferences

19 that can be drawn from that.  That could be detrimental to our

20 defense.

21      If witnesses are called, if our client is not here and

22 actively participating because they are already consumed with

23 the thought that their life is going to end anyway, that, I

24 thought, warranted judicial interference.

25      **THE COURT:**  I'll hear from the Government.

1          **MS. MCGUINN:**  Thank you, Your Honor.  The Government

2   forwarded that one call to counsel because based on what

3   occurred this morning, we were curious or wondering if the

4   Defendant had made any comments last night about whether he was

5   planning to show up today.

6          Moreover, Your Honor, we anticipated that there may be

7   competency coming.  When I forwarded that call, Ms. Hagan and I

8   were taken with a couple of the parts.  I think Your Honor

9   correctly has caught on that there are certainly several

10  statements of the Defendant that show that he is, in fact,

11  competent under Rule 43 in addition to the line of questions

12  that Your Honor asked him earlier, but he makes comments of, "I

13  want to go to trial, I just don't have the energy," and he

14  makes comments of "I just want to take a few days."  As if

15  being here is an option that he could just show up at some

16  point later in the future.

17         We were also -- we were legitimately concerned that there

18  were at least some vague references to suicide or contemplation

19  of that and because counsel had mentioned that to Your Honor

20  this morning, we wanted to pass that on so that counsel could

21  do what they needed to do to inform the court or the marshals

22  or whatever needed to be done.

23         But the Government's position is that call, in addition,

24  more importantly, to everything you asked the Defendant a few

25  moments ago, including you asked him specifically emotionally

1  and mentally how is he doing.  And his expressions were

2  consistent with a person who is under stress of going to trial.

3  That is a very stressful event for any Defendant.  But he never

4  mentioned any of these suicidal to the court.  Maybe that's not

5  something he wanted to bring to Your Honor's attention.  But

6  his concerns were the illegalities or perhaps the misconduct of

7  the judicial system or myself, in particular.

8      So based on the combination of these things, the things he

9  said he just didn't want to come today, he didn't feel like

10 coming, didn't have the energy, on top of, he is actually here

11 now under your order, understood it was through an order of

12 your court, and all of the other questions that Your Honor

13 asked, under Rule 43 I don't believe we have reached anything

14 regarding competency that suggest that the Defendant is not

15 competent to stand trial here today.

16     **THE COURT:**  What about Mr. Nieto's contention that his

17 preoccupation with his fate from his perspective and perhaps

18 his thoughts about suicide, what about Mr. Nieto's contention

19 that that focus and preoccupation is precluding his

20 participation in his defense and is interfering with his

21 capacity, not choice, but capacity to assist his lawyers in the

22 defense?

23     **MS. MCGUINN:**  I would submit that, Your Honor, that

24 defendants, lawyers, prosecutors, defense lawyers, judges,

25 members who are here to try this case, all of us are

```
 1   preoccupied with all kinds of things all the time.

 2        The difference here, though, even if this Defendant is

 3   preoccupied with certain things that Mr. Nieto feels are

 4   difficult to then focus him on what they need him to focus on

 5   to assist in his defense, I -- or the Government argues the

 6   Defendant clearly understood or understands the nature of the

 7   evidence against him, has made comments to this court that

 8   he -- his belief on what certain things mean or what they don't

 9   mean.

10        So the Government's contention is while it may be

11   difficult for Mr. Nieto and Mr. Proctor to gear their client in

12   such a way that he is assisting them or focusing on the right

13   thing, that doesn't meet that standard under Rule 43 that he is

14   not competent to assist.  People are difficult.  Humans are

15   complex.  We think about a multitude of things all the time.

16   That doesn't mean he can't assist.

17        There's a difference between not willing to or not wanting

18   to versus can and can't.  Those are all different variations of

19   a word, certainly, but he is clearly able.  He's very

20   articulate.  He was able to articulate very clearly to Your

21   Honor what was going on here, what we're doing here.  His

22   thoughts on any variety of things.

23        But whether he wants to or is completely focused or wants

24   to do it the way that perhaps counsel wants to do is not the

25   same as not being able to.
```

1          **THE COURT:**  Thank you, Ms. McGuinn.

2      Mr. Bendann, I understand, but you correct me if I'm

3   wrong, you would prefer to not be here today?

4          **THE DEFENDANT:**  Yes.  And, sorry, I was advised

5   with --

6          **THE COURT:**  Just answer my questions.

7          **THE DEFENDANT:**  Sure.

8          **THE COURT:**  Is that a fair statement that you would

9   prefer to not be here today?

10         **THE DEFENDANT:**  Yes, that is correct.

11         **THE COURT:**  Okay.  And have you been able to explain

12  that to your lawyers?

13         **THE DEFENDANT:**  Yes.

14         **THE COURT:**  Today.

15         **THE DEFENDANT:**  Yes, in advance of today.

16         **THE COURT:**  And why you would prefer to not be here?

17         **THE DEFENDANT:**  Yes.  Again, in advance of today.

18         **THE COURT:**  Okay.  And is it fair to say that your

19  preference to not be here has been -- well, I don't want to go

20  that far.

21      Are you unable to understand me as I'm speaking to you

22  right now?

23         **THE DEFENDANT:**  Well, I don't necessarily understand

24  what I'm allowed to say and not allowed to say.  But I think I

25  can hear the words coming out of your mouth.

25

1              THE COURT:  All right.  Well, if I tell you that the

2    Constitution of the United States was ratified in 1789, is that

3    something that you're familiar with?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And whether you are or are not, are you

6    able to understand that that's what I'm telling you?

7              THE DEFENDANT:  That fact, yes.

8              THE COURT:  And how about that the Declaration of

9    Independence was signed on July the 4th of 1776.

10             THE DEFENDANT:  A declaration for privileged white

11   men, yes, I do know that history.

12             THE COURT:  In fact, there are some complicated

13   circumstances around the Declaration of Independence?

14             THE DEFENDANT:  Indeed there are.

15             THE COURT:  Because who exactly what declared

16   independent in that document?

17             THE DEFENDANT:  Yes.

18             THE COURT:  And was the document itself consistent

19   with the reality on the ground as we understand it 250 years

20   later.

21             THE DEFENDANT:  You've hit the ethos of my dilemma.

22             THE COURT:  So that's your dilemma about what,

23   exactly.

24             THE DEFENDANT:  We have a presumption in this country

25   of innocence until proven guilty, but that's not been the case

1    in this case.  I was determined guilty.  That's why I've been

2    on pre-detention trial.

3        Ms. McGuinn was allowed to say wild things that she's not

4    introducing into this fact to keep me detained.  That's

5    directly hampered my ability to defend myself.  Every step of

6    the way, when I tried to get access to evidence, the time when

7    I was able to make it in, I had to sit handcuffed in front of a

8    laptop.  I couldn't take notes, and I had to have my two

9    lawyers click buttons for me, and I was limited to half an

10   hour.

11       THE COURT:  And is it those circumstances that are

12   interfering with your ability to assist your lawyers in the

13   preparation of your defense?

14       THE DEFENDANT:  Yes.  It's my belief that the judicial

15   system has been directly hampering my ability to assist.  Even

16   insofar as I've been going through discovery as of last night

17   and discovering things that prosecution has been ignoring and

18   misrepresenting.  We simply don't have time to proceed with

19   that.

20       I've been asking to view that discovery since last

21   October.  I believe it was made available to us in March, and

22   I've just gotten access to it within the last two weeks.

23       Part of that is because of my detention at CDF, right, and

24   I understand the difficulties in bringing the laptop into that

25   space alone.  But, I'm sorry, pretrial detention does not

1  assume innocence before guilt.  It assumes guilt.

2      And Ms. McGuinn's very dubious statements about my level

3  of safety in the public, especially considering I already on a

4  successful home detention on a state case, it's just wild to me

5  that she's allowed to speak that way.

6          **THE COURT:**  Okay.  Thank you, Mr. Bendann.

7      The matter pending before the Court is a motion for

8  psychiatric examination for determination of mental competency

9  to stand trial.  And in that motion, the defense team has asked

10 that this trial, essentially, be suspended to permit some

11 further inquiry into this question of whether or not the

12 Defendant is competent to proceed.  To put a sharper point on

13 the issue, Mr. Nieto I think has quite clearly indicated that

14 his specific concern is whether the Defendant's current state

15 of mind is such that it precludes him from productively

16 participating in the preparation of his defense, and Mr. Nieto,

17 as he must under the statute, contends that that preclusion is

18 itself rooted in a mental disease or defect.  That's what

19 § 4241 of Title 18 of the U.S. Code requires.

20     Upon the hearing that has been conducted this morning, I

21 find that there is not sufficient evidence in this record or

22 before me now to indicate that further proceedings need be

23 undertaken to inquire as to whether the Defendant is competent

24 to proceed.

25     Based on my colloquy with the Defendant, and the overall

1  circumstances that are apparent in the record and in the court

2  this morning, the Defendant and his team have not demonstrated

3  that -- or created a colorable indication in the court's mind

4  that the Defendant is suffering from a mental disease or defect

5  rendering him mentally incompetent to the extent that he's

6  unable to understand the nature and consequences of the

7  proceeding against him or to assist properly in his defense.

8      On the contrary, I find that the Defendant mentally is

9  deeply engaged with this process and this proceeding.  And that

10 as he has engaged, he has found in himself profound objections

11 and disagreements with respect to how the Government is

12 proceeding against him.  He has disagreements, evidently, with

13 information that has been shared with him in discovery.

14     Perhaps he may have other concerns about the process to

15 which he is being subjected, but I find that it is not rooted

16 in any mental disease or defect.

17     On the contrary, the Defendant here in court is

18 demonstrating a mind that is razor sharp and quite aware of his

19 circumstances and the issues that are attendant to this

20 proceeding.

21     Accordingly, the motion, Paper Number 139, is denied.

22     Are the jurors ready?

23         THE CLERK:  Yes.

24         THE COURT:  Okay.  Let's --

25         MR. PROCTOR:  Your Honor, Mr. Bendann has indicated

1  repeatedly to consult.  That he understands his right to be

2  here but he requests to be excused.

3        **THE COURT:**  Okay.  Let us first make this finding and

4  make sure that there's no disagreement about it.  We are now

5  convened, at least as of this moment, for the purpose of

6  starting the jury trial.

7        Mr. Nieto and Mr. Proctor, apart from the motion that you

8  have presented this morning, are you ready for trial?

9        **MR. NIETO:**  Yes, Your Honor.

10        **THE COURT:**  Thank you.  The Government has already

11  indicated that it is ready to proceed.  So, accordingly, not

12  that this is a benchmark that normally is acknowledged with

13  such formality, but I find that this trial has now commenced.

14        And now we will proceed pursuant to Rule 43 of the Federal

15  Rules of Criminal Procedure.  Rule 43(c) provides, Waiving

16  Continued Presence.  1) In general.  A defendant who was

17  initially present at trial or who had pleaded guilty or nolo

18  contendere waives the right to be present under the following

19  circumstances:  (A) when the Defendant is voluntarily absent

20  after the trial has begun, regardless of whether the court

21  informed the defendant of an obligation to remain during trial.

22        Other subparagraphs of § (c) are not relevant.

23        Now I turn to Rule 43(c)(2).  Waiver's Effect.  If the

24  defendant waives the right to be present, the trial may proceed

25  to completion, including the verdict's return and sentencing,

 1  during the defendant's absence.

 2      Mr. Bendann, if you would please rise.  Under the

 3  Constitution of the United States and the rules of procedure

 4  for the trial of criminal cases in federal court, you have the

 5  absolute right to be present during all stages and elements of

 6  your trial.

 7      Do you understand that?

 8          THE DEFENDANT:  Yes, I do.

 9          THE COURT:  And you also, under Rule 43, have the

10  right to knowingly, voluntarily and intelligently decline to be

11  present during subsequent portions of your trial once you have

12  made an appearance during the trial at its commencement, which

13  is why I made such a big deal, frankly, of the fact that the

14  trial is now officially underway.

15      Were you following all that?

16          THE DEFENDANT:  Yes.  I was, Your Honor.

17          THE COURT:  And you understand how those rules seem to

18  work and apply.  You've got to be here at the start but after

19  the trial has gun, with the permission of the court, you can be

20  absent.  The court has certain obligations.  Like, I have to

21  find that you really understand this choice that you're making.

22  So that's why I'm having this colloquy with you right now.

23  I've got to make sure that you're doing this knowingly and

24  intelligently.

25      So, let me just ask you this:  Do you understand that the

 1  ordinary practice would be for you to remain present?  You're

 2  dressed in a coat and tie, you otherwise appear to be ready to

 3  proceed.  Your manner is appropriate for court.

 4       You only spoke -- you only speak when it is your turn to

 5  speak.  You're respectful here in all respects.  You appear to

 6  be here and ready to go and ready to exercise your rights and

 7  to participate fully and contest whether the Government can

 8  satisfy its burden against you.  The ordinary way to do that is

 9  to be present here in the courtroom and to confer with your

10  lawyers and to hear the evidence and to offer views privately

11  to them and share in the making of strategy and tactics and so

12  forth.  And then perhaps even electing to testify yourself at

13  some point during the trial.

14            THE DEFENDANT:  I will be doing that, Your Honor.

15            THE COURT:  I'm sorry?

16            THE DEFENDANT:  I will be doing that, Your Honor.

17            THE COURT:  Oh, okay.  So it sounds like your choice

18  today is perhaps to not be present for parts of the trial, but

19  then be present for other parts?

20            THE DEFENDANT:  That is correct, Your Honor.  One

21  thing I did agree with Ms. McGuinn when she said that that was

22  my desire.

23            THE COURT:  Okay.  So that's how you really actually

24  want to handle this?  That's how you want to proceed?

25            THE DEFENDANT:  Yes, please.

1      **THE COURT:**  Okay.  Well, I think you know what you're

2  doing.  You're certainly answering all of my questions in a

3  coherent and logical way.  And I'm watching your affect as you

4  respond to me and it's entirely appropriate to the

5  circumstances.  So I'm ready to accredit your answers in that

6  regard.

7      Here's the procedure that I would then propose to you, and

8  that is, that I would propose that we bring you back to the

9  courthouse every day of your trial.  Bring you into court each

10  morning and on the record learn whether that's a day during

11  which you elect to be present and to sit with your lawyers and

12  to participate, or whether that's a day when waive your right

13  to be present and instead elect to return to the lockup or the

14  detention facility to be asked again the next day.

15      **THE DEFENDANT:**  To be quite candid, Your Honor, part

16  of my dilemma is the indignity of coming over from CDF:  The

17  double manacles, getting shoved on a bus, woken up at 6:00.

18      I'm on the cardio diet here, that can't be observed when

19  I'm in the holding cell.  That's all part of the indignity of

20  the experience.  I know which portions of the trial that I'd

21  like to be in attendance of.

22      For example, I have extreme interest in being here to

23  directly confront the Furlongs, and do confront Will Godine,

24  Jack Stuzin, Charlotte Hoffberger, Wallace Halpert, Stacy

25  Halpert and Chris Feiss.  People that I will know.  I don't

1  particularly care about the forensics experts or the
2  Government's agents who just don't have any credibility with
3  me.

4          **THE COURT:**  Well, how about this:  Rather than subject
5  you to the indignities to which you have referenced, I would be
6  comfortable just consulting with your lawyers then on a daily
7  basis and learning from them what your wish is --

8          **MR. PROCTOR:**  Judge.

9          **THE COURT:**  Mr. Proctor.

10          **MR. PROCTOR:**  We have made a visit each evening of
11  trial with Mr. Bendann from 6:00 p.m. onwards at the jail.
12  That's already booked.  I have the confirmations.

13      If it's not too late, what I would propose is we email the
14  court after that visit, could be 7:30, could be 8:00, I don't
15  know.  It depends how long we have to talk, we have discussed
16  with Mr. Bendann in the last half an hour, he wishes to come to
17  court tomorrow or he does not wish to come to court.  And I'm
18  happy to cc: whatever marshal needs to make that happen.

19          **THE COURT:**  That's fine.  And that's an acceptable
20  procedure.  However, I want to be crystal clear about one
21  thing, and that is, the course of a trial can be unpredictable.
22  There can be an expectation that certain witnesses and certain
23  evidence is going to be presented on a particular day at a
24  particular time and then something happens.

25      I mean, look at today business, for instance.  We were

1  scheduled to begin jury selection at 9:30 this morning.  It's

2  now 10 minutes past 12:00 and that process hasn't begun because

3  there's been an unexpected development in the course of the

4  trial.  That happens.  That's the real world of trials.

5       And so I want the Defendant to understand with crystal

6  clarity that the trial is going to proceed according to its

7  natural and logical sequence and that the trial will not be

8  stopped or held up to accommodate the Defendant's choice about

9  whether to be present for a particular testimony or not for

10 other.  In other words, the failsafe is be here every day and

11 see everything that occurs and that way you can be assured that

12 you won't miss anything.

13      If you choose not to come, it's at the risk that you will

14 miss some of the detail that you just provided.  And I will

15 find that that actually is implicit in your waiver.  That's

16 implicit in your decision to not come that particular day.  I

17 want to warn you about that in advance so you're not misled.

18      You with me on that, Mr. Bendann.

19      **THE DEFENDANT:**  Just my understanding behind that is

20 that I have to trust in the good faith that Ms. McGuinn and

21 Ms. Hagan would follow through with their order of witness and

22 should they choose to do otherwise, potentially to throw me

23 off, I would miss portions that I wanted to hear?

24      **THE COURT:**  Well, were I to find that Ms. McGuinn or

25 Ms. Hagan or anybody else in the Government did not operate in

1 good faith and that they changed the order of witnesses for the

2 purpose of, quote, "throwing you off," then the Government

3 would have a problem with me because we don't permit any kind

4 of shenanigans or that sort of intentional unfairness.

5     That said, the reality of trials is that the sequence of

6 proof is often changed midstream for the reason that a witness

7 got sick, somebody missed their train, somebody has got

8 childcare issue or a problem.  Your Honor, we need to

9 substitute Dr. Jones instead of Dr. Smith.  That's fine.

10 Government counsel can cross-examine them out of order.

11 Lawyers make those kinds of accommodations of each other all of

12 the time, and I would expect that that's how the trial would

13 proceed here.

14     What's not going to be accommodated is oh, no, Mr. Bendann

15 needed to be here to hear the testimony of that particular

16 witness so, no, you can't call that witness on Thursday.  You

17 have to wait until Friday.  We're not going to make that kind

18 of accommodation.  You're waiving the right to that sort of

19 whatever we're going to call it, accommodation or stage

20 management, by virtue of a decision to not be here every day.

21 And I want that to be explicit.

22     You want to make sure you absolutely don't miss any of the

23 testimony that you want to see, then you need to be here every

24 day.  And the marshals will give you that option to be here

25 every day.

1      Do you understand?

2          THE DEFENDANT:  I do.  I still take umbrage with the

3  fact that I believe Ms. McGuinn has already acted in bad faith,

4  and so I don't have cause to believe but I understand that the

5  court is not willing to make that acknowledgement and that I

6  should be present if I expect to hear people that I want to?

7          THE COURT:  Right.  I think you've answered my

8  question.  And I think you've showed me that you understand

9  exactly what I'm talking about.  So you need to be in close

10 consultation with your lawyers on a daily basis, which

11 Mr. Proctor has just indicated he's going to facilitate.  And

12 we will see whether you arrive that morning.  And if you are

13 not here on a particular day, the court will take that as your

14 waiver of your right to be present that day and to hear the

15 testimony that's presented that day and to participate in the

16 trial that day.

17      You with me on all that?

18         THE DEFENDANT:  Yes.  I understand that.  Thank you,

19 Your Honor.

20         THE COURT:  Okay.  Very good.  I think we're on the

21 same wavelength.  All right.  In light of all that, talk with

22 your lawyers for a minute and then I'm going to ask your

23 lawyers whether you elect to be present for the remainder of

24 today.  But I'll be taking that answer from your lawyers now

25 and that's how we'll be proceeding going forward.

1    There is one more issue, Counsel, you should take up with

2  your client, and that is, your preference in how I would

3  address his absence, if he is absent, during the voir dire

4  process.

5    Ordinarily, we introduce the defendant to the jury venire,

6  ask him to stand, ask the venire if anyone knows the defendant

7  and so forth.

8    What I would do, if the Defendant elects to not be present

9  during voir dire, is to advise the jury that the Defendant has

10  elected to not be present during this portion of the trial.

11    **MR. NIETO:**  Thank you.

12    (Counsel conferring with Defendant.)

13    **THE COURT:**  Back on the record.  Mr. Nieto.

14    **MR. NIETO:**  Yes, Your Honor.  So after consulting with

15  our client, I believe he wishes to stay here until such time

16  that the marshals or the transport would be able to take him

17  back to the detention facility.  So I think he'll remain here,

18  especially for at least the first portion of the jury selection

19  so the proposed jurors would be able to see him as one of the

20  voir dire questions.

21    Later on, however, he may, if it's acceptable to the

22  court, he may ask to be excused and return back.

23    **THE COURT:**  Well, if it's during the course of the

24  court day he would be taken back to the sixth floor and then he

25  would be returned to the detention facility with anyone else

38

1  who is in custody in the courthouse today on the normal

2  courthouse run.  I mean, we're not running Uber here.

3          MR. NIETO:  No, absolutely, Your Honor.  And, again,

4  it's just that -- we spoke with the marshals not knowing when

5  that transport may happen as part of Mr. Bendann's analysis of

6  this request.  That's where we are.

7          THE COURT:  My expectation is, you know, we're here

8  for the day or we're not here for the day.  So, I mean, we're

9  going to take the lunch break now.  We're not going to start

10  picking the jury at 12:20.  We're going to take that break.

11  And then, you know, probably be back here at 1:30 or in that

12  vicinity and then we'll have an afternoon session of court.

13  Court typically ends around 5:00.

14          MR. NIETO:  Understood, Your Honor.

15          THE COURT:  Okay.  Anything else we can productively

16  address before we take a lunch break and then come back to

17  begin jury selection?

18          MS. MCGUINN:  Not from the Government, Your Honor.

19  Thank you.

20          MR. NIETO:  No, Your Honor.  Thank you.

21          MR. PROCTOR:  Your Honor, again, Mr. Bendann ask that,

22  you know, sometimes people have hearings in court this morning

23  and there's a bus going over to CDF at lunchtime.  If such a

24  thing is happening, he would like to be on it.

25          THE COURT:  I understand his request.  The Defendant

1   is remanded to the custody of the marshal.  Counsel are excused
2   until 1:30.
3        (Court in recess at 12:29 p.m.)

CERTIFICATE OF OFFICIAL REPORTER

     I, Ronda J. Thomas, Registered Merit Reporter, Certified Realtime Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

                         Dated this 19th day of March 2025.


                         _____
                              Ronda J. Thomas, RMR, CRR
                              Federal Official Reporter

USCA11 1:23-cr-00278-JKB   Document   Filed 10/21/41   Page 41

MR. NIETO: [34] 3/11
6/19 7/2 7/5 7/8 7/15 7/18
7/22 8/1 8/5 8/12 8/14 8/18
8/20 8/25 9/5 9/10 12/23
13/17 14/10 15/6 16/11
17/7 17/11 17/25 18/14
19/3 20/14 29/9 37/11
37/14 38/3 38/14 38/20
MR. PROCTOR: [15] 3/10
4/22 5/3 7/1 7/9 17/12
17/18 17/24 18/6 18/16
18/18 28/25 33/8 33/10
38/21
MS. MCGUINN: [9] 2/4
2/13 6/10 8/7 17/20 18/1
21/1 22/23 38/18
THE CLERK: [2] 6/5
28/23
THE COURT: [96]
THE DEFENDANT: [44]
THE JUDGE: [1] 18/17

**1**
10 [3] 7/3 7/3 34/2
101 [1] 1/24
11:22 [2] 1/10 6/7
11th [2] 15/18 15/19
12-minute [1] 16/14
12:00 [1] 34/2
12:20 [1] 38/10
12:29 [1] 39/3
139 [1] 28/21
1776 [1] 25/9
1789 [1] 25/2
18 [1] 27/19
1993 [1] 3/5
19th [1] 40/12
1:30 [1] 39/2
1:30 or [1] 38/11

**2**
20 [1] 14/15
2017 [1] 10/8
2018 [1] 10/8
2024 [1] 1/10
2025 [1] 40/12
21 [2] 1/10 4/7
21201 [1] 1/25
23-cr-0278-JKB [1] 1/5
250 [1] 25/19
255 [1] 3/4
278 [2] 2/7 6/13
28 [1] 40/6

**4**
4241 [1] 27/19
43 [11] 2/23 2/24 3/5 3/24
21/11 21/13 23/13 29/14
29/15 29/23 30/9
4th [2] 1/24 25/9

**5**
506 [1] 3/4
59th [1] 15/19
5:00 [1] 38/13
5A [1] 16/13

**6**
6:00 [1] 32/17
6:00 p.m [1] 33/11

**7**
753 [1] 40/7

**78 [1]** 5/4
**7:30 [1]** 33/14

**8**
**8:00 [1]** 33/14

**9**
**9:30 this [1]** 34/1
**9:45 [1]** 2/1
**9:50 [1]** 6/7
**9th [2]** 7/10 7/13

**A**
a.m [4] 1/10 2/1 6/7 6/7
ability [5] 13/10 20/16
26/5 26/12 26/15
able [11] 13/1 19/20 20/1
23/19 23/20 23/25 24/11
25/6 26/7 37/16 37/19
about [27] 5/1 7/24 8/4
10/11 13/15 13/19 16/6
19/13 20/3 20/9 20/10 21/4
22/16 22/18 22/18 23/15
25/8 25/22 27/2 28/14 29/4
33/1 33/4 33/20 34/8 34/17
36/9
above [1] 40/9
above-entitled [1] 40/9
absence [2] 30/1 37/3
absent [4] 2/25 29/19
30/20 37/3
absenting [1] 4/9
absolute [1] 30/5
absolutely [5] 11/7 15/6
19/3 35/22 38/3
abstention [1] 4/10
acceptable [2] 33/19
37/21
accepting [1] 19/23
access [2] 26/6 26/22
accommodate [1] 34/8
accommodated [1] 35/14
accommodation [2] 35/14
35/19
accommodations [1]
35/11
accompany [1] 2/21
accord [1] 15/23
according [2] 20/9 34/6
accordingly [3] 18/11
28/21 29/11
accredit [1] 32/5
accustomed [1] 19/17
acknowledged [1] 29/12
acknowledgement [1]
36/5
acted [1] 36/3
actively [1] 20/22
actual [1] 20/17
actually [3] 22/10 31/23
34/15
addition [2] 21/11 21/23
address [2] 37/3 38/16
advance [4] 14/8 24/15
24/17 34/17
adverse [1] 20/18
adversely [1] 20/15
advice but [1] 11/6
advice [2] 11/6 13/15
advise [1] 37/9
advised [2] 16/6 24/4
advisements [1] 10/21
advocate [1] 13/16
affect [1] 32/3
affecting [1] 20/15

**after [7]** 2/24 15/19 16/12
29/20 30/18 32/14 37/14
afternoon [1] 38/12
again [11] 6/9 12/23 14/24
16/22 17/7 19/16 20/17
24/17 32/14 38/3 38/12
against [7] 7/21 11/14
11/21 23/7 28/7 28/12 31/8
AGENT [3] 1/17 2/9 6/15
agents [1] 33/2
ago [3] 4/6 7/3 21/25
agree [1] 31/21
Ah [1] 9/8
aided [1] 1/22
aim [1] 5/18
all [21] 4/7 5/10 6/5 8/8
14/3 22/12 22/25 23/1 23/1
23/15 23/18 25/1 30/5
30/15 31/5 32/2 32/19
35/11 36/17 36/21 36/24
allowed [4] 24/24 24/24
26/3 27/5
allowing [1] 12/11
almost [1] 16/2
alone [1] 26/25
already [6] 3/14 20/22
27/3 29/10 33/12 36/3
also [7] 1/17 4/8 6/14
10/24 15/6 21/17 30/9
Although [1] 9/5
always [1] 37/3
am [6] 5/1 5/14 8/4 10/1
12/11 12/15
AMERICA [3] 1/3 2/6 6/12
amiss [1] 19/19
analysis [3] 13/1 17/2 38/5
announced [1] 5/8
another [1] 8/3
answer [3] 7/16 24/6
36/24
answered [1] 36/7
answering [1] 32/2
answers [1] 32/5
anticipated [1] 15/25
any [13] 3/8 11/4 12/21
13/25 19/6 21/4 22/3 22/4
23/22 28/16 33/2 35/3
35/22
anybody [3] 12/9 14/19
34/25
anyone [3] 4/25 37/6
37/25
anything [4] 4/17 22/13
34/12 38/15
anyway [1] 20/23
apart [1] 29/7
apparent [2] 12/15 28/1
appear [4] 4/1 5/19 31/2
31/5
appearance [1] 30/12
APPEARANCES [1] 1/12
appeared [1] 10/17
apply [1] 30/18
appointed [2] 6/25 7/6
approach [1] 18/8
appropriate [5] 15/11
16/18 17/4 31/3 32/4
Approximately [1] 8/18
are [44]
argues [1] 23/5
arguing [1] 19/24
argument [1] 19/23
around [2] 25/13 38/13
arrival [1] 6/3
arrive [1] 36/12

**arrived [1]** 16/19
articulate [2] 23/20 23/20
as [32] 2/9 2/9 5/9 9/7
13/16 14/12 14/24 15/13
15/24 16/12 16/21 16/22
17/14 20/8 21/14 23/25
24/21 25/19 26/16 26/16
27/17 27/23 28/10 29/5
32/3 36/13 37/19 38/5
aside [1] 11/12
ask [7] 4/20 30/25 36/22
37/6 37/6 37/22 38/21
asked [8] 4/11 8/9 21/12
21/24 21/25 22/13 27/9
32/14
asking [2] 14/2 26/20
assess [1] 20/6
assist [13] 12/19 13/2
13/10 19/14 19/20 20/16
22/21 23/5 23/14 23/16
26/12 26/15 28/7
assistant [2] 2/4 6/10 6/14
assisting [1] 23/12
assume [1] 27/1
assumes [1] 27/1
assumption [1] 7/13
assured [1] 34/11
attacking [1] 11/21
attend [1] 9/23
attendance [1] 32/21
attendant [1] 28/19
attends [1] 14/4
attention [2] 9/9 22/5
attorney [5] 2/5 3/13 6/11
6/15 11/5
attorney's [1] 16/13
attorney-client [1] 3/13
attorneys [1] 14/17
audio [1] 16/15
AUGUST [1] 1/10 4/7
August 21 [1] 4/7
authorizes [1] 20/5
available [1] 10/2
aware [3] 4/7 5/14 28/18
awkward [1] 15/14

**B**
back [8] 3/19 32/8 37/13
37/17 37/22 37/24 38/11
38/16
bad [1] 36/3
bail [1] 4/1
Baltimore [1] 1/25 9/19
based [5] 15/9 18/24 21/2
22/8 27/25
basic [1] 4/10
basis [8] 5/3 8/16 13/11
14/7 15/7 16/8 33/7 36/10
be [102]
because [12] 4/4 4/20
9/21 13/5 13/8 20/22 21/2
21/19 25/15 26/23 34/2
35/3
been [22] 5/19 7/23 8/15
10/8 10/12 10/12 11/21
14/19 16/1 16/3 16/22
24/11 24/19 25/25 26/1
26/15 26/16 26/17 26/20
27/20 28/13 34/3
before [8] 9/3 9/8 9/3
17/4 27/1 27/7 27/22 38/16
begin [3] 5/5 34/1 38/7
begun [2] 29/20 34/2
behalf [7] 1/13 1/15 2/5

2/16 6/11 6/20 11/18
being [6] 13/1 15/2 21/15
23/25 28/15 32/22
belief [3] 19/1 23/8 26/14
believe [10] 13/12 16/11
18/12 18/14 19/19 22/13
26/21 36/3 36/4 37/15
benchmark [1] 29/12
BENDANN [24] 1/6 2/6
4/12 6/13 6/20 6/23 7/14
8/22 9/6 9/13 12/24 14/21
16/1 16/18 18/15 24/2 28/6
28/25 30/2 33/11 33/16
34/18 35/14 38/21
Bendann's [2] 13/10 38/5
best [2] 14/11 15/13
between [5] 8/14 9/3 9/6
13/20 14/3 16/25 23/17
big [1] 13/5
bit [2] 13/5 18/24
board [1] 13/14
booked [1] 33/12
both [2] 7/16 18/25
bother [1] 19/8
box [1] 15/21
break [3] 38/9 38/10 38/16
BREDAR [1] 1/10
bring [4] 18/2 22/5 32/8
32/9
bringing [1] 26/24
brought [1] 9/8
building [2] 5/5 15/20
burden [1] 31/8
bus [2] 32/17 38/23
business [1] 33/25
buttons [1] 26/9

**C**
CALISTA [2] 1/17 2/9
call [18] 2/3 5/25 6/9 8/21
9/3 13/4 16/15 16/16 16/25
18/13 18/19 19/18 19/25
21/2 21/7 21/23 35/16
35/19
called [1] 20/21
calling [2] 2/6 6/12
came [1] 15/19
can [31] 4/22 5/15 7/1 7/9
7/16 8/10 8/12 8/14 11/10
11/11 13/3 13/25 14/12
14/19 14/20 15/4 15/13
17/13 18/6 18/8 19/3 20/19
23/18 24/25 30/19 31/7
33/21 33/22 34/11 35/10
38/15
can't [6] 19/8 19/8 23/16
23/18 32/18 35/16
candid [1] 32/15
cannot [1] 14/23
capacity [3] 17/21 22/21
22/22
cardio [1] 32/18
care [1] 33/1
case [25] 2/2 7/7 7/5 5/14
6/9 6/13 6/25 7/20 8/6
10/12 13/2 13/9 13/15
13/25 14/14 14/22 16/25
19/4 19/10 19/21 20/3
22/25 25/25 26/1 27/4
cases [3] 3/25 13/3 30/4
caught [1] 21/9
cause [5] 5/15 13/8 13/8
19/18 36/4
caused [1] 14/5

Case 1:23-cr-00278-JKB    Document 62    Filed 08/05/23    Page 42 of 46

**C**

**cc [1]** 33/18
**CDF [3]** 26/23 32/16 38/23
**cell [7]** 3/12 3/19 3/20 3/21 5/22 16/8 32/19
Ceremonial **[1]** 6/2
**certain [10]** 10/24 11/17 14/23 15/3 16/5 23/3 23/8 30/20 33/22 33/22
**certainly [4]** 4/17 21/9 23/19 32/2
**CERTIFICATE [1]** 39/5
**Certified [1]** 40/4
**certify [1]** 40/6
**challenge [1]** 13/3
**chamber's [1]** 15/21
**chambers [1]** 17/12
**changed [1]** 17/2 35/1 35/6
**charges [4]** 10/5 11/14 11/17 13/24
**Charlotte [1]** 32/24
**check [1]** 16/4
**Chesapeake [1]** 2/19
**child [2]** 10/2 10/2
**childcare [1]** 35/8
**choice [4]** 22/21 30/21 31/17 34/8
**choose [2]** 34/13 34/22
**choosing [1]** 2/25
**Chris [1]** 32/25
**CHRISTOPHER [6]** 1/6 1/15 2/6 2/15 6/12 6/20
**chronology [1]** 16/12
**circumstance [1]** 12/25
**circumstances [12]** 5/15 13/22 14/4 15/10 15/11 16/17 25/13 26/11 28/1 28/19 29/19 32/5
**cite [1]** 3/25
**clarity [1]** 34/6
**clear [5]** 3/5 5/17 18/24 19/11 33/20
**clearly [4]** 23/6 23/19 23/20 27/13
**click [1]** 26/9
**client [17]** 2/17 2/20 3/13 3/19 3/21 8/11 12/17 13/12 16/7 18/14 19/6 19/17 19/25 20/21 23/11 37/2 37/15
**close [1]** 36/9
**co [3]** 2/8 6/14 16/2
**co-counsel [2]** 2/8 6/14 16/2
**coat [1]** 31/2
**Code [1]** 27/19
**coherent [1]** 32/3
**collect [1]** 2/20
**collected [1]** 5/2
**COLLEEN [3]** 1/13 2/5 6/11
**colloquy [3]** 3/22 27/25 30/22
**colorable [1]** 28/3
**combination [1]** 22/8
**come [10]** 2/21 3/14 15/18 16/8 22/9 33/16 33/17 34/13 34/16 38/16
**comfortable [1]** 33/6
**coming [1]** 19/9 21/7 22/10 24/25 32/16
**commenced [1]** 29/13
**commencement [1]** 30/12

**comments [4]** 21/4 21/12 21/12 23/3
**committed [1]** 5/12
**communication [1]** 2/18
**competency [4]** 4/18 16/6 21/7 22/14 27/8
**competent [8]** 4/23 5/2 20/7 21/11 22/15 23/14 27/12 27/23
**completely [1]** 23/23
**completion [1]** 29/25
**complex [2]** 23/15
**complicated [1]** 25/12
**comprehend [2]** 12/24 13/14
**Computer [1]** 1/22
**Computer-aided [1]** 1/22
**concern [2]** 13/9 27/14
**concerned [3]** 5/1 20/10 21/17
**concerns [2]** 22/6 28/14
**conduct [1]** 3/21
**conducted [2]** 8/8 27/20
**conducting [1]** 12/15
**confer [1]** 31/9
**Conference [1]** 40/10
**conferring [1]** 37/12
**confirmations [1]** 33/12
**conformance [1]** 40/10
**confront [2]** 32/23 32/23
**conscience [1]** 19/11
**consequences [1]** 28/6
**considering [1]** 27/3
**consistent [4]** 4/14 14/20 22/2 25/18
**Constitution [2]** 25/2 30/3
**consult [1]** 29/1
**consultation [1]** 36/10
**consulting [2]** 33/6 37/14
**consumed [1]** 20/22
**contacted [2]** 4/11
**contemplates [1]** 20/5
**contemplating [4]** 4/23 4/25
**contemplation [1]** 21/18
**contendere [1]** 29/18
**contending [1]** 16/8
**contends [1]** 27/17
**contention [2]** 22/16 22/18 23/10
**contentions [1]** 12/22
**contest [1]** 31/7
**Continued [1]** 29/16
**continues [1]** 13/9
**contrary [2]** 28/8 28/17
**convene [1]** 6/1
**convened [1]** 29/5
**conversation [3]** 14/25 19/5 19/6
**conveying [1]** 13/16
**cord [1]** 18/6
**correct [7]** 8/24 10/23 16/11 24/2 24/10 31/20 40/7
**correctly [2]** 16/10 21/9
**could [14]** 3/18 3/21 3/25 4/19 10/21 14/7 14/24 15/6 17/8 20/19 21/15 21/20 33/14 33/14
**couldn't [1]** 26/8
**counsel [18]** 2/8 2/17 3/15 4/16 4/18 6/14 13/2 16/2 18/20 19/24 21/2 21/19 21/20 23/24 35/10 37/1 37/12 39/1

**country [1]** 25/24
**couple [2]** 3/25 6/24 31/8
**course [4]** 14/10 33/21 34/3 37/23
**court [50]**
**court's [3]** 7/13 15/22 28/3
**courthouse [7]** 2/22 6/3 9/18 9/19 32/9 38/1 38/2
**courtroom [4]** 6/2 16/13 18/10 31/9
**cr [1]** 1/5
**created [1]** 28/3
**credibility [3]** 15/23 15/24 33/2
**criminal [1]** 1/5 2/7 6/13 29/15 30/4
**crippled [1]** 4/13
**Crosby [2]** 3/3 5/17
**cross [1]** 35/10
**cross-examine [1]** 35/10
**CRR [2]** 1/23 40/16
**crystal [2]** 33/20 34/5
**Cuba [1]** 4/2
**curious [1]** 21/3
**current [1]** 27/14
**custody [2]** 38/1 39/1
**cyberstalking [1]** 10/3

**D**

**daily [2]** 33/6 36/10
**dark [1]** 3/20
**date [1]** 4/7
**Dated [1]** 40/12
**day [21]** 5/16 5/16 16/23 32/9 32/10 32/12 32/14 33/23 34/10 34/16 35/20 35/24 35/25 36/13 36/14 36/15 36/16 37/24 38/8 38/8 40/12
**days [1]** 21/14
**deal [1]** 30/13
**decide [1]** 3/9
**decided [1]** 10/25
**deciding [1]** 3/3
**decision [3]** 3/2 34/16 35/20
**declaration [3]** 25/8 25/10 25/13
**declared [1]** 25/15
**decline [1]** 30/10
**declined [1]** 2/21
**declining [1]** 16/7
**deep [1]** 3/20
**deeply [2]** 5/1 28/9
**defeated [1]** 19/12
**defect [12]** 12/18 13/13 13/21 14/5 14/12 15/4 19/2 20/4 20/12 27/18 28/4 28/16
**defend [1]** 26/5
**defendant [37]** 1/7 1/15 2/16 2/25 5/5 5/15 5/18 6/25 7/7 14/6 14/18 15/20 21/4 21/10 21/24 22/3 22/14 23/2 23/6 27/12 27/23 27/25 28/22 28/24 28/8 28/17 29/16 29/19 29/21 29/24 34/5 37/5 37/6 37/8 37/9 37/12 38/20
**defendant's [5]** 6/2 20/15 20/17 30/1 34/8
**defendants [2]** 22/4
**defense [13]** 12/19 19/15 19/21 20/16 20/20 22/20 22/22 22/24 23/5 26/13

27/9 27/16 28/7
**degree [1]** 11/23
**deliver [1]** 5/22
**demonstrated [1]** 28/2
**demonstrating [1]** 28/18
**denied [1]** 28/21
**depends [1]** 33/15
**deputy [1]** 5/21
**desire [3]** 4/14 20/18 31/22
**detail [1]** 34/14
**detained [1]** 26/4
**detainees [1]** 5/20
**detention [8]** 2/20 26/2 26/23 26/25 27/4 32/14 37/17 37/25
**determination [1]** 27/8
**determined [1]** 26/1
**detrimental [1]** 20/19
**development [1]** 34/3
**dialogue [1]** 16/5
**did [7]** 11/4 11/13 11/16 11/25 16/18 31/21 34/25
**didn't [7]** 4/3 15/18 18/1 18/10 22/9 22/9 22/10
**diet [1]** 32/18
**difference [2]** 23/2 23/17
**different [7]** 4/24 5/14 13/5 17/11 17/2 18/23 23/18
**difficult [1]** 11/9 11/10 13/25 15/17 18/21 23/4 23/11 23/14
**difficulties [1]** 26/14
**difficulty [1]** 11/4 14/3
**dilemma [3]** 25/21 25/22 32/16
**dire [4]** 1/9 37/3 37/9 37/20
**direct [2]** 5/21 5/22
**directed [1]** 5/9
**directly [5]** 11/10 12/12 26/5 26/15 32/23
**disagreement [1]** 29/4
**disagreements [2]** 28/11 28/12
**disappointed [2]** 12/9 12/11
**discovering [1]** 26/17
**discovery [3]** 26/16 26/20 28/13
**discuss [2]** 7/20 11/25
**discussed [1]** 11/24 16/16 33/15
**discussing [1]** 14/21
**discussions [1]** 7/24
**disease [11]** 12/18 13/13 13/21 14/5 15/4 19/2 20/4 20/12 27/18 28/4 28/16
**disparagement [1]** 15/16
**disparaging [1]** 15/24
**distinction [1]** 14/2
**distinguish [1]** 13/20
**distress [3]** 13/22 14/1
**DISTRICT [4]** 1/1 1/1 40/5 40/6
**DIVISION [1]** 1/2
**do [30]** 3/8 3/9 3/11 10/5 12/21 13/12 15/8 15/12 15/25 17/9 17/21 18/3 18/4 18/12 19/8 21/21 21/21 23/24 23/24 25/11 30/7 30/8 30/25 31/8 32/23 34/22 36/1 36/2 37/8 40/6
**docket [1]** 7/10
**document [2]** 25/16 25/18

**documents [1]** 10/11
**does [4]** 3/15 17/22 26/25 33/17
**doesn't [3]** 18/1 23/13 23/16
**doing [7]** 12/5 22/1 23/21 30/23 31/14 31/16 32/2
**don't [18]** 3/11 4/16 5/3 10/10 14/18 19/8 21/13 22/13 23/8 24/19 24/23 26/18 32/25 33/2 33/14 35/3 35/22 36/4
**done [2]** 14/15 21/22
**double [1]** 32/17
**Dr. [2]** 35/9 35/9
**Dr. Jones [1]** 35/9
**Dr. Smith [1]** 35/9
**draw [1]** 14/2
**drawn [1]** 20/19
**dressed [1]** 37/2
**drive [1]** 17/13
**dubious [1]** 27/2
**during [12]** 11/2 29/11 30/1 30/5 30/11 30/12 31/13 32/10 37/3 37/9 37/10 37/23

**E**

**each [2]** 32/9 33/10 35/11
**earlier [4]** 16/3 16/23 16/23 21/12
**Effect [1]** 29/23
**effects [1]** 13/20
**elect [3]** 32/11 32/13 36/23
**elected [1]** 37/10
**electing [1]** 31/12
**elects [1]** 37/8
**elements [2]** 11/13 30/5
**else [4]** 15/7 34/25 37/25 38/15
**email [4]** 15/21 17/8 17/12 33/13
**emailed [1]** 16/14
**emotionally [3]** 12/6 12/7 21/25
**end [2]** 5/16 20/23
**endeavoring [1]** 15/12
**ends [1]** 38/13
**energy [2]** 21/13 22/10
**engaged [1]** 7/23 28/9 28/10
**enough [1]** 17/3
**entirely [1]** 32/4
**entitled [1]** 40/9
**environment [1]** 17/23
**Ergo [1]** 19/22
**especially [2]** 27/3 37/18
**ESQUIRE [4]** 1/13 1/14 1/15 1/16
**essentially [1]** 27/10
**estimate [1]** 8/10
**ethos [1]** 25/21
**eve [1]** 20/2
**even [3]** 13/22 14/7 23/2 26/15 31/12
**evening [1]** 33/10
**event [1]** 22/3
**events [1]** 16/12
**every [6]** 26/5 32/9 34/10 35/20 35/23 35/25
**everything [2]** 21/24 34/11
**evidence [15]** 11/11 12/21 14/6 15/3 17/6 17/15 17/15 19/2 20/11 20/11 23/7 27/6 27/21 31/10 33/23

Case 1:23-...-... Document ... Filed 0.../.../23

# E

evidently [1] 2/6
evolves [1] 5/23
exactly [4] 5/4 25/15 25/23 36/9
examination [1] 27/8
examine [1] 35/10
example [1] 32/22
excused [3] 29/2 37/22 39/1
exercise [1] 31/6
exhibit [2] 17/14 17/22
exhibits [1] 18/9
exist [1] 17/22
expect [2] 35/12 36/6
expectation [3] 6/1 33/22 38/7
expected [1] 13/25
expense [1] 5/11
experience [1] 32/20
experienced [1] 13/6
experts [1] 33/1
explain [1] 24/11
explained [1] 16/23
explicit [1] 35/21
exposed [1] 10/12
expressions [1] 22/1
extent [2] 11/24 28/5
extortion [1] 10/2
extracted [1] 3/12
extracting [1] 3/19
extreme [1] 32/22

# F

facilitate [1] 36/11
facility [4] 2/20 32/14 37/17 37/25
fact [9] 3/14 8/2 20/8 21/10 25/7 25/12 26/4 30/13 36/3
failed [1] 5/19
failsafe [1] 34/10
fair [3] 7/13 24/8 24/18
faith [5] 3/15 4/19 34/20 35/1 36/3
fall [2] 7/2 7/12
familiar [1] 25/3
far [1] 24/20
fate [1] 22/17
father [4] 9/7 16/25 18/15 19/10
FBI [2] 1/17 2/9
feasible [1] 5/17
federal [7] 1/24 5/20 9/18 13/23 29/14 30/4 40/16
feel [2] 17/2 22/9
feeling [1] 12/2
feels [1] 23/3
Feiss [1] 32/25
felt [1] 19/21
few [2] 21/14 21/24
file [1] 16/18
filed [7] 4/19 8/23 10/12 11/14 11/17 12/17 16/20
filing [3] 13/11 15/8 19/22
find [12] 3/22 3/25 7/1 11/10 14/4 27/21 28/8 28/15 29/13 30/21 34/15 34/24
finding [2] 14/8 29/3
fine [3] 12/4 33/19 35/9
first [5] 5/16 29/3 37/18
firsthand [1] 13/6
flat [1] 15/2

floor [2] 1/24 37/24
focus [2] 19/23 23/4
focused [1] 23/25
focusing [1] 23/12
follow [1] 11/9 34/21
following [3] 11/4 29/18 30/15
forcibly [2] 3/12 3/18
foregoing [1] 40/7
forensics [1] 33/1
formality [1] 29/13
format [1] 40/9
forth [2] 31/12 37/7
forward [3] 19/13 19/20 36/25
forwarded [3] 9/1 21/2 21/7
found [3] 11/9 15/9 28/10
frankly [1] 30/13
frequently [1] 8/11
Friday [1] 35/17
front [1] 26/7
frustrated [1] 12/8
Frye [1] 8/3
full [1] 11/23
fully [1] 31/7
Furlongs [1] 32/23
further [3] 20/6 27/11 27/22
future [1] 21/16

# G

GARY [3] 1/16 2/16 6/20
gave [2] 13/8 19/18
gear [1] 23/11
general [2] 11/6 29/16
generate [1] 13/25
get [5] 5/23 8/8 10/10 14/24 26/6
getting [1] 32/17
give [1] 35/24
given [1] 3/17
gives [1] 19/1
glad [1] 8/9
go [4] 4/2 21/13 24/19 31/6
Godine [1] 32/23
going [24] 3/9 4/20 4/20 5/23 12/25 19/9 19/11 19/22 20/23 22/2 23/21 26/16 33/23 34/6 35/14 35/17 35/19 36/11 36/22 36/25 38/9 38/9 38/10 38/23
good [20] 2/2 2/4 2/10 2/11 2/14 2/15 2/17 4/19 6/10 6/17 6/22 6/22 9/2 9/11 9/13 9/14 15/15 15/16 34/20 35/1 36/20
got [6] 2/23 5/4 30/18 30/23 35/7 35/7
gotten [1] 26/22
Government [23] 2/3 2/5 2/11 5/8 5/11 6/9 6/12 7/20 9/1 11/14 16/14 17/19 18/1 20/25 21/1 23/5 28/11 29/10 31/7 34/25 35/2 35/10 38/18
Government's [3] 21/23 23/10 33/2
grand [1] 13/23
grant [1] 3/1
grasp [1] 14/19
grim [1] 20/8
ground [1] 25/19

grown [1] 19/17
guess [1] 3/19
guidance [2] 3/3 5/17
guilt [2] 27/1 27/1
guilty [4] 4/1 25/25 26/1 29/17
gun [1] 30/19

# H

had [25] 3/20 3/22 4/2 4/4 7/19 9/1 9/23 11/14 11/17 11/21 13/4 13/6 16/5 16/14 16/17 16/20 16/20 16/23 17/1 19/6 21/4 21/19 26/7 26/8 29/17
HAGAN [6] 1/14 2/9 6/14 21/7 34/21 34/25
half [2] 26/9 33/16
Halpert [2] 32/24 32/25
hampered [1] 26/5
hampering [1] 26/15
handcuffed [1] 26/7
handle [1] 31/24
happen [1] 19/22 33/18 38/5
happening [1] 38/5
happens [3] 18/18 33/24 34/4
happy [2] 17/12 33/18
harm [1] 3/13
has [31] 2/25 5/8 5/14 7/21 10/7 10/8 14/21 16/3 16/22 21/9 23/7 24/19 26/15 26/17 27/9 27/13 27/20 28/10 28/10 28/12 28/13 28/25 29/10 29/13 29/20 30/19 30/20 35/7 36/3 36/11 37/9
hasn't [1] 34/2
have [57]
haven't [2] 4/17 9/5
having [5] 5/6 14/15 20/3 30/22
HDMI [1] 18/6
he [46]
he'll [1] 37/9
he's [7] 2/23 4/7 4/13 5/2 23/19 28/5 36/11
health [1] 4/13
healthcare [1] 14/11
hear [11] 4/16 14/24 18/12 18/21 20/25 24/25 31/10 34/23 35/15 36/6 36/14
heard [4] 10/25 13/6 14/21 18/25
hearing [7] 4/6 8/3 8/6 10/24 12/16 16/4 27/20
hearings [1] 38/22
held [3] 15/4 34/8 40/8
help [1] 14/2
helping [1] 19/13
here [39] 3/9 6/15 9/20 15/12 18/2 18/25 20/21 21/15 22/10 22/15 22/25 23/2 23/21 23/21 24/9 24/16 24/19 28/17 29/2 30/18 31/5 31/6 31/9 32/18 32/22 34/10 35/13 35/15 35/20 35/23 35/24 36/8 37/15 37/17 38/2 38/7 38/8 38/11
Here's [1] 32/7
hereby [1] 40/6
highly [1] 15/22
him [23] 3/22 4/6 5/22 7/20 7/21 8/15 12/18 13/15 13/16 19/20 21/12 21/23 23/14 23/17 23/17 27/18 28/5 28/7 28/12 28/13 37/6 37/16 37/19
himself [2] 4/9 28/10
his [36] 3/12 3/15 3/19 3/22 4/14 5/22 9/6 12/19 13/16 14/24 15/20 16/7 16/17 18/15 19/10 22/1 22/6 22/16 22/17 22/17 22/18 22/19 22/20 22/21 23/5 23/8 23/21 27/14 27/16 28/2 28/7 28/18 29/1 37/3 38/25
history [1] 25/11
hit [2] 15/21 25/21
Hoffberger [1] 32/24
holding [1] 32/19
home [1] 27/4
Honor [66]
Honor's [1] 22/5
HONORABLE [2] 1/10 6/5
hope [1] 19/10
hour [5] 12/17 15/18 15/19 26/10 33/16
how [16] 8/11 11/10 12/2 12/5 20/1 22/1 25/8 28/11 30/17 31/23 31/24 33/4 33/15 35/12 36/25 37/2
however [2] 33/20 37/21
Humans [1] 23/14

# I

I'd [2] 17/12 32/20
I'll [4] 4/6 18/18 20/25 36/24
I'm [33] 3/15 4/19 4/20 8/8 9/18 10/11 12/4 12/7 12/9 14/2 14/10 14/11 15/12 16/4 16/9 17/8 17/16 17/19 19/11 24/2 24/24 24/24 25/6 26/25 30/22 31/15 32/3 32/5 32/18 32/19 33/17 36/9 36/22
I've [9] 5/19 10/14 12/12 19/6 26/1 26/16 26/20 26/22 30/23
ideation [2] 4/12 20/1
identified [1] 9/5
ideologies [1] 20/15
ignoring [1] 26/17
illegalities [1] 34/15
implicit [2] 34/15 34/16
importantly [1] 21/24
inclined [1] 3/11
including [2] 21/25 29/25
incompetent [4] 12/19 14/6 16/9 28/5
inconsistent [2] 4/8 19/5
Indeed [1] 25/14
Independence [2] 25/9 25/13
independent [1] 25/16
indicate [1] 27/22
indicated [4] 27/13 28/25 29/11 36/11
indicating [1] 4/18
indication [1] 28/3
indicative [2] 19/12 20/1
indictment [2] 10/5 13/23
indictments [2] 10/14 10/15
indignities [1] 33/5
indignity [2] 32/16 32/19

inference [1] 19/24
inferences [2] 20/10 20/18
inform [1] 21/21
information [3] 12/21 13/14 28/13
informed [1] 29/21
inherent [1] 14/16
initially [1] 29/17
innocence [2] 25/25 27/1
inquire [1] 27/23
inquiry [1] 27/11
insofar [1] 16/11 16/21 26/16
instance [1] 33/25
instead [2] 32/13 35/9
instruction [1] 5/23
intelligent [1] 3/1
intelligently [2] 30/10 30/24
intended [1] 7/21
intention [1] 5/21
intentional [1] 35/4
interactions [1] 14/13
interest [1] 32/22
interference [1] 20/24
interfering [2] 22/20 26/12
introduce [1] 37/5
introducing [1] 26/4
irreparably [1] 3/13
is [136]
isn't [1] 3/14
issue [9] 4/13 4/18 4/24 13/18 14/12 15/2 27/13 35/8 37/1
issues [3] 14/23 16/22 28/19
it [76]
It'll [1] 7/10
it's [17] 3/1 13/17 14/18 17/15 17/15 17/23 19/5 19/12 26/14 27/4 32/4 33/13 34/1 34/13 37/21 37/23 38/4
its [3] 10/12 31/8 34/6
itself [3] 15/3 20/11 25/18 27/18

# J

Jack [1] 32/24
jail [6] 4/11 5/20 7/14 13/4 16/15 33/11
JAMES [1] 1/10
January [2] 7/10 7/13
January 9th [2] 7/10 7/13
JKB [3] 1/5 2/7 6/13
JKB-23-278 [2] 2/7 6/13
Jones [1] 35/9
Judge [3] 4/22 7/9 33/8
judges [1] 22/24
judicial [6] 8/3 12/8 20/24 22/7 26/14 40/10
July [1] 25/9
juror [1] 5/6
jurors [3] 5/5 28/22 37/19
jury [14] 1/9 5/5 6/2 9/21 9/23 13/23 18/2 29/6 34/1 37/5 37/9 37/18 38/10 38/17
just [28] 4/11 6/15 7/10 10/11 11/12 13/4 13/9 14/12 14/17 14/22 15/4 19/16 19/18 20/17 21/13 21/14 21/15 22/9 24/6 26/22 27/4 30/25 33/2 33/6 34/14 34/19 36/11 38/4

**K**

keep [1] 26/4
KENJI [2] 1/6 2/6
KIM [3] 1/14 2/8 6/14
kind [3] 4/18 35/3 35/17
kinds [2] 23/1 35/11
know [5] 3/11 4/21 13/3 14/15 14/15 15/8 16/18 18/21 25/11 32/1 32/20 32/25 33/15 38/7 38/11 38/22
knowing [2] 3/1 38/4
knowingly [3] 3/22 30/10 30/23
knows [1] 37/6
Korea [1] 4/2

**L**

Lafler [2] 8/3 8/6
Lafler-Frye [1] 8/3
language [1] 3/5
laptop [6] 16/17 17/23 18/3 18/4 26/8 26/24
last [13] 4/11 7/2 7/12 8/10 8/22 12/17 15/8 19/9 21/4 26/16 26/20 26/22 33/16
late [1] 33/13
later [4] 17/13 21/16 25/20 37/21
law [1] 5/14
lawyer [1] 15/24
lawyers [16] 11/16 15/24 22/21 22/24 22/24 24/12 26/9 26/12 31/10 32/11 33/6 35/11 36/10 36/22 36/23 36/24
learn [1] 32/10
learning [1] 33/7
least [10] 2/24 3/7 7/24 14/7 16/17 17/4 20/2 21/18 29/5 37/18
leave [1] 16/7
leaving [1] 16/13
left [2] 6/14 6/16
legal [4] 5/1 11/6 12/11 19/14
legitimately [1] 21/17
lest [1] 14/19
let [2] 29/3 30/25
Let's [3] 9/15 18/4 28/24
level [2] 14/1 27/2
lie [1] 11/11
life [1] 20/23
light [1] 36/21
like [7] 4/3 7/4 22/9 30/20 31/17 32/21 38/24
limited [1] 26/9
line [1] 21/11
listened [3] 13/4 16/16 18/25
listening [2] 12/10 16/25
Literally [1] 15/19
little [1] 18/24
LIU [1] 1/18
lockup [1] 32/13
logical [2] 32/3 34/7
Lombard [1] 1/24
long [2] 19/9 33/15
longstanding [1] 15/16
look [1] 33/25
loss [1] 19/12
lounge [1] 16/13
lunch [2] 38/9 38/16
lunchtime [1] 38/23

**M**

made [9] 7/6 7/22 19/24 21/4 23/7 26/21 30/12 30/13 33/10
make [11] 14/7 18/23 26/7 29/3 29/4 30/2 33/18 35/11 35/17 35/22 36/5
makes [2] 21/12 21/14
making [2] 30/21 31/11
manacles [1] 32/17
management [1] 35/20
mandate [1] 3/6
manner [1] 31/3
many [1] 5/12
March [2] 26/21 40/12
marked [1] 17/13
marshal [2] 2/19 3/20 5/21 33/18 39/1
marshals [5] 5/22 21/21 35/24 37/16 38/4
MARYLAND [3] 1/1 1/25 40/6
matter [4] 8/2 13/10 27/7 40/9
matters [2] 16/12 16/21
may [11] 9/12 12/14 18/16 20/3 21/6 23/10 28/14 29/24 37/21 37/22 38/5
Maybe [1] 22/4
MCGUINN [10] 1/13 2/5 6/11 10/7 24/1 26/3 31/21 34/20 34/24 36/3
McGuinn's [1] 27/2
me [27] 4/1 6/24 7/10 8/11 9/16 9/24 12/2 12/5 12/11 13/4 13/19 16/6 20/1 24/2 24/21 26/4 26/9 27/4 27/22 30/25 32/4 33/3 34/18 34/22 35/3 36/8 36/17
mean [7] 13/20 23/8 23/9 23/16 33/25 38/2 38/8
meaning [1] 19/8
meaningfully [2] 12/19 13/2
means [1] 5/9
meant [1] 15/17
media [2] 12/10 12/12
medium [1] 18/23
meet [1] 23/13
meeting [1] 8/15
members [1] 22/25
men [1] 25/11
mental [15] 4/13 12/18 13/13 13/21 14/4 14/11 14/12 15/4 19/2 20/4 20/12 27/8 27/18 28/4 28/16
mentally [1] 12/5 12/7 22/1 28/5 28/8
mentioned [2] 21/19 22/4
mere [1] 23/12
Merit [1] 40/4
met [2] 7/14 8/11
midstream [1] 35/6
might [1] 13/18
mind [9] 9/15 27/15 28/3 28/18
minute [4] 15/9 15/19 16/14 36/22
minutes [1] 34/2
misconduct [1] 22/6
misleading [1] 10/9
misled [1] 34/17
misrepresenting [1] 26/18
miss [4] 34/12 34/14 34/23

35/22
missed [1] 35/7
moment [2] 16/7 29/5
momentarily [1] 6/16
moments [1] 21/25
Monday [1] 4/2
months [2] 7/3 8/10
more [5] 11/13 12/25 18/24 21/24 37/1
Moreover [1] 21/6
morning [32] 2/2 2/4 2/10 2/11 2/14 2/15 2/17 2/18 2/20 5/9 6/10 6/17 6/22 6/22 8/23 9/1 9/13 9/14 9/17 9/23 13/4 15/9 16/3 21/3 21/20 27/20 28/2 29/8 32/10 34/1 36/12 38/22
most [3] 14/17 16/2 20/10
motion [12] 8/23 12/16 12/22 15/18 16/3 17/14 17/10 19/22 27/7 27/9 28/21 29/7
motions [3] 10/25 11/17 11/20
Motz [1] 6/1
mouth [1] 24/25
move [1] 19/13
moving [2] 3/16 19/20
Mr. [55]
Mr. Bendann [21] 4/12 6/20 6/23 7/14 8/22 9/6 9/13 12/24 14/21 16/1 16/18 18/15 24/2 27/6 28/25 30/2 33/11 33/16 34/18 35/14 38/21
Mr. Bendann's [2] 13/10 38/5
Mr. Nieto [16] 2/14 4/11 6/18 6/24 7/14 9/11 12/16 15/14 18/12 18/21 23/3 23/11 27/13 27/16 29/7 37/13
Mr. Nieto's [1] 22/16 22/18
Mr. Proctor [14] 7/6 7/17 8/14 12/16 13/7 16/5 16/6 16/16 16/23 18/5 23/11 29/7 33/9 36/11
Ms. [11] 10/7 21/7 24/1 26/3 27/2 31/21 34/20 34/21 34/24 34/25 36/3
Ms. Hagan [3] 21/7 34/21 34/25
Ms. McGuinn [7] 10/7 24/1 26/3 31/21 34/20 34/24 36/3
Ms. McGuinn's [1] 27/2
much [1] 17/2
Multiple [1] 10/16
multitude [1] 23/15
must [2] 3/7 27/17
mustering [1] 5/19
my [36] 2/8 2/8 2/23 3/11 3/19 3/21 5/20 6/1 6/14 6/14 8/25 9/1 9/6 12/9 12/11 14/13 14/13 15/21 18/3 19/16 19/17 24/6 25/21 26/5 26/8 26/14 26/15 26/23 27/2 27/25 31/22 32/2 32/16 34/19 36/7 38/7
myself [3] 8/15 22/7 26/5

**N**

natural [1] 34/7
nature [2] 23/6 28/6
necessarily [1] 24/23

need [6] 13/20 23/4 27/22 35/8 35/23 36/9
needed [4] 11/6 21/12 21/22 35/15
needs [1] 33/18
negotiations [2] 7/24 7/25
never [1] 22/3
nevertheless [1] 4/23
next [5] 5/24 6/1 14/8 32/14
NIETO [19] 1/15 2/14 2/16 4/11 6/18 6/20 6/24 7/14 9/11 12/16 15/14 18/12 18/21 23/3 23/11 27/13 27/16 29/7 37/13
Nieto's [2] 22/16 22/18
night [2] 21/4 26/16
nine [1] 7/3
no [18] 1/5 2/7 4/22 6/13 8/5 8/6 8/7 12/23 15/16 16/2 16/8 17/18 17/20 29/4 35/14 35/16 38/3 38/20
nolo [1] 29/17
normal [1] 38/1
normally [1] 29/12
North [1] 4/2
NORTHERN [1] 1/2
nose [1] 4/14
not [73]
notes [1] 1/22 26/8
nothing [1] 19/13
notification [2] 16/19 16/21
now [16] 5/21 6/5 12/15 17/22 22/11 24/22 27/22 29/4 29/13 29/14 29/23 30/14 30/22 34/2 36/24 38/9
Number [1] 28/21

**O**

objection [2] 17/17 17/20
objections [1] 28/10
obligation [1] 29/21
obligations [1] 30/20
observed [1] 32/18
obviously [2] 18/10 19/13
occasion [1] 7/19
occurred [1] 21/3
occurs [1] 34/11
October [1] 26/21
off [2] 34/23 35/2
offer [2] 17/9 31/10
officer [2] 8/4 15/15
Official [1] 1/24 40/1 40/16
officially [1] 30/14
often [1] 35/6
oh [4] 10/14 11/7 31/17 35/14
okay [23] 9/17 7/3 8/21 9/3 9/8 9/11 9/20 9/24 10/4 10/10 10/17 11/12 12/5 12/14 24/11 24/18 27/6 28/24 29/3 31/17 31/23 32/1 36/20 38/15
once [1] 30/11
one [7] 8/2 17/22 21/2 31/20 33/20 37/1 37/19
only [2] 31/4 31/4
onwards [1] 33/11
operate [1] 34/25
opine [1] 14/12
opinion [2] 3/3 3/4
opposed [1] 15/3
option [2] 21/15 35/24

options [1] 2/25
order [7] 9/22 20/6 22/11 22/11 34/21 35/1 35/10
ordinarily [2] 14/17 31/8
ordinary [2] 31/1 31/8
other [9] 12/21 20/8 22/12 28/14 29/22 31/19 34/10 34/10 35/11
otherwise [2] 12/19 31/2 34/22
our [12] 8/15 12/8 12/23 13/25 13/7 13/8 15/8 16/19 18/14 20/19 20/21 37/9
ourselves [1] 15/9
out [2] 24/25 35/10
over [2] 32/16 38/23
overall [1] 27/25

**P**

p.m [2] 33/11 39/3
page [1] 40/9
pallor [1] 19/5
panoply [1] 3/24
Paper [1] 28/21
papers [1] 4/17
paralegal [3] 1/18 8/15 13/7
part [5] 7/13 26/23 32/15 32/19 38/5
participate [4] 12/20 31/7 32/12 36/15
participating [3] 19/14 20/22 27/16
participation [1] 22/20
particular [8] 19/18 22/7 33/23 33/24 34/9 34/16 35/15 36/13
particularly [1] 33/1
parts [3] 21/8 31/18 31/19
pass [2] 19/11 21/20
past [3] 3/20 14/24 34/2
path [1] 15/17
pause [1] 13/8
pendency [2] 16/24 19/4
pending [1] 27/7
people [4] 23/14 32/25 36/6 38/22
perhaps [7] 18/22 22/6 22/17 23/24 28/14 31/12 31/18
period [1] 10/5
permission [2] 3/1 30/19
permit [2] 27/10 35/3
person [5] 8/19 13/22 14/1 20/2 22/2
perspective [1] 22/17
phone [5] 3/20 3/21 9/3 18/19 19/25
physically [2] 12/3 12/4
picking [1] 38/10
place [2] 5/10 17/21
Plaintiff [2] 1/4 1/13
planning [2] 18/9 21/5
play [7] 17/16 17/22 18/9 18/16
playback [1] 18/23
playing [2] 17/20 18/19
plea [2] 7/24 7/25
plead [1] 4/1
pleaded [1] 29/17
please [2] 2/2 6/8 30/2 31/25
plug [1] 18/7
podium [1] 18/8
point [9] 3/16 5/18 5/20

Case 0:23-cr-00278-JKB   Document 90-1   Filed 03/20/25   Page 45 of 46

**P**

**point...** [6] 8/24 20/23 21/16 27/12 31/13
**pornography** [1] 10/2
**portion** [3] 13/18 37/10 37/18
**portions** [3] 30/11 32/20 34/23
**position** [7] 3/8 12/9 12/23 12/25 14/12 14/19 21/23
**possession** [1] 10/1
**possibility** [1] 7/25
**potential** [1] 5/4
**potentially** [1] 34/22
**practice** [1] 31/1
**pre** [1] 26/2
**pre-detention** [1] 26/2
**precision** [1] 18/22
**precludes** [1] 27/15
**precluding** [1] 22/19
**preclusion** [1] 27/17
**prefer** [3] 24/3 24/9 24/16
**preference** [2] 24/19 37/2
**preliminary** [1] 14/8
**preoccupation** [2] 22/17 22/19
**preoccupied** [2] 23/1 23/3
**preparation** [3] 20/17 26/13 27/16
**prepared** [2] 5/12 17/5
**preparing** [2] 14/16 14/22
**preponderance** [2] 14/6 20/11
**Presence** [1] 29/16
**present** [29] 1/17 2/23 3/2 3/7 3/23 4/3 5/15 5/16 5/18 7/21 11/2 12/21 29/17 29/18 29/24 30/5 30/11 31/1 31/9 31/18 31/19 32/11 32/13 34/9 36/6 36/14 36/23 37/8 37/10
**presented** [4] 15/20 29/8 33/23 36/15
**presses** [1] 18/16
**pressure** [1] 14/18
**presumably** [1] 5/9
**presumption** [2] 25/24
**pretrial** [1] 26/25
**pretty** [1] 3/5
**previously** [2] 10/17 19/1
**PRIOR** [1] 1/9
**privately** [1] 31/10
**privileged** [1] 25/10
**probably** [2] 11/6 38/11
**problem** [2] 35/3 35/8
**problematic** [1] 15/22
**procedure** [4] 29/15 30/3 32/7 33/20
**proceed** [12] 5/2 14/7 26/18 27/12 27/24 29/11 29/14 29/24 31/3 31/24 34/6 35/13
**proceeded** [1] 8/3
**proceeding** [8] 11/2 12/20 13/24 28/7 28/9 28/12 28/20 36/25
**proceedings** [6] 1/9 4/9 4/15 10/20 27/22 40/8
**process** [8] 4/21 5/6 13/14 14/9 28/9 28/14 34/2 37/3
**PROCTOR** [1] 1/16 2/16 6/20 7/6 7/17 8/14 12/16 13/7 16/5 16/6 16/16 16/23 18/5 23/11 29/7 33/9 36/11

**Q**

**question** [6] 4/20 5/1 8/9 13/18 27/11 36/8
**questions** [6] 6/24 21/11 22/12 24/6 32/2 37/20
**quick** [1] 3/25
**quite** [4] 16/4 27/13 28/18 32/15
**quote** [1] 35/2

**R**

**raise** [1] 5/3
**Rather** [1] 33/4
**ratified** [1] 25/2
**rational** [1] 14/1
**razor** [1] 28/18
**reached** [1] 22/13
**read** [2] 10/14 10/15
**ready** [11] 2/11 5/5 5/8 15/20 28/22 29/8 29/11 31/2 31/6 31/6 32/5
**real** [2] 3/25 34/4
**reality** [2] 25/19 35/5
**really** [2] 30/21 31/23
**Realtime** [1] 40/5
**reason** [1] 35/6
**reasonable** [1] 19/18
**reasons** [1] 4/8
**recall** [1] 3/19
**received** [2] 2/18 16/19 16/20
**recess** [5] 5/25 6/4 6/6 6/7 39/3
**recognize** [1] 15/15
**record** [6] 3/9 6/19 27/21 28/1 32/10 37/13
**recording** [6] 16/15 17/6 18/22 19/1
**reference** [2] 10/5 10/6
**referenced** [2] 8/22 33/5
**references** [2] 19/25 21/18
**referencing** [1] 10/8
**reflects** [1] 15/23
**regard** [2] 15/17 32/6
**regarding** [1] 22/14

**productively** [2] 27/15
**professional** [1] 14/11
**proffered** [2] 11/21 16/3
**profound** [1] 28/10
**prong** [1] 13/1
**proof** [2] 11/21 35/6
**properly** [4] 19/14 19/20 20/16 28/7
**propose** [2] 32/7 32/8 33/13
**proposed** [1] 37/19
**proposing** [1] 17/16
**proposition** [1] 15/3
**prosecution** [3] 11/10 12/10 26/17
**prosecutors** [1] 22/24
**proven** [1] 25/25
**provide** [1] 17/8
**provided** [1] 34/14
**provides** [1] 29/15
**psychiatric** [1] 27/8
**public** [1] 27/3
**purpose** [2] 29/5 35/2
**purposes** [1] 19/23
**pursuant** [2] 29/14 40/6
**put** [5] 3/21 4/20 17/4 17/5 27/12
**putting** [1] 11/12

**regardless** [1] 29/20
**Registered** [1] 40/4
**regard** [1] 8/16
**regular** [1] 8/16
**regularly** [1] 7/14
**regulations** [1] 40/10
**relation** [1] 10/20
**relationship** [2] 3/13 16/1
**relevant** [1] 29/22
**relinquished** [1] 4/4
**remain** [2] 29/21 31/1 37/17
**remainder** [1] 36/23
**remanded** [1] 39/1
**remembering** [1] 16/9
**rendering** [1] 28/5
**renders** [2] 12/18 14/6
**repeatedly** [1] 29/1
**report** [1] 14/13
**reported** [2] 1/23 11/11 40/8
**Reporter** [5] 1/24 40/1 40/4 40/5 40/16
**represent** [2] 6/25 7/7
**representation** [1] 16/24
**reputation** [2] 15/16 15/16
**request** [3] 3/12 38/6 38/25
**requested** [1] 12/12
**requests** [1] 29/2
**requires** [2] 18/2 27/19
**requisition** [1] 20/13
**resistance** [1] 13/22
**resources** [1] 5/12
**respect** [2] 28/11
**respectful** [1] 31/5
**respectfully** [1] 19/19
**respects** [1] 31/5
**respond** [2] 15/12 32/4
**responded** [1] 5/6
**responds** [1] 19/10
**response** [1] 11/17
**return** [3] 29/25 32/13 37/22
**returned** [1] 37/25
**returning** [2] 6/16 16/13
**right** [23] 2/8 3/22 4/5 8/4 8/8 10/18 10/22 17/22 23/12 24/22 25/1 26/23 29/1 29/18 29/24 30/5 30/10 30/22 32/12 35/18 36/7 36/14 36/21
**rights** [2] 10/21 31/6
**rise** [2] 6/5 19/1 30/2
**risk** [2] 19/21 34/13
**RMR** [2] 1/23 40/16
**role** [1] 13/16
**Ronda** [3] 1/23 40/4 40/16
**rooted** [2] 27/18 28/15
**Rule** [10] 2/23 3/5 3/24 21/11 22/13 23/13 29/14 29/15 29/23 30/9
**rules** [3] 29/15 30/3 30/17
**run** [1] 38/2
**running** [1] 38/2

**S**

**safety** [1] 27/3
**said** [6] 15/18 18/22 19/7 22/9 31/21 35/5
**same** [2] 23/25 36/21
**satisfy** [1] 31/8
**say** [7] 8/10 8/12 8/14 24/18 24/24 24/24 26/3
**says** [2] 3/24 3/24
**scenario** [1] 13/25

**scheduled** [1] 34/1
**screened** [1] 4/12
**seated** [2] 2/2 6/3 9/12 12/14
**second** [2] 7/9 7/10 13/17
**see** [8] 4/6 5/23 18/8 18/18 34/11 35/23 36/12 37/19
**seem** [4] 3/19 10/6 10/7 30/17
**seems** [1] 14/23
**seen** [2] 4/17 13/6
**selection** [8] 5/5 6/2 9/21 9/23 18/2 34/1 37/18 38/17
**send** [1] 5/21
**sense** [3] 9/1 9/6 14/13
**sentencing** [1] 29/25
**sequence** [2] 34/7 35/5
**serious** [2] 13/24 20/3
**Service** [2] 2/19 5/21
**session** [1] 38/12
**set** [2] 18/9 18/10
**several** [2] 12/12 21/9
**share** [1] 31/11
**shared** [1] 28/13
**sharp** [1] 28/18
**sharper** [1] 27/12
**she** [6] 6/15 10/8 31/21
**she's** [2] 26/3 27/5
**shenanigans** [1] 35/4
**shift** [1] 19/16
**short** [1] 3/18
**should** [5] 5/18 12/15 34/22 36/6 37/1
**shouldn't** [1] 3/16
**shoved** [1] 32/17
**show** [5] 20/1 20/18 21/5 21/10 21/15
**showed** [1] 36/8
**sick** [1] 35/7
**signed** [1] 25/9
**significantly** [1] 17/3
**simply** [5] 14/13 16/25 26/18
**since** [2] 7/12 7/12 26/20
**sir** [2] 2/13 18/6
**sit** [2] 26/7 32/11
**sixth** [1] 37/24
**slightly** [1] 12/11
**Smith** [1] 35/9
**so** [38] 5/4 7/3 10/21 13/8 13/10 14/2 14/11 15/16 15/21 16/22 17/2 17/3 17/3 18/10 18/21 19/23 20/18 21/20 22/8 23/10 25/22 29/11 30/22 30/25 30/5 31/1 31/17 31/23 32/5 34/5 34/17 35/16 34/6 36/9 37/7 37/14 37/17 37/19 38/8
**solely** [1] 12/10
**some** [15] 2/25 4/13 4/18 9/16 11/21 11/23 18/24 19/7 19/24 21/15 21/18 21/25 25/22 27/10 31/13 34/14
**somebody** [2] 35/7 35/7
**somebody's** [1] 17/23
**someone** [3] 20/6 20/9 20/12
**something** [7] 4/3 7/4 15/7 19/19 22/5 25/3 33/24
**sometime** [1] 16/14
**sometimes** [1] 38/22
**son** [1] 17/1
**sorry** [3] 4/4 26/25 31/15
**sort** [4] 4/13 10/10 15/8 20/5 20/13 35/4 35/18

**sounds** [1] 31/17
**space** [1] 26/25
**space** [1] 26/25
**speak** [4] 12/12 27/5 31/4 31/5
**speaking** [2] 10/4 24/21
**special** [4] 1/17 2/9 5/6 6/15
**specific** [1] 27/14
**specifically** [3] 14/17 16/5 21/25
**spoke** [2] 31/4 38/4
**spot** [2] 4/21 15/14
**stable** [1] 27/5
**Stacy** [1] 32/24
**staff** [1] 18/10
**stage** [2] 14/8 35/19
**stages** [1] 30/5
**stand** [3] 22/15 27/9 37/6
**standard** [2] 20/11 23/13
**standing** [4] 2/8 6/13 6/21 9/15
**standpoint** [1] 15/22
**stands** [1] 6/5
**stark** [1] 28/18
**start** [9] 2/24 3/7 3/10 4/4 5/12 9/16 9/22 30/18 38/9
**starting** [1] 29/6
**state** [3] 14/5 27/4 27/14
**statement** [1] 24/8
**statements** [3] 14/20 21/10 27/2
**STATES** [12] 1/1 1/3 2/6 3/4 3/4 6/11 6/12 6/15 25/2 30/3 40/5 40/11
**statute** [2] 20/5 27/17
**stay** [1] 37/15
**stenographically** [1] 40/8
**stenotype** [1] 1/22
**step** [1] 26/5
**steps** [1] 3/19
**still** [1] 36/2
**stopped** [1] 34/8
**straightforward** [1] 3/6
**strain** [1] 14/18
**strains** [1] 14/16
**straits** [1] 4/25
**strategy** [1] 31/11
**Street** [1] 1/24
**stress** [3] 14/1 14/3 22/2
**stresses** [1] 14/16
**stressful** [1] 22/3
**strictly** [1] 10/4
**strongly** [1] 15/4
**stuck** [2] 14/23 15/2
**study** [1] 20/6
**Stuzin** [1] 32/24
**subject** [3] 5/25 13/23 33/4
**subjected** [1] 28/15
**submit** [3] 17/13 20/14 22/23
**submitted** [1] 4/17
**subparagraphs** [1] 29/22
**subsequent** [1] 30/11
**substance** [1] 7/20
**substantial** [1] 35/9
**substitute** [1] 35/9
**successful** [1] 27/4
**such** [7] 16/2 23/12 27/15 29/13 30/13 37/15 38/23
**suffering** [2] 12/18 20/4 20/12 28/4
**sufficient** [1] 29/22
**suggest** [1] 22/14
**suggesting** [1] 12/17

**S**

suggests [1] 37/1
suicidal [4] 4/12 20/1 20/15 22/4
suicide [6] 4/23 4/25 20/4 20/9 21/18 22/18
summer [1] 8/13
summons [1] 5/6
superficial [1] 11/13
support [2] 12/22 17/9
suppose [2] 13/21 15/23
Supreme [1] 3/4
sure [7] 3/16 10/14 17/8 24/7 29/4 30/23 35/22
suspended [1] 27/10
symptom [1] 15/7
system [3] 12/8 22/7 26/15

**T**

table [1] 6/21
tactics [1] 31/11
take [15] 3/8 3/18 3/20 7/10 13/13 17/23 21/14 26/8 36/2 36/13 37/1 37/16 38/9 38/10 38/16
taken [5] 5/14 6/7 21/8 37/24
taking [2] 15/1 36/24
talk [3] 10/11 33/15 36/21
talking [1] 36/9
tape [1] 20/10
team [5] 12/11 19/14 20/16 27/9 28/2
technology [1] 18/9
telephone [2] 8/21 18/13
tell [10] 4/1 6/24 9/16 9/24 12/2 12/5 13/19 14/20 19/3 25/1
telling [1] 25/6
terrible [1] 4/25
testify [1] 31/12
testimony [4] 34/9 35/15 35/23 36/15
than [2] 13/6 33/4
Thank [13] 6/17 7/12 9/11 12/14 18/20 21/1 24/1 27/6 29/10 36/18 37/11 38/19 38/20
that's [30] 4/13 4/24 13/24 14/5 19/10 19/21 20/9 22/4 25/6 25/22 25/25 26/1 26/4 27/18 30/22 31/23 32/10 32/12 32/19 33/12 33/19 33/19 34/4 34/15 35/9 35/12 36/15 36/25 38/6
their [6] 4/5 5/10 20/23 23/11 34/21 35/7
them [2] 2/11 11/24 11/25 18/2 23/12 31/11 33/7 35/10
themselves [1] 9/6
then [18] 4/2 10/25 16/19 16/20 17/13 23/4 31/12 31/19 32/7 33/6 33/24 35/2 35/23 36/22 37/24 38/11 38/12 38/16
there [21] 3/18 3/24 4/5 4/8 8/21 10/24 11/1 13/18 16/8 16/22 17/17 19/17 20/18 21/6 21/9 21/17 25/12 25/14 27/21 33/22

37/1
there's [9] 4/23 8/6 19/13 19/19 19/21 23/17 29/4 34/3 38/23
thereafter [1] 16/14
these [4] 4/14 13/3 22/4 22/8
they [14] 2/19 4/3 4/4 5/8 5/9 9/5 11/20 13/23 20/22 21/21 23/4 23/8 34/22 35/1
they're [1] 10/8
they've [1] 14/19
thing [5] 10/11 23/13 31/21 33/21 38/24
things [12] 9/16 15/25 19/7 22/8 22/8 23/1 23/3 23/8 23/15 23/22 26/3 26/17
think [18] 5/16 12/8 13/17 13/18 14/3 14/18 16/9 16/22 20/10 21/8 23/15 24/24 27/13 32/1 36/7 36/8 36/20 37/17
thinking [1] 20/9
third [1] 13/1
this [72]
Thomas [3] 1/23 40/4 40/16
those [8] 10/20 11/17 11/20 12/25 23/18 26/11 30/17 35/11
though [3] 3/2
thought [5] 15/10 16/17 17/3 20/23 20/24
thoughts [2] 3/8 20/3
through [5] 18/23 20/17 22/11 26/16 34/21
throughout [4] 14/22 16/24 16/24 19/4
throw [1] 34/22
throwing [1] 35/2
thumb [2] 4/14 17/13
Thursday [1] 35/16
tie [1] 31/2
time [10] 7/19 10/5 20/2 23/1 23/15 26/6 26/18 33/24 35/12 37/15
times [3] 7/23 10/16 12/13
timing [2] 15/21 15/22
tipping [1] 13/5
Title [1] 27/19
today [19] 9/9 9/20 12/2 13/9 14/21 14/22 18/10 21/5 22/9 22/15 24/3 24/9 24/14 24/15 24/17 31/18 33/25 36/24 38/1
told [4] 4/6 5/19 9/22 10/21
tomorrow [1] 33/17
tone [3] 17/1 19/4 19/12
too [1] 33/13
top [1] 22/10
topic [1] 20/8
tracking [1] 11/8
train [1] 35/7
transcript [1] 1/9 16/4 40/8 40/9
transcription [1] 1/22
transmitting [1] 13/15
transpiring [2] 11/5 11/13
transport [2] 37/16 38/5
traveled [1] 2/19
trial [54]
trials [2] 34/4 35/5

tried [1] 26/6
true [1] 40/7
truly [1] 14/19
trust [1] 34/20
try [1] 22/25
trying [2] 10/11 15/12
turn [2] 29/23 31/4
two [5] 4/6 8/10 8/22 26/8 26/22
typically [1] 38/13

**U**

U.S [4] 2/19 3/4 5/22 27/19
U.S.C [1] 40/7
Uber [1] 38/2
ultimately [1] 10/25
umbrage [1] 36/2
unable [4] 12/24 13/13 24/21 28/6
under [13] 2/23 2/24 15/11 16/17 21/11 22/22 22/11 22/13 23/13 27/17 29/18 30/2 30/9
understand [24] 11/10 11/14 11/16 13/14 14/16 15/11 15/25 24/2 24/21 24/23 25/6 25/19 26/24 28/6 30/7 30/17 30/21 30/25 34/5 36/1 36/4 36/8 36/18 38/25
understandable [1] 13/21
understanding [5] 8/25 11/5 16/20 19/17 34/19
understands [2] 23/6 29/1
understood [2] 22/11 23/6 38/14
undertaken [1] 27/23
underway [1] 30/14
unexpected [1] 34/3
unfairness [1] 35/4
unique [1] 15/10
UNITED [13] 1/1 1/3 2/5 2/6 3/4 3/4 6/11 6/12 6/14 25/2 30/3 40/5 40/11
unpredictable [1] 33/21
until [4] 25/25 35/17 37/15 39/2
up [11] 5/14 5/23 7/10 18/9 18/10 20/18 21/5 21/15 32/17 34/8 37/1
upon [2] 6/2 27/20
upstairs [1] 18/3
us [11] 6/21 9/1 13/8 13/10 14/3 16/14 17/2 19/18 22/25 26/21 29/3

**V**

vague [1] 21/18
variations [1] 23/18
variety [1] 23/22
venire [2] 37/5 37/6
verdict's [1] 29/25
verse [1] 19/17
versus [1] 23/18
very [12] 9/11 9/16 10/8 11/9 13/24 15/4 20/3 22/3 23/19 23/20 27/2 36/20
via [1] 17/7
vicinity [1] 38/12
VICTORIA [1] 1/18
view [2] 2/23 15/5 26/20
views [1] 31/10
virtue [2] 13/13 35/20
visit [1] 33/10 33/14

voir [4] 1/9 37/3 37/9
voluntarily [4] 4/4 4/8 29/19 30/10
vs [1] 1/5

**W**

wait [1] 35/17
waive [1] 32/12
waived [1] 3/22
waiver [2] 34/15 36/14
Waiver's [1] 29/23
waives [2] 29/18 29/24
waiving [2] 29/15 35/18
walk [1] 15/18
WALKER [1] 1/17 2/9 6/15
Wallace [1] 32/24
want [15] 3/8 10/10 21/13 21/14 22/9 24/19 31/24 31/24 33/20 34/5 34/17 35/21 35/22 35/23 36/6
wanted [2] 21/20 22/5 34/23
wanting [1] 23/17
wants [3] 23/23 23/23 23/24
warn [1] 34/17
warranted [1] 20/24
warrants [1] 18/23
was [49]
watching [1] 32/3
wavelength [1] 36/21
way [7] 23/12 23/24 26/6 27/5 31/8 32/3 34/11
we [49]
we'll [4] 5/23 8/8 36/25 38/12
we're [15] 3/9 5/12 5/23 5/25 15/10 23/21 35/17 35/19 36/20 38/2 38/7 38/8 38/8 38/9 38/10
we've [1] 8/15
week [2] 4/2 4/11
Weekly [1] 8/17
weeks [3] 4/6 8/22 26/22
well [14] 2/9 4/22 4/24 12/10 13/12 17/5 17/9 24/19 24/23 25/1 32/1 33/4 34/24 37/23
were [21] 5/9 6/24 10/20 10/21 10/25 11/1 11/18 11/20 19/7 19/25 21/3 21/8 21/17 21/17 21/18 22/1 22/6 30/15 33/25 34/24
weren't [1] 18/9
what [37] 3/9 3/11 3/24 5/23 9/24 10/1 10/5 10/12 10/21 11/4 12/15 13/6 15/11 18/18 18/22 18/24 19/1 19/16 21/2 21/21 22/16 22/18 23/4 23/8 23/8 23/19 23/20 27/2 32/1 33/7 33/13 34/24 35/19 36/9 37/8
what's [3] 11/13 12/25 35/14
whatever [4] 17/13 21/22 23/18 35/19
whatsoever [1] 15/17
when [16] 2/19 6/24 7/6 13/23 16/18 18/5 20/5 21/7 26/6 26/6 29/19 31/4 31/21 32/12 32/18 38/4
where [10] 3/25 5/20 9/16 10/24 12/24 13/18 15/9

17/1 17/22 38/6
whether [15] 5/2 20/6 21/4 23/23 25/5 27/11 27/14 27/23 29/20 31/2 32/10 32/12 34/9 36/12 36/23
which [11] 12/12 13/1 14/7 15/10 19/24 28/15 30/12 32/11 32/20 33/5 36/10
while [3] 16/6 18/21 23/10
white [1] 25/10
who [12] 4/25 6/20 18/12 20/2 20/3 22/2 22/25 25/15 29/16 29/17 33/2 38/1
whole [1] 12/8
whom [2] 9/4 9/4
why [5] 9/20 24/16 26/1 30/13 30/22
wild [2] 26/3 27/4
will [16] 2/3 6/1 6/9 6/16 19/13 29/14 31/14 31/16 32/23 32/25 34/7 34/13 34/14 35/24 36/12 36/13
willing [2] 23/17 36/5
wish [3] 12/21 33/7 33/17
wishes [2] 33/16 37/15
withdraw [1] 3/16
within [4] 8/10 8/22 12/17 26/22
without [1] 15/24
witness [4] 34/21 35/6 35/16 35/16
witnesses [4] 5/10 20/21 33/22 35/1
woken [2] 32/17
won't [2] 3/14 34/12
wondering [1] 21/3
word [1] 23/19
words [4] 18/24 20/8 24/25 34/10
work [1] 30/18
world [1] 34/4
would [33] 3/10 3/13 4/9 4/19 12/9 14/3 16/4 18/12 18/14 18/23 20/14 22/23 24/3 24/8 24/16 30/2 31/1 32/7 32/8 33/5 33/13 34/21 34/23 35/3 35/12 35/12 37/2 37/8 37/16 37/19 37/24 37/25 38/24
wouldn't [1] 9/15
wrong [1] 24/3

**Y**

Yeah [2] 4/16 17/24
year [3] 7/11 16/2 16/2
years [2] 14/15 25/19
yes [43]
yesterday [1] 9/2
yet [1] 8/6
you [146]
you're [13] 11/5 13/15 15/14 15/15 25/3 30/21 30/23 31/1 31/5 32/1 32/2 34/17 35/18
you've [5] 16/1 25/21 30/18 36/7 36/8
your [117]
yourself [1] 31/12